**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

APEX GROUP CAPITAL ADVISORS LLC F/K/A
SANDSPOINT CAPITAL ADVISORS LLC,

      Plaintiff,

           v.

RELATED FUND MANAGEMENT, LLC; JAMES
KRAUS; LUCAS BELINKIE; PRESTON CALLEN;
WILLIAM C. CHANEY; and RYAN HOPE

      Defendants.

---

Case No. 1:25-cv-8892-VEC

**ORAL ARGUMENT REQUESTED**

---

**THE EMPLOYEE DEFENDANTS' JOINT REPLY BRIEF IN SUPPORT OF THEIR**
**MOTIONS TO DISMISS THE AMENDED COMPLAINT**

February 26, 2026

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................iii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 2

  I.   THE COMPLAINT FAILS TO ALLEGE A CLAIM UNDER DTSA AND TUTSA ........ 2

    A.  The Complaint Fails to Identify a Trade Secret with Specificity ................................... 3

    B.  Apex Fails to Allege That Its Purported Trade Secrets Have Independent Economic Value Derived from Their Secrecy ................................................................. 5

    C.  The Complaint Fails to Sufficiently Allege Misappropriation of Trade Secrets ............ 7

    D.  Apex Fails to Allege Trade Secret Damages for its TUTSA Claim ............................ 10

  II.  THE NON-COMPETE AND NON-SOLICITATION PROVISIONS ARE UNENFORCEABLE .................................................................................................. 11

    A.  The Non-Compete and Non-Solicit Provisions are Unenforceable Because They Have a Worldwide Geographic Scope ..................................................................... 11

    B.  Apex Does Not Have a Legitimate Interest in Enforcing the Non-Compete ............... 12

    C.  Apex Has Not Met Its Burden to Justify Partial Enforcement ................................... 13

    D.  The Complaint Fails to Allege a Breach of the Non-Solicit Provisions ....................... 14

    E.  The Complaint Fails to Allege any Confidentiality Breach Causing Damages ............ 15

  III.  APEX'S NON-CONTRACT CLAIMS FAIL AS A MATTER OF LAW ....................... 16

    A.  TUTSA Preempts the Fiduciary Duty, Unjust Enrichment, and Conspiracy Claims ... 16

    B.  The Implied Covenant, Fiduciary Duty, and Unjust Enrichment Claims Are Barred or Duplicative ............................................................................................. 16

    C.  The Conspiracy Claim is Not an Independent Basis for Liability ............................... 18

  IV.  THE PERMANENT INJUNCTION CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO ONGOING IRREPARABLE HARM ..................................................... 19

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Case**                                                 **Page(s)**

*24 Seven, LLC v. Martinez*,
2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) .................................................................. 4, 6

*Ad Lightning Inc. v. Clean.io, Inc.*,
2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020) ...................................................................... 8

Aira Jewels, LLC v. Mondrian Collection, LLC,
2024 WL 1255798 (S.D.N.Y., Mar. 25, 2025) ..........................................................Passim

Alexander & Alexander of N.Y., Inc. v. Fritzen,
68 N.Y.2d 968 (1986) ...................................................................................................... 18

Art Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC,
151 A.D.3d 604 (1st Dep't 2017)..................................................................................... 14

*Barbagallo v. Marcum LLP*,
925 F. Supp. 2d 275 (E.D.N.Y. 2013) .............................................................................. 13

*BDO Seidman v. Hirshberg*,
93 N.Y.2d 382 (1999)....................................................................................................... 12

*BKL Holdings, Inc. v. Globe Life Inc.*,
660 F. Supp. 3d 602 (E.D. Tex. 2023).............................................................................. 16

*Broidy v. Glob. Risk Advisors LLC*,
2023 WL 6258135 (S.D.N.Y. Sept. 26, 2023) .......................................................... 2, 6, 7

*Charamac Props., Inc. v. Pike*,
1993 WL 427137 (S.D.N.Y. Oct. 19, 1993)..................................................................... 19

*CPM, Inc. v. Deagle*,
501 F. Supp. 3d 243 (S.D.N.Y. 2020) .............................................................................. 15

*Crossroads ABL, LLC v. Canaras Cap. Mgmt., LLC*,
33 Misc. 3d 1218(A) (Sup. Ct., NY Cty. 2011) .............................................................. 12

*Elsevier Inc. v. Doctor Evidence*, LLC,
2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ........................................................... *Passim*

*Flatiron Health, Inc. v. Carson*,
2020 WL 1320867 (S.D.N.Y., Mar. 20, 2020) ............................................................ 2, 13

*Frank Crystal & Co.*,
84 A.D.3d 704 (1st Dep't 2011)....................................................................................... 13

*Garfinkle v. Pfizer, Inc.*,
162 A.D.2d 197 (1st Dep't 1990)................................................................................ 2, 11

*Garvey v. Face of Beauty LLC*,
634 F. Supp. 3d 84 (S.D.N.Y. 2022) .................................................................................. 4

*GMH Cap. Partners v. Fitts*,
2025 WL 950674 (S.D.N.Y. Mar. 28, 2025) .......................................................... *Passim*

*Gordon v. Dino De Laurentiis Corp.*,
    141 A.D.2d 435 (1st Dept.1988) ................................................................. 15

*IBM v. v. Papermaster*,
    2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008) ........................................... 12

*IBM v. Visentin*,
    2011 WL 672025 (S.D.N.Y. Feb. 16, 2011) .............................................. 12

Int'l Dev. Inst., Inc. v. Westchester Plaza, LLC,
    194 A.D.3d 411 (1st Dep't 2021) .............................................................. 17

*Intrepid Fin. Partners, LLC v. Fernandez*,
    2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) .................................. 1, 3, 7

*Kalola v. Int'l Bus. Machines Corp.*,
    2019 WL 6879307 (S.D.N.Y. Dec. 16, 2019) ........................................... 19

*Markets Grp., Inc. v. Oliveira*,
    2020 WL 820654 (S.D.N.Y. Feb. 3, 2020) ............................................... 12

*Martinez v. Barasch*,
    2005 WL 2465493 (S.D.N.Y. Oct. 5, 2005) ............................................. 19

*MBIA Ins. Corp. v. Royal Bank of*,
    *Can.*, 2010 WL 3294302 (N.Y. Sup. Ct. Aug. 19, 2010) ....................... 17

Metro. Life Ins. Co. v. RJR Nabisco, Inc.,
    716 F. Supp. 1504 (S.D.N.Y. 1989) ......................................................... 17

Northern Shipping Funds I, LLC v. Icon Capital Corp.,
    921 F. Supp. 2d 94 (S.D.N.Y. 2013) ........................................................ 18

*NRD GP LLC v. Centiva Capital*,
    2025 WL 2782804 (S.D.N.Y. Sept. 30, 2025) ........................................... 5

Polyflow, L.L.C. v. Specialty RTP, L.L.C.,
    993 F.3d 295 (5th Cir. 2021) ..................................................................... 10

*Pro Mineral, LLC v. Marietta*,
    2023 WL 2410884 (N.D. Tex. Mar. 8, 2023) ........................................... 16

Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,
    813 F. Supp. 2d 489 (S.D.N.Y. 2011) ............................................... 11, 14

*Sapir v. Rosen*,
    2021 WL 4482277 (S.D.N.Y. Sept. 30, 2021) ........................................... 5

*Silipos, Inc. v. Bickel*,
    2006 WL 2265055 (S.D.N.Y., Aug. 6, 2006) ........................................... 11

Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.,
    2021 WL 665031 (S.D.N.Y. Feb. 19, 2021) ............................................ 19

*Speedmark Transp., Inc. v. Mui*,
    778 F. Supp. 2d 439 (S.D.N.Y. 2011) ............................................... 14, 15

StoneCoat of Texas, LLC v. ProCal Stone Design, LLC,
426 F. Supp. 3d 311 (E.D. Tex. 2019) ...................................................................... 11

*Sussman Educ., Inc. v. Gorenstein*,
175 A.D.3d 1188 (1st Dept. 2019) ........................................................................... 12

Twister B.V. v. Newton Rsch. Partners, LP,
364 S.W.3d 428 (Tex. App. 2012) ........................................................................... 11

Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,
43 F. Supp. 3d 236 (S.D.N.Y. 2014) ........................................................................ 18

*Zurich Am. Life Ins. Co. v. Nagel*,
538 F. Supp. 3d 396 (S.D.N.Y. 2021) ................................................................... 8, 9

**Statutes**

18 U.S.C. § 1839(6)(A) ............................................................................................... 10

## PRELIMINARY STATEMENT

Plaintiff's Opposition Brief confirms that Plaintiff cannot identify or explain the value of any allegedly stolen trade secret with specificity, and that it has no answer for the unenforceability of the non-compete and non-solicit provisions.

*First*, the trade secret claims fail because the Amended Complaint ("Complaint" or "AC") admits the Employee Defendants were "unable to steal Apex Capital's proprietary client database" that these claims focus upon. (AC ¶112). Apex's admission that this database was not stolen is fatal, because it refutes any "plausibl[e]" inference that the Employee Defendants "misappropriated" this alleged "trade secret[]." *Intrepid Fin. Partners, LLC v. Fernandez*, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020).

As to the generic categories of information and documents that Apex *does* allege the Defendants stole, the Complaint fails to provide the required specificity. It does not (i) "describe the trade secret" and "its protectability," (ii) distinguish a "trade secret[]" from "confidential information," (iii) explain how the trade secret "derive[s] independent economic value from [its] secrecy" and provides "a valuable edge over its competitors," or (iv) specify how the Employee Defendants used "improper means" to steal or "disclose[]" them. *GMH Cap. Partners v. Fitts*, 2025 WL 950674, at *8-10 (S.D.N.Y. Mar. 28, 2025). The Complaint admits the Employee Defendants validly accessed the information as employees, and its bald allegations that they "retained and used" Apex "files in" their "new role at … IQ-EQ" (AC ¶¶78, 87, 93, 105) are insufficient, because the Complaint lacks "detail as to how th[e] information is being used." *Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *5 (S.D.N.Y., Mar. 25, 2025).

*Second*, Apex's non-compete and non-solicit claims fail because it is undisputed that these restrictive covenants apply "worldwide" to "any jurisdiction in which [Apex] or … its affiliates [are] engaged." (AC ¶¶14, 42.) Restrictive covenants that cover "the entire world" are

1

unenforceable under New York law. *Garfinkle v. Pfizer, Inc.*, 162 A.D.2d 197 (1st Dep't 1990). Further, Apex has not met its burden to "demonstrate[]" that "partial enforcement" is justified, because Apex imposed the restrictive covenants in employment agreements "as a condition of" the Employee Defendants' "initial employment," and they are "obvious[ly]" "overbroad." *Flatiron Health, Inc. v. Carson*, 2020 WL 1320867, at *24 (S.D.N.Y., Mar. 20, 2020).

*Third*, Apex's remaining tort and quasi-contract claims—fiduciary duty, implied covenant, unjust enrichment, and civil conspiracy—are duplicative of the trade secret and contract claims, and preempted by TUTSA. These claims all rely on the same allegations of information misuse and employee departures as the contract and trade secret claims. (AC ¶¶158–200.) These repackaged claims thus do not support an independent basis for liability.

*Finally*, a permanent injunction is not warranted, because Apex has not plausibly alleged an ongoing violation or irreparable harm, and the restrictive covenants have expired. After three failed attempts to state a claim, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   THE COMPLAINT FAILS TO ALLEGE A CLAIM UNDER DTSA AND TUTSA

As shown in the Employee Defendants' Opening Briefs, the Complaint fails to make "'specific allegations'" (i) identifying the particular trade secret "'owned'"; (ii) explaining the "value" of any particular trade secret, (iii) distinguishing the trade secret from mere confidential information, or (iii) showing any improper use, disclosure or acquisition by the Employee Defendants. *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 6258135, at *11 (S.D.N.Y. Sept. 26, 2023) (quoting *Elsevier Inc. v. Doctor Evidence*, LLC, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018)). The Complaint also fails to adequately allege damages under TUTSA. *See* Hope 13-19;

Belinkie 13-19; Callen 8-12; Chaney 13-19.[1] Apex's Opposition Brief fails to refute this showing.

## A.  The Complaint Fails to Identify a Trade Secret with Specificity

*First*, Apex's trade secret claims fail because they are based on a "proprietary client database" that the Complaint admits the Employee Defendants were "***unable to steal***." (AC ¶112 (emphasis added).) Apex's Opposition Brief focuses its defense of the Complaint's allegations on its "licensed database" as a "proprietary database" that consists of "trade secret information." (Opp. at 5 citing AC ¶¶15, 71.)[2] But the Complaint admits that the Employee Defendants were "unable to steal Apex Capital's proprietary client database." (AC ¶112; *id.* ¶73 ("Apex Capital rejected the request" to "extract the database")).) This admission is fatal, because it refutes any "plausibl[e]" inference that the Employee Defendants "misappropriated" the very "trade secret[]" that is the focus of Apex's claims. *Intrepid Fin. Partners,* 2020 WL 7774478, at *4.

*Second*, as to the categories of information and documents Apex does allege the Employee Defendants misappropriated, the Complaint entirely fails to explain how they are so unique to qualify as a trade secret or provide any competitive advantage. Notably, the alleged information cited in the Opposition Brief (at 5) is strikingly similar to the allegations rejected in *Elsevier*:

| Information Cited in Opposition Brief | Allegation Rejected in *Elsevier* |
|---|---|
| "work processes for servicing clients" (Opp. at 5.) | "process to assess the quality of evidence and how to execute" 2018 WL 557906, at *5 |
| "valuation processes" and "valuation methodology" (*id.*) | "ontology process and tools," and a "unique … process for 'binding' … terms," (*id.*) |
| "methodology" for "performing asset management tasks" (*id.*) | "clinical methods relating to executing projects and related protocols" (*id.*) |
| "revenue projection methodology" (*id.*) | "data configuration protocols and methods" (*id.*) |
| "financial analyses for … clients" and "analyses of client investments" (*id.*) | "interpretation of data," "analytics, analytics tools, and analytics programming," and "database field names," and "parameters." *Id.* |

---

[1] "Hope" refers to the opening brief for Mr. Hope's Motion to Dismiss (Dkt. No. 103); "Belinkie" refers to the opening brief for Mr. Belinkie's Motion to Dismiss (Dkt. No. 108); "Callen" refers to the opening brief for Mr. Callen's Motion to Dismiss (Dkt. No. 101); "Chaney" refers to the opening brief for Mr. Chaney's Motion to Dismiss (Dkt. No. 106).

[2] "Opp." refers to the Plaintiff's Omnibus Response to Defendants' Motions to Dismiss (Dkt No. 115).

Accordingly, Apex's trade secret claims should be dismissed under *Elsevier*. In stark contrast, Apex's attempt to distinguish *Elsevier* (Opp. at 4) fails, because the Complaint suffers from the same defects as the complaint dismissed in *Elsevier*. The Complaint does not provide details about how the alleged processes and methods "function," to allege how they involve a "specific" method achieving a unique result, "which no one else owns." 2018 WL 557906, at *6.

Similarly, the Complaint's bare allegations that some documents reflect "pricing," "client strategy information," and "client financial information" (AC ¶84) are insufficient to state a trade secrets claim. *24 Seven, LLC v. Martinez*, 2021 WL 276654, at *6 (S.D.N.Y. Jan. 26, 2021) (allegations of "client … contacts," "particular clients' preferences" and "information about pricing and profit" failed to state a claim). Courts in this District have consistently held that generalized allegations of taking "a customer … list, and pricing information" fail to allege a trade secret with specificity as required to state a claim under the DTSA. *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 95 (S.D.N.Y. 2022); *accord Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *4 (S.D.N.Y. Mar. 25, 2024) (alleged theft of "customer lists, client contacts, supplier contacts, sales, marketing, and business strategies" failed to state a DTSA claim). Allegations of client information, client preferences, and pricing information can only state a DTSA claim when they are supported by detailed allegations showing they were obtained "'by extraordinary efforts'" and "'the expenditure of substantial time and money'" or using a specific "proprietary formula that gives … a unique advantage." *Garvey*, 634 F. Supp. 3d at 97 (quoting 2*4 Seven, LLC*, 2021 WL 276654, at *7-8). But the Complaint does not make these allegations.

*Third*, Apex does not (and cannot) address the dispositive argument that its trade secret claims should be dismissed because the Complaint fails to distinguish between confidential information and trade secrets, which requires a higher standard and allegations with "much more

specificity." *Elsevier*, 2018 WL 557906, at *6. As shown in the Employee Defendants' Opening Briefs, a DTSA claim should be dismissed where the Complaint alleges "information which it refers to interchangeably as both trade secrets and confidential information." *GMH*, 2025 WL 950674, at *8; *accord Elsevier*, 2018 WL 557906, at *6 (dismissing DTSA claim where the complaint "conflates the concept of a 'trade secret' with 'confidential information'"). Where, as here, the Complaint "fail[s] to plead *which* of the numerous documents [] describe[d] in the[] Complaint are trade secrets—as opposed to mere confidential or proprietary information," this "pleading deficiency alone is fatal to [a DTSA] claim." *Sapir v. Rosen*, 2021 WL 4482277, at *6 (S.D.N.Y. Sept. 30, 2021) (emphasis in original).

Accordingly, Apex's trade secrets claims should be dismissed. In stark contrast, Apex is misguided in relying on *NRD GP LLC v. Centiva Capital*, 2025 WL 2782804, at *3 (S.D.N.Y. Sept. 30, 2025). In *NRD*, the plaintiff identified specific "Highly sensitive computer source code, byte code, and object code that comprises [an] automated trading system" and "Quantitative trading algorithms." *Id.* Further, the *NRD* plaintiff explained how the trading algorithms and computer code functioned to produce and manage unique and valuable "high-return portfolios" of securities for the plaintiff. *Id.* But here, the Complaint does not allege in detail how the alleged information specifically functions and provides unique value. Thus, NRD is inapposite.[3]

### B. Apex Fails to Allege That Its Purported Trade Secrets Have Independent Economic Value Derived from Their Secrecy

As stated in the Employee Defendants' opening briefs, Apex's conclusory allegations (AC ¶128) that its alleged information has "value, resulting from significant investment of time and

---

[3] Additionally, Apex mischaracterizes Defendants' arguments about lack of secrecy. By alleging client information that was accessible to "other authorized individuals" and not specifically stating which of its 13,000 employees did not have access to the purported trade secret information (AC ¶18), Apex pleads facts incompatible with the requirement that information be kept secret. Apex's clients also had access to this information, rendering it not secret.

resources," fail to meet the burden of pleading a trade secrets value. *Broidy*, 2023 WL 6258135, at *11). To state a trade secrets claim, a complaint must allege "*specific* allegations as to the … *value*" of the information alleged. *Broidy*, 2023 WL 6258135, at *11 (emphasis in original). The Complaint fails to do so.

Strikingly, Apex's Opposition Brief does not – because Apex cannot – address or distinguish *Broidy*. Instead, the Opposition Brief confirms that the Complaint makes exactly the type of conclusory allegations that *Broidy* held was insufficient to state a claim: That (i) Apex "made significant investment into developing the trade secrets"; (ii) "the trade secrets are valuable because they create a competitive advantage" (Opp. at 7 citing AC ¶¶18, 21), and (iii) the trade secrets "are not readily ascertainable to Apex Capital's competitors." (AC ¶21).

But courts in this District have consistently held that conclusory allegations of "value, resulting from significant investment of time and resources." *Broidy*, 2023 WL 6258135, at *11; *accord GMH*, 2025 WL 950674, at *8 (rejecting allegation of value based on alleged spending "significant sums, in terms of both financial and human resources, to develop and maintain and safeguard this information" as insufficient to state claim); *Aira Jewels*, 2024 WL 1255798, at *5 (rejecting as insufficient allegations of value "developed … through a decade of hard-won experience in the industry"); *24 Seven, LLC*, 2021 WL 276654, at *8-9 (dismissing DTSA claim and rejecting allegation of value based on "time and resources spent compiling this data" as insufficient to allege "value" from the information in question).

Similarly, courts in this District have repeatedly rejected the Complaint's boilerplate allegations that the "'trade secrets have value because they ... give [Plaintiff] a competitive advantage'" as "insufficient" to state a DTSA claim. *Aira Jewels*, 2024 WL 1255798, at *5; *accord 24 Seven, LLC*, 2021 WL 276654, at *8 (rejecting as insufficient allegations that plaintiff worked

to "develop margins and pricing that allow it to gain a competitive advantage"). Such allegations are deficient because they do not explain "why these categories of information provide" Apex "with a valuable edge over its competitors, or why its competitors could not have duplicated the alleged trade secrets from generally available information." *GMH*, 2025 WL 950674, at *8.

Likewise, courts have repeatedly held that a conclusory allegation that information derives value from "not being readily ascertainable through proper means by others" fails to state a DTSA claim. *GMH*, 2025 WL 950674, at *9; *accord Broidy*, 2023 WL 6258135, at *11 (rejecting allegation that alleged trade secrets "derive independent value from not being generally known or available to the public"). Such allegations are deficient because they are "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *GMH*, 2025 WL 950674, at *9 (quoting *Ashcroft v. Iqbal*, 556, U.S. 662, 678 (2009)).

C. **The Complaint Fails to Sufficiently Allege Misappropriation of Trade Secrets**

   1. **Apex Fails to Allege Specific Use or Disclosure of Trade Secrets to a Third Party**

*Next*, the Employee Defendants' Opening Briefs (Hope 17-18) showed that the Complaint fails to allege the misappropriation of any trade secrets because it is "devoid of any specific factual allegations supporting" Apex's "allegation" that Mr. Hope improperly engaged in "using" any trade secrets. *Intrepid Fin. Partners*, 2020 WL 7774478, at *4. Courts have repeatedly rejected the Complaint's boilerplate and speculative allegations that (i) the Employee Defendants "took, … and used and/or disclosed Apex Capital's trade secrets" (AC ¶131), and (ii) such information would "only [be] valuable *if* [the Employee Defendants] retained and used the files in [their] new role," (*id.* ¶93). *See Intrepid Fin. Partners*, 2020 WL 7774478, at *4 (rejecting as insufficient allegations that defendant "directly or indirectly disclos[ed]" trade secrets and "use[d] or acquiesce[d] in others using the … trade secrets to solicit" plaintiff's "clients" for "his future

employer"); *accord Aira Jewels*, 2024 WL 1255798, at *5 (rejecting allegations that "Defendants 'are using' these alleged trade secrets 'to poach' [] clients").

Notably, Apex's Opposition Brief (at 8-9) does not identify any specific factual allegation that the Employee Defendants actually used or disclosed any trade secrets. Instead, it relies on pure speculation that there "is no conceivable reason" for the Former Employees to have accessed Apex's alleged trade secrets during their employment except for their "new role[s] at IQ-EQ." (Opp. at 9.) Such rank speculation is plainly insufficient to state a claim.

**2.  Apex Fails to Allege Improper Acquisition by Any Employee Defendant –Apex Admits They Accessed the Information as Apex Employees.**

Unable to allege any actual use or disclosure of trade secrets, Apex instead focuses on allegations that the Employee Defendants "downloaded thousands of documents from Apex Capital's systems" shortly "before [their] last day at Apex Capital," while they were still employed at Apex. (AC ¶91; *see also id.* ¶¶74, 83, 101; Opp. at 8.) But *there is nothing improper about the Employee Defendants accessing Apex documents while they were employed by Apex.* In fact, the Complaint admits that Apex "provide[d] its employees, including the Former Employees" with "access to Apex Capital's confidential information and trade secrets" as part of their employment. (AC ¶17.) Accordingly, these allegations are insufficient to state a claim.

Indeed, courts in the District have consistently held that a complaint fails to sufficiently allege misappropriation of trade secrets where it alleges "that information" was accessed to the Defendant "while she was a part of the team" employed by the plaintiff. *GMH*, 2025 WL 950674, at *9. A defendant does not engage in trade secret misappropriation where he "acquire[d] this information as part of his job." *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 405 (S.D.N.Y. 2021); *accord Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (rejecting allegations that "former [] employees 'had access to" trade secret

"information through" their employment). Accordingly, allegations that the Employee Defendants downloaded information while employed at Apex are insufficient to plead trade secret misappropriation.

For Defendants Hope and Belinkie, the Complaint does not contain any specific allegations of improperly acquiring Apex trade secrets beyond downloading. The Complaint does not allege that Hope or Belinkie transferred any documents to an identified external device or system, or bypassed any security protocols. The Opposition Brief falsely states that the Complaint alleges Hope connected a USB device and accessed an external computer, citing Complaint "¶ 105." But paragraph 105 alleges only that Defendant "*Callen*'s … computer was connected to a USB device" and that "*Callen* … accessed an unknown … computer" – not Mr. Hope. (AC ¶105 (emphasis added).) Similarly, the Complaint alleges that Belinkie "downloaded" information to an "unknown destination," but does not allege that this destination was outside Apex's network. (*Id.* ¶74.) Thus, the Hope and Belinkie allegations only specify lawful workplace access, which is insufficient to state a claim. *See Zurich,* 538 F. Supp. 3d 3at 405; *GMH*, 2025 WL 950674, at *11.

The allegations for Chaney and Callen fare no better. Apex alleges that (i) Chaney downloaded documents to a "device that was not issued by Apex Capital" (AC ¶83) and (ii) Callen's Apex computer was connected to a USB device and accessed a non–Apex computer (AC ¶105). But the Complaint does not allege that (i) these devices were unauthorized, (ii) Chaney or Callen were prohibited from using these devices, (iii) Callen downloaded any documents to the USB device or non-Apex computer, (iv) any security controls were bypassed, or (v) any access exceeded the scope of their job responsibilities.

Desperate to save the Complaint, Apex's Opposition Brief attempts to rewrite its own pleading to add allegations that do not appear in the Complaint. (Opp. at 8-9.) These Opposition

Brief allegations should be given no weight because "it is axiomatic that a complaint cannot be amended by a brief filed in opposition to a motion to dismiss." *Aira Jewels*, 2024 WL 1255798, at *3 (cleaned up). The Opposition asserts simultaneous downloading and use of external devices or systems, claiming that (i) Callen "accessed an unknown computer from the internal network *while downloading* the company's trade secrets," (2) Belinkie "downloaded the company's trade secrets *while simultaneously using* his personal Gmail account *and while* accessing external web browsers and drives"; and (3) Chaney "downloaded trade secret files from his work computer *while simultaneously accessing* his personal email,"; (Opp. at 8-9 (emphasis added).) **But these allegations are not alleged in the Complaint.** (*Compare* AC ¶¶75, 83, 105, *with* Opp. at 8-9.)

Moreover, the Complaint does not allege what, if anything, Callen, Belinkie, or Chaney actually transferred to the referenced devices. Thus, the Complaint's conclusory references to unidentified non-issued external devices and systems do not transform otherwise lawful employment access to information into "theft" or "espionage" under the DTSA. *See* 18 U.S.C. § 1839(6)(A). Accordingly, Apex has failed to plausibly allege the improper acquisition of trade secrets, and these claims should be dismissed.

### D.  Apex Fails to Allege Trade Secret Damages for its TUTSA Claim

Apex's TUTSA claim also fails because the Complaint does not plead any legally cognizable monetary damages. Apex's opposition does not identify any allegations of actual damages for its TUTSA. Further, Apex does not address or distinguish the Employee Defendants' case law holding that "A trade secret misappropriation claim" under TUTSA "requires … damages." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 305 (5th Cir. 2021) (cited at Hope 19). Indeed, Apex's own case (Opp. at 9) holds that a TUTSA claim requires allegations that the plaintiff "suffered damages." *Twister B.V. v. Newton Rsch. Partners, LP*, 364 S.W.3d 428, 437 (Tex. App. 2012).

Plaintiff's boilerplate allegations that "Apex Capital has suffered and/or will suffer damages" (AC ¶¶135, 144) are insufficient to state a claim – and monetary damages are inconsistent with Apex's prior allegation that it "suffered irreparable harm." (AC ¶¶134, 143). Allegations of TUTSA "damages should not be based on sheer speculation." *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 352 (E.D. Tex. 2019).

## II.    THE NON-COMPETE AND NON-SOLICITATION PROVISIONS ARE UNENFORCEABLE

The breach of contract claims should be dismissed because (i) the non-compete and non-solicit are unenforceable, (ii) Apex has failed its burden to justify partial enforcement, and (iii) Apex has failed to plead a breach of the non-solicitation and confidentiality provisions.

### A.    The Non-Compete and Non-Solicit Provisions are Unenforceable Because They Have a Worldwide Geographic Scope

The Employees Defendants have shown that the non-compete and non-solicitation provisions are unenforceable because they have no geographic limitation – they apply "worldwide." (Hope 9-11.) *Critically*, Apex does not – because it cannot – dispute that the non-compete and non-solicit provisions have a worldwide scope. That should be dispositive here.

Notably, Apex does not (and cannot) distinguish the numerous cases that the Employee Defendants cited, all of which held that a non-compete clause was not enforceable because "the geographic scope … encompasses the entire world." *Garfinkle v. Pfizer, Inc.*, 556 N.Y.S.2d 322, 323 (1st Dept. 1990) (cited at Hope 10); *accord Silipos, Inc. v. Bickel*, 2006 WL 2265055, at *6 (S.D.N.Y., Aug. 6, 2006) (a "worldwide restriction" on competition "is not reasonable"); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 507 (S.D.N.Y. 2011) (same). Apex also does not (and cannot) distinguish the cases the Employee Defendants cited, which held non-solicit provisions unenforceable under New York law where they did not have "any geographic limitation." *Markets Grp., Inc. v. Oliveira*, 2020 WL 820654, at *12

(S.D.N.Y. Feb. 3, 2020); *accord Crossroads ABL, LLC v. Canaras Cap. Mgmt., LLC*, 33 Misc. 3d 1218(A) at *9 (Sup. Ct., NY Cty. 2011) (same); *Sussman Educ., Inc. v. Gorenstein*, 175 A.D.3d 1188, 1189 (1st Dept. 2019) (same). Apex does not address or distinguish any of these cases.

Instead, Apex relies on a single, outlier decision, which is plainly distinguishable based on unique facts. (Opp. at 11 (citing *IBM v. v. Papermaster*, 2008 WL 4974508, at *11 (S.D.N.Y. Nov. 21, 2008)). *IBM* involved IBM's "top expert in the development and application," whose knowledge of IBM's "[p]ower" architecture was "unique" and "irreplaceable." *Id.* at *12. Further, the court relied on IBM's "offer to increase" the defendant's "salary to stay employed at IBM, or to pay him a year's salary merely not to work for" a competitor – and sit out a year – in deciding to enforce a worldwide restriction. *Id.* at *3.

In stark contrast, there is no allegation in the Complaint that the Employee Defendants had any unique or irreplaceable knowledge or skills – nor could there be, because they work in Fund Administration, which involves "accountant"-type skills. *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 393 (1999) (no proof of "unique or extraordinary ability" where defendant was "accountant"). Nor is there any allegation that Apex offered to increase their salaries or pay them a year's salary to sit out a year and not work for IQ-EQ. Accordingly, *IBM* does not apply. Indeed, this Court rejected a later attempt by IBM to enforce an overbroad 12-month non-compete provision where, as here, there was no allegation that the defendant's "skills as a manager are 'unique or extraordinary.'" *IBM v. Visentin*, 2011 WL 672025, at *21 (S.D.N.Y. Feb. 16, 2011), *aff'd*, 437 F. App'x 53 (2d Cir. 2011). Thus, the restrictive covenants are unenforceable.

**B. Apex Does Not Have a Legitimate Interest in Enforcing the Non-Compete**

As argued in the opening briefs (Hope 11-12), Apex cannot enforce the non-compete provisions against the Employee Defendants working on Related's account while at IQ-EQ, because Related's decision to move its account to IQ-EQ was *client-driven*. The Complaint admits

that "in the months leading up to the Former Employees' resignations, Related (led by Kraus) was working hard behind the scenes to move its business to … to IQ-EQ." (AC ¶106.) Apex's disagreement in its Opposition Brief (at 12-13) is refuted by the Complaint itself, which admits that Related disliked working with Apex so much that it "was working hard behind the scenes to move its business" elsewhere. (AC ¶106.) Apex admits that Related did not want to work with Apex, so there was no legitimate interest that Apex had in this relationship that was left to protect.

Moreover, the Complaint admits Related did not want to work with Apex, and instead sought to work at a different firm with "Belinkie," who is "longtime friends" with Related's Mr. Kraus (AC ¶110). Related's relationship with Belinkie exists "independently" of Apex. *Frank Crystal & Co.*, 84 A.D.3d 704, 705 (1st Dep't 2011). Apex cannot distinguish the case law concluding there is no legal violation when "sensible clients follow the talent they trust, and not the organizations to which that talent is temporarily attached." *Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 295 (E.D.N.Y. 2013), *aff'd*, 552 F. App'x 102 (2d Cir. 2014) (cited at Hope 12).

### C. <u>Apex Has Not Met Its Burden to Justify Partial Enforcement</u>

This Court should hold that Apex has not met its burden to justify partially enforcing its worldwide restrictive covenants, because Apex imposed the overbroad non-compete provisions as a condition of employment that is obviously overbroad and has several legal defects. (AC ¶¶27, 33, 39, 45.) Under New York law, courts refuse to blue pencil an unenforceable non-compete provision where it was imposed "as a condition of … initial employment" and suffers from "obvious" legal defects. *Flatiron Health, Inc. v. Carson*, 2020 WL 1320867, at *24 (S.D.N.Y. Mar. 20, 2020); *accord Pure Power Boot Camp*, 813 F. Supp. 2d at 509 (refusing to partially enforce overbroad non-compete that was "a condition of … employment" and "not in exchange for a promotion, greater responsibilities or any other benefit").

Moreover, there is no basis to partially enforce the restrictive covenants, because they have expired, and Apex only seeks damages retroactively. As Apex admits, these restrictive covenants have "now expired," and "there is nothing left for this Court to enforce," except for Apex's request for damages. (Opp. at 12 n.5.) But a court should not "rewrite the contractual non-compete provision" and "have the Court apply it retroactively" to force Defendants to "pay [] damages." *Pure Power*, 813 F. Supp. 2d at 508.

### D.  The Complaint Fails to Allege a Breach of the Non-Solicit Provisions

As stated in the Employee Defendants' opening briefs, the non-solicit claim fails because the Complaint does not identify a single individual whom they solicited. (Belinkie 12-13; Callen 16; Chaney 13; Hope 12-13.) There is no allegation that Callen or Hope solicited anyone whatsoever, so this claim fails against them. As to Chaney, there are no allegations that he solicited any employee to leave – the allegation that Hope tendered his resignation to Chaney does not mention any solicitation. (AC ¶88.)

As to Belinkie, the Complaint's conclusory allegation that he "solicited other employees of Apex" (AC ¶109) is insufficient because it does not "identify any party" that he allegedly solicited. *Art Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC*, 151 A.D.3d 604, 605 (1st Dep't 2017).

In contrast, Apex is misguided in citing *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 443 (S.D.N.Y. 2011) to argue that allegations that the Employee Defendants "coordinated their departures" and "left in quick succession" should be sufficient to plead solicitation. (Opp. at 13-14.) *Speedmark* is inapposite, because it involved *three employees resigning within four days* – "January 7" to "January 10" – and "launching a competing business," and another "nine [] employees" resigning "within days" after. 778 F. Supp. 3d at 442-43. But here, the four Employee Defendants resigned over a much longer period of two months, between "October" and "December 4, 2024," and they did not launch a business. (AC ¶¶70, 80, 88, 97.)  Also, Apex does not identify

multiple other employees who left, but only alleges that other unnamed employees resigned 1-3 months later. (AC¶¶110.).[4]

Moreover, the Complaint admits a more plausible, legitimate inference about the timing of the Employee Defendants' resignations: they resigned after "receiving the last of their retention bonuses" from Apex. (AC ¶¶68-69.)

### E.  The Complaint Fails to Allege any Confidentiality Breach Causing Damages

The opening briefs showed that the confidentiality breach claim fails because the Complaint fails to allege (i) any third-party use or disclosure of confidential information, and (ii) any damages. (Hope 19-20.) The Employment Agreements' confidentiality provisions provide only that the Employee Defendants "shall not divulge, furnish or make available to any third person . . . any trade secrets or other confidential information." (AC ¶¶29, 35, 41, 47.). But as shown in Section I.C.1 above, the Complaint does not identify any instance of the Employee Defendants disclosing any Apex confidential information to a third party.

Importantly, Apex's opposition brief does not (and cannot) address this argument or the Employment Agreement language. Accordingly, this claim should be dismissed.

Moreover, as shown in the Employee Defendants' opening briefs (Hope 19-20), Apex does not allege any damages resulting from any breach of the confidentiality provisions. Under New York law, a complaint should be dismissed if it "does not demonstrate how the defendant's alleged breach of [a] confidentiality agreement caused plaintiffs any injury." *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436 (1st Dept.1988). Here, Apex does not state any specific confidential information that was disclosed, which caused it monetary damages. This is fatal to its claim.

---

[4] *CPM, Inc. v. Deagle,* is inapposite because (unlike here), the complaint *specifically named* four employees the Defendant solicited. 501 F. Supp. 3d 243, 260 (S.D.N.Y. 2020) ("Deagle, Husband, Rubio," "Rathke").

## III.    APEX'S NON-CONTRACT CLAIMS FAIL AS A MATTER OF LAW

Apex's remaining claims should be dismissed as (i) preempted by TUTSA, (ii) duplicative of the contract and trade secret claims, and (iii) insufficient to state an independent claim.

### A.    TUTSA Preempts the Fiduciary Duty, Unjust Enrichment, and Conspiracy Claims

As stated in the opening briefs (Hope 25-26), Apex's breach of fiduciary duty, civil conspiracy, and unjust enrichment claims are all preempted by TUTSA because they are premised on the same alleged misappropriation of Apex's purported trade secrets and confidential information. *BKL Holdings, Inc. v. Globe Life Inc.*, 660 F. Supp. 3d 602, 609-10 (E.D. Tex. 2023) ( "breach of fiduciary duty, … and conspiracy" claims preempted because based on same facts as trade secret claim); *Pro Mineral, LLC v. Marietta*, 2023 WL 2410884, at *5-6 (N.D. Tex. Mar. 8, 2023) (same, and noting that "TUTSA was intended to preempt all claims based on misappropriation of a trade secret").

Apex does not dispute that TUTSA preempts non-contract claims when they are based on the same facts that underlie a TUTSA claim. Instead, Apex dubiously claims that its non-contract claims are not "mere duplicates" of its TUTSA claims. (Opp. at 35.) But the Complaint states otherwise. The Complaint expressly states that the "Breach of Fiduciary" claim is based on "misappropriating Apex Capital's trade secrets." (AC ¶185.) The "Unjust Enrichment Claim" is also based on "the use of and access to Apex Capital's trade secrets." (*Id.* ¶190.) And the "Conspiracy" claim is based on "the use of Apex Capital's confidential information." (*Id.* ¶199.)

### B.    The Implied Covenant, Fiduciary Duty, and Unjust Enrichment Claims Are Barred or Duplicative

#### 1.    The Implied Covenant and Unjust Enrichment Claims Are Barred by the Contracts

As shown in the opening briefs, Apex's breach of the implied covenant and unjust enrichment claims are barred due to the existence of a valid contract. (Hope 20-21,22-23).  Apex's

Opposition Brief argues that this claim is meant to reach conduct not expressly addressed in the Employment Agreements; this argument lacks merit, both as a matter of law and pleading. (Opp. at 16).[5] *First*, this claim is expressly pled based on the same alleged conduct as the breach of contract claim: "misappropriating Apex Capital's trade secrets and confidential information" and "coordinating the mass exodus of employees." (AC ¶160.) *Second*, Apex's argument is refuted by settled law holding that the implied covenant cannot be used to "shoehorn into [a contract] additional terms plaintiffs now wish had been included." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989).

Similarly, Apex's unjust enrichment claim is barred by the Employment Agreements addressing the same conduct, and is not saved by Apex's arguments that it is pled in the alternative in case the Employment Agreements are unenforceable. (Opp. at 27-28.) The Complaint alleges valid and enforceable contracts, which undermine the unjust enrichment claim. (AC ¶¶27-51, 164.) Further, New York courts routinely dismiss unjust enrichment claims—even when pled in the alternative—when there is an agreement that governs the parties' relationship and addresses the dispute. *See Int'l Dev. Inst., Inc. v. Westchester Plaza, LLC*, 194 A.D.3d 411, 413 (1st Dep't 2021) ("[P]laintiff continues to stand on its contract claims. Accordingly, the unjust enrichment claims must be dismissed as duplicative of the contract claims."); *MBIA Ins. Corp. v. Royal Bank of Can.*, 2010 WL 3294302, at *37 (N.Y. Sup. Ct. Aug. 19, 2010) (Dismissing unjust enrichment claim plead in the alternative, because "only in cases where there is a bona fide dispute as to the existence of a contract that plaintiff may plead alternative theories of recovery.").

## 2.   **The Breach of Fiduciary Duty Claim Is Duplicative of the Contract Claims**

As stated in the opening briefs, the breach of fiduciary duty claim should be dismissed

---

[5] Apex also claims this cause of action was pleaded in the alternative, but it was not.

because Apex does not allege a separate and distinct basis for the claim (Hope 21-22.) The Complaint relies on the same set of facts to support both its breach of contract claims and its breach of fiduciary duty claims. The Complaint expressly alleges that the "Breach of Fiduciary" claim is based on the same alleged facts as the contract claim, "misappropriating Apex Capital's trade secrets" and "coordinating the mass exodus of the employees" of Apex, and does not allege any different damages. (AC ¶185.) Accordingly, the breach of fiduciary duty claim is duplicative of the contract claim and should be dismissed. *See Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014) (dismissing fiduciary duty claim "premised upon the same facts and seek[s] the same damages" as contract claims); *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) ("A breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim.").

### C.  The Conspiracy Claim is Not an Independent Cause of Action

The Former Employees argued that the civil conspiracy claim should be dismissed because Apex failed to allege an independent tort to support the claim, failed to properly allege a conspiracy, and because the claim is duplicative of its other claims. (Belinkie 24-26; Callen 21-22; Chaney 24-26; Hope 24-25.) Contrary to Apex's Opposition Brief (at 31-34), it is black-letter law that "a mere conspiracy to commit a tort is never of itself a cause of action." *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). To proceed, Apex must plead a viable underlying tort plus the requisite conspiracy elements. But the conspiracy count alleges no independent tort to state a claim; it simply asserts in conclusory fashion that Defendants "combined and agreed" to engage in "tortious and improper actions." (AC ¶¶194-200). That is precisely the type of formulaic pleading that courts routinely reject. *See Kalola v. Int'l Bus. Machines Corp.*

2019 WL 6879307, at *4 (S.D.N.Y. Dec. 16, 2019) (dismissing a "conclusory claim of civil conspiracy" that failed to plead an underlying tort.).

Likewise, Courts routinely dismiss conspiracy claims, like Apex's claim, that merely "repackage" other tort or contract theories without alleging any incremental wrongdoing. *See Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.*, 2021 WL 665031, at *3 (S.D.N.Y. Feb. 19, 2021). Here, Apex's theory is that Defendants conspired to breach restrictive covenants, misappropriate information, and move business to a competitor—the very misconduct already addressed by its substantive claims. Accordingly, the conspiracy claim should be dismissed.

## IV.    THE PERMANENT INJUNCTION CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO ONGOING VIOLATION OR IRREPARABLE HARM

*First,* Apex admits "the non-competition and non-solicitation provisions" have "expired" and is "no longer seeking permanent injunctive relief based on those provisions." (Opp. at 36).

*Second*, the Court should deny Apex's request for a permanent injunction to prevent use of its trade secrets, because, as shown above in Section I.C.1, Apex has not adequately alleged any "ongoing violation or irreparable harm" from the use of any trade secrets, as required to obtain a permanent injunction. *Charamac Props., Inc. v. Pike*, 1993 WL 427137, at *6 (S.D.N.Y. Oct. 19, 1993). Further, the Complaint makes no allegation that the Employee Defendants have violated the preliminary injunction previously issued in this case, which required the return of any Apex confidential information and trade secrets. (Dkt. No. 43.) Accordingly, the Complaint has not pled the high bar necessary to obtain the "extreme remedy" of a "[p]ermanent injunction[]." *Martinez v. Barasch*, 2005 WL 2465493, at *7 (S.D.N.Y. Oct. 5, 2005) (granting motion to dismiss claim for permanent injunctive relief).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint's claims against the Employee Defendants in their entirety, with prejudice; and Apex should not be granted leave to amend, because they have had three chances to plead a claim against the Employee Defendants.

Dated: February 26, 2026

**SADIS & GOLDBERG LLP**

/s/ Samuel J. Lieberman
Samuel J. Lieberman
Jennifer Rossan
Scott C. Ferrier
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-8164
slieberman@sadis.com
jrossan@sadis.com
sferrier@sadis.com

*Attorneys for Defendant Ryan Hope*

**FARROW-GILLESPIE HEATH WILMOTH LLP**

/s/ Stephanie K. Osteen
Stephanie K. Osteen (admitted pro hac vice)
Caylin Cierra Craig (admitted pro hac vice)
1900 North St. Paul Street, Suite 2100
Dallas, TX 75201
(214) 361-5600
stephanie.osteen@fghwlaw.com
caylin.craig@fghwlaw.com

SADIS & GOLDBERG LLP
Samuel J. Lieberman
Jennifer Rossan
Scott C. Ferrier
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-8164
slieberman@sadis.com

*Attorneys for Defendant Lucas Belinkie*

**SPENCER FANE LLP**

/s/ Laurie N. Patton
Laurie N. Patton (admitted pro hac vice)
5700 Granite Parkway, Suite 650
Plano, Texas 75024
(972) 324-0300
lpatton@spencerfane.com

Kunal Shah
43 West 43rd Street, Suite 268
New York, NY 10036-7424
(972) 324-0334
kshah@spencerfane.com

*Attorneys for Defendant William C. Chaney*

**ATWOOD & MCCALL PLLC**

/s/ Wilson E. Wray
Wilson E. Wray, Jr. (admitted *pro hac vice*)
8150 North Central Expressway, Suite 1100
Dallas, TX 75206
(972) 665-9600
wwray@atwoodmccall.com
apennington@atwoodmccall.com

SADIS & GOLDBERG LLP
Samuel J. Lieberman
Jennifer C. Rossan
Scott Ferrier
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-8164
slieberman@sadis.com

*Attorneys for Defendant Preston Callen*

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL CIVIL RULE 7.1(c)</u>

Samuel J. Lieberman, undersigned counsel for Defendant Ryan Hope, LLC, hereby certifies that the number of words within the attached memorandum of law, excluding the caption, table of contents, table of authorities, and signature block, is 6,192 according to the word-processing system used to prepare the aforesaid document.

/s/ Samuel J. Lieberman_____
Samuel J. Lieberman
