**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| APEX GROUP CAPITAL ADVISORS LLC F/K/A SANDSPOINT CAPITAL ADVISORS LLC,<br><br>Plaintiff,<br><br>v.<br><br>RELATED FUND MANAGEMENT, LLC; JAMES KRAUS; LUCAS BELINKIE; PRESTON CALLEN; WILLIAM C. CHANEY; and RYAN HOPE,<br><br>Defendants. | Case No.  25-CV-08892 (VEC) |

**JOINT MONTHLY DISCOVERY REPORT**

Pursuant to the Civil Case Management Plan and Scheduling Order ("Case Management Order") [Dkt. 112], Plaintiff Apex Group Capital Advisors LLC ("Apex Capital") and Defendants Related Fund Management, LLC ("RFM"), James Kraus (together with RFM, the "Related Defendants"), Lucas Belinkie, Preston Callen, William C. Chaney, and Ryan Hope (the "Employee Defendants", and with the Related Defendants the "Defendants," and together with Apex Capital, the "Parties") submit the following Joint Monthly Discovery Report:

**A.     Actions Completed in the Last Month by the Parties**

Since the prior Joint Monthly Discovery Report, filed March 16, 2026, the Parties have undertaken the following actions:

1.     On March 17, 2026, Plaintiff responded to the Related Defendants' deficiency letter explaining why Plaintiff's objections and responses to the Related Defendants' First Set of Requests for Production were proper. The

Parties met and conferred and continue to engage in conversation to resolve outstanding issues.

2.   On March 20, 2026, Plaintiff responded to the Employee Defendants' deficiency letter explaining why Plaintiff's responses and objections to the Employee Defendants' First Set of Interrogatories and First Set of Requests for Production were proper. The Parties met and conferred. Thereafter, in a good faith effort to resolve the Employee Defendants' concerns, Apex Capital has twice amended its interrogatory responses, first on March 27, 2026, and again April 10, 2026. Plaintiff also amended its responses and objections to the Employee Defendants' First Set of Requests for Production on April 10, 2026.

3.   On April 6, 2026, Plaintiff sent deficiency letters to Defendants outlining points of disagreement with the responses and objections provided by Defendants to Plaintiff's First Sets of Requests for Production of Documents. Plaintiff requested responses by April 10, 2026. The Related Defendants responded on April 14, 2026, as set out further below. The Employee Defendants have not responded nor indicated when they intend to do so.

4.   On April 10, 2026, the Employee Defendants requested when they would receive verifications to the Second Supplemental Responses and Objections to the Employee Defendants' First Set of Interrogatories.

5.   On April 14, 2026, the Employee Defendants notified Apex that they plan to move to compel Interrogatory Response that identifies the alleged trade secrets with the requisite particularity. The Employee Defendants explained that Apex's short list of 10 bullet points does not identify what the trade secrets are, where they are specifically located, or how they meet the standard of valuable trade secret information.

6.   The Parties have continued to meet, confer, and exchange drafts of an agreed Protective Order and an ESI Protocol. The parties anticipate being able to submit both documents to the Court soon.

**B.    Actions to be Completed in the Next Month by the Parties**

Consistent with the Case Management Order and the discovery schedule outlined in the Parties' Joint Monthly Discovery Report filed on February 16, 2026, the Parties anticipate producing responsive documents on a rolling basis over the next month and to notice depositions to take place over the summer.  The Employee Defendants have informed Apex Capital that Apex

Capital must provide a proper identification of its trade secrets before any production related to the trade secret claims.

The Parties are finalizing a Protective Order and ESI Protocol. Apex Capital has sent final versions of both the Protective Order and the ESI Protocol. Defendants have all approved of those drafts with minor changes. Defendants are waiting on Apex Capital to consent to the e-signing of both documents, and then the Defendants will file both documents with the Court.

**C.     Disputes Between the Parties**

### i.     The Employee Defendants' Disputes with Apex

On March 13, 2026, the Employee Defendants sent a deficiency letter to Apex focusing on Apex's failure to identify and explain its alleged trade secrets with reasonable particularity. In trade secret cases, a plaintiff is required to identify its trade secrets with reasonable particularity "before the plaintiff gets the benefit of defendant's discovery." *Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC,* 2025 WL 219063, at *2 (S.D.N.Y. Jan. 16, 2025). But, over a month later, Apex has only provided a vague, unverified list of ten bullet points, spanning less than one page, which does not specify the trade secrets at issue, nor explain which specific information is the trade secret or where it is found.

Apex has not (and cannot) meet the requirement to identify, for "each of the … documents" allegedly misappropriated, "the specific information comprising each trade secret contained in such document" and the "specific location … where each trade secret can be found." *Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc*., 764 F. Supp. 3d 115, 118 (S.D.N.Y. 2025). It is well-settled that a mere "list of documents containing or referring to items of trade secrets and confidential data" is insufficient to identify trade secrets with reasonable particularity. *Lonza Greenwood LLC v. Natals, Inc.*, 2026 WL 396079, at *2 (S.D.N.Y. Feb. 12, 2026). But Apex has

not even done that – it has only given a few examples of documents, without explaining the specific information comprising each trade secret. This is a fundamental defect in Apex's case, and a fundamental issue that must be addressed to facilitate discovery. Accordingly, the Employee Defendants intend to move to compel supplemental responses to their Interrogatories requesting the identification of the alleged trade secrets at issue.

This issue is ripe for court intervention. The Employee Defendants (i) raised this issue as a basis for their motions to dismiss, (ii) raised this issue in discovery over a month ago, and (iii) the parties have already met and conferred on this issue on April 2, 2026. But Apex has still failed to provide the required trade secret disclosure.

As to Apex's April 6 deficiency letter regarding the Employee Defendants' responses and objections, the Employee Defendants intend to respond by April 17.  Of course, Apex's deficient trade secret disclosure issue needs to be resolved to properly address the deficiencies that Apex alleges. The purpose of requiring plaintiff to identify trade secrets with reasonable particularity is to determine the scope of discovery and "discern the relevancy of any discovery requests." *Lonza Greenwood LLC*, 2026 WL 396079, at *2.

### ii.    *Apex's Dispute with the Defendants*

First, Plaintiff does not believe this report is the appropriate place to argue a motion to compel.  Plaintiff also disagrees with the Employee Defendants' iteration of the standard of reasonable particularity.  As both of the cases Employee Defendants cite explain, a plaintiff need only provide enough information to (1) put the defendant on notice of the nature of the plaintiff's claims, and (2) allow the defendant to determine the relevancy of discovery requests.  *Lonza Greenwood LLC*, 2026 WL 396079 at *2; *Rocket Pharmaceuticals, Inc.*, 764 F. Supp.3d at 118. Additionally, as the court explained in *Lonza*, less specificity is required before discovery.  *Id.*

Further, the Employee Defendants' reliance on *Rocket Pharmaceuticals, Inc.* is misplaced. In that case, the court analyzed whether the plaintiff sufficiently identified trade secrets in thousands of documents produced in the case. *Rocket Pharmaceuticals, Inc.*, 764 F. Supp.3d at 119. That case has no application here, where the Employee Defendants have not produced any documents (and in fact have stated they will not do so). Plaintiff has amended its interrogatory responses twice, has identified the trade secrets with the required particularity at this stage of proceedings, and has even provided specific examples from documents previously produced by the Employee Defendants in compliance with the temporary restraining order issued by the United States District Court for the Northern District of Texas. All of this goes well beyond what is required by Local Rule 33.3 and relevant case law. If the Employee Defendants nonetheless fail to produce documents as required, Plaintiff will seek this Court's intervention. It appears from both parties' positions that this issue will shortly be ripe for the Court to resolve by appropriate notice and motion.

Second, On April 6, 2026, Plaintiff sent separate deficiency letters to the Employee Defendants regarding the Employee Defendants' discovery responses. The Employee Defendants did not respond by the requested deadline of April 10, 2026, nor have they indicated when they intend to respond. In its deficiency letters, Plaintiff requested that the Employee Defendants:

1. Describe the 'reasonably diligent' search they undertook to respond to Plaintiff's requests;

2. Confirm that they are providing full and complete responses to certain requests and are not unilaterally and improperly narrowing their responses to those requests, as their responses and objections appear to indicate;

3. Produce documents and communications concerning any current or former Apex Capital client located on any non-Apex issued device in the Employee Defendants' possession, custody, or control, which documents and communications are directly relevant to Apex Capital's allegation that the

Employee Defendants misappropriated trade secrets and confidential information;

4.   Produce documents and communications between the Employee Defendants and any Apex Capital employee concerning any employee's decision to leave his or her employment with Apex Capital, or to take employment with IQ-EQ, which documents and communications are directly relevant to Apex Capital's allegation that the Employee Defendants breached their Employment Agreements by soliciting other Apex Capital employees to work at IQ-EQ;

5.   Produce documents and communications concerning the Employee Defendants' Employment Agreements, which documents and communications are directly relevant to Apex Capital's allegation that the Employee Defendants breached those agreements;

6.   Produce documents and communications concerning the Employee Defendants' compensation and bonuses received after Apex Capital's acquisition of SandsPoint, which documents and communications are directly relevant to Apex Capital's allegations that the Employee Defendants' conspired to leave Apex Capital and breach their Employment Agreements; and

7.   Produce documents and communications regarding the Employee Defendants' salary and bonus structure at IQ-EQ, which documents and communications are directly relevant to Apex Capital's alleged damages as well as the Employee Defendants' contention that they left Apex Capital for (among other alleged reasons) higher compensation.

The Employee Defendants stated that they would provide a response to Apex's letter by April 17, 2026.

On April 6, 2026, Plaintiff sent a letter to RFM arguing that its responses and objections to Plaintiff's First Set of Requests for Production contained certain deficiencies. The Related Defendants responded on April 14, 2026. Plaintiff describes its disputes with RFM as follows:

1.   RFM's failure to respond fully to multiple requests, instead indicating that it would "meet and confer" regarding those requests;

2.   RFM's attempt to unilaterally narrow the relevant time period covered by certain requests for production (because part of that time period post-dates the filing of Plaintiff's complaint), notwithstanding that the information requested is directly relevant to Plaintiff's allegations and claimed damages;

6

3.      RFM's attempt to produce only documents it finds relevant to the lawsuit rather than all communications between James Kraus and Employee Defendants. These communications are directly relevant to Apex Capital's allegations of conspiracy and go to RFM's alleged basis for terminating the MSA;

4.      RFM's attempt to avoid producing documents relevant to its defenses after sending document requests to Plaintiff regarding the exact same defenses;

5.      RFM's refusal to produce its invoices from IQ-EQ, which documents are directly relevant to Apex Capital's damages;

6.      RFM's attempt to unilaterally narrow the scope of its response to Plaintiff's request for documents and communications between RFM and the Employee Defendants concerning IQ-EQ, which documents are directly relevant to Plaintiff's allegations of conspiracy; and

7.      RFM's attempt to unilaterally narrow the scope of its response to Plaintiff's request for documents and communications with Lucas Belinkie concerning Apex Capital's database and confidential information, which documents and communications are directly relevant to Apex Capital's claims of conspiracy, tortious interference with contract, and misappropriation of trade secrets.

On April 6, 2026, Plaintiff sent a letter to Kraus arguing that his responses and objections to Plaintiff's First Set of Requests for Production contained certain deficiencies. Plaintiff describes its disputes with Kraus as follows:

1.      Kraus's failure to respond fully to multiple requests, instead indicating that he would "meet and confer" regarding those requests;

2.      Kraus's objection to producing all communications with Employee Defendants concerning Apex Capital, IQ-EQ, or RFM, claiming that to do so would be unduly burdensome, however, the request is limited to Kraus's personal communications, and such communications are directly relevant to Apex Capital's claims of conspiracy and tortious interference with contract.

Plaintiff disagrees with Related Defendants characterization of the timeline below, and with Related Defendants contention Plaintiff has not responded to their issues.

_The Related Defendants respond as follows_: As described more fully below, the Related Defendants believe they are complying with almost all of Apex's requests. They did request in

7

their Responses and Objections a meet and confer so as to clarify certain vague requests or to narrow unduly broad requests. After a month, Apex responded by letter without substantively addressing the concerns the Related Defendants raised. The Related Defendants are pleased that, after five weeks, they have a meet and confer scheduled with Plaintiff to address these concerns. With respect to the specific disputes:

1. The Related Defendants take the position that Apex's proposed timeframe for discovery would include documents that post-date the relevant events by nearly a full year. They have counter-proposed a timeframe of January 2024 to May 27, 2025, the date on which this action was filed. They have invited Apex to explain why a broader timeframe is required or to isolate certain requests for which a broader timeframe is necessary. Apex has not yet responded to this request.

2. The Related Defendants have requested that the parties meet-and-confer to narrow Apex's request for all communications between the Employee Defendants and Kraus, as that request, as written, represents a voluminous number of documents about irrelevant routine services. The Related Defendants have invited Apex to propose a narrowed request. Apex has not yet responded.

3. The Related Defendants have agreed to produce IQ-EQ invoices to the extent they are relevant. Such a disclosure would necessarily be limited by date and business line.

4. The Related Defendants object to producing all communications with IQ-EQ "concerning the Employee Defendants" because that request, as written, could pull in voluminous and irrelevant documents given that (a) the employees now work at IQ-EQ, (b) Apex's First Amended Complaint does not allege IQ-EQ was a party to the purported conspiracy in this case, and (c) Apex dismissed IQ-EQ with prejudice from a suit alleging IQ-EQ's participation. The Related Defendants have invited an explanation from Apex, but Apex has not yet responded.

5. The Related Defendants have said they will produce documents concerning RFM's attempt to extract its own data from Apex, which they believe covers the information Apex seeks regarding the Apex Database or confidential information. The Related Defendants have asked Apex to clarify if there is a separate database or confidential information Apex is alleging the Related Defendants accessed or to which they sought access, but Apex has not yet responded.

6. With respect to Kraus's personal communications, this joint status report is the first time Apex has said it is seeking those documents. The Related Defendants

8

do not believe this status report is the appropriate venue for the parties to argue over new Requests for Production or new arguments between the parties.

Plaintiff and the Related Defendants plan to meet and confer regarding these items on April 16. They remain hopeful these issues can be resolved without the Court's intervention.

On March 27, counsel for the Related Defendants and Apex met and conferred regarding the Related Defendants' requests for production. During that call, and over subsequent emails, the parties were able to resolve several disputes, though certain disputes remain. In particular:

1. The Related Defendants' request for documents related to the IQ-EQ Action;

2. The Related Defendants' request for documents related to customer complaints; and

3. The Related Defendants' request for documents sufficient to show the structure and organization of Apex.

The Related Defendants and Apex remain hopeful these disputes will be resolved without Court intervention.

Date:   April 15, 2026

/s/ *Abigail Griffith*
Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
Abigail Griffith
Texas Bar No. 24113585
abby.griffith@pillsburylaw.com
401 W 4th Street, Suite 3200
Austin, TX 78701
(512) 580-9600

Patricia Rothenberg
Patricia.rothenberg@pillsburylaw.com
31 W. 52nd Street
New York, New York 10019
(212) 858-10000

PILLSBURY WINTHROP SHAW PITTMAN LLP

9

*Attorneys for Apex Group Capital Advisors LLC*


/s/ David Kimball-Stanley
Nicole Gueron
David Kimball-Stanley
Elizabeth R. Baggott
CLARICK GUERON REISBAUM LLP
41 Madison Avenue, 23rd Floor
New York, NY 10010
Phone: (212) 633-4310
Fax: (646) 478-9484
ngueron@cgr-law.com
dkimballstanley@cgr-law.com
ebaggott@cgr-law.com
*Attorneys for Defendants Related Fund*
*Management, LLC and James Kraus*

/s/ Samuel J. Lieberman
Samuel J. Lieberman
Jennifer Rossan
Scott C. Ferrier
SADIS & GOLDBERG LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-6675
*Counsel for Defendant Ryan Hope*

/s/ Wilson E. Wray
Wilson E. Wray (pro hac)
Texas State Bar No. 00797700
wwray@atwoodmccall.com
ATWOOD & MCCALL, PLLC
8150 N. Central Expressway, Suite 1100
Dallas, Texas 75206
T: (972) 665-9600
F: (214) 736-2960
Samuel J. Lieberman
Jennifer Rossan
Scott C. Ferrier
SADIS & GOLDBERG LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-6675
*Attorneys for Defendant Preston Callen*

10

/s/ Laurie N. Patton
Laurie N. Patton (admitted pro hac vice)
5700 Granite Parkway, Suite 650
Plano, Texas 75024
(972) 324-0300
lpatton@spencerfane.com
Kunal Shah
SPENCER FANE LLP
43 West 43rd Street, Suite 268
New York, NY 10036-7424
(972) 324-0334
kshah@spencerfane.com
*Attorneys for Defendant William C. Chaney*

/s/ Stephanie K. Osteen
Stephanie K. Osteen (admitted *pro hac vice*)
Caylin Cierra Craig (admitted *pro hac vice*)
FARROW-GILLESPIE HEATH WILMOTH LLP
1900 North St. Paul Street, Suite 2100
Dallas, TX 75201
(214) 361-5600
Samuel J. Lieberman
Jennifer Rossan
Scott C. Ferrier
SADIS & GOLDBERG LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-6675
*Counsel for Defendant Lucas Belinkie*

**CERTIFICATE OF SERVICE**

I hereby certify that, on Aoril 15, 2026, a copy of the foregoing was served on all counsel of record electronically via ecf.

/s/ Draft
Abigail Griffith

11