

Scott Ferrier
Sadis & Goldberg LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
Phone: 212.573.8021
sferrier@sadis.com

May 1, 2026

**VIA ECF**

The Honorable Valerie Caproni
United States District Court
Southern District of New York
500 Pearl Street, Chambers 1930
New York, NY 10007-1312

Re:    *Apex Group Capital Advisors LLC v. Related Fund Management LLC et al.,* 1:25-cv-08892

Dear Judge Caproni:

Defendants Lucas Belinkie, Preston Callen, William Chaney, and Ryan Hope (collectively, the "Employee Defendants") respectfully request an order compelling Apex Group Capital Advisors LLC ("Apex") to identify its alleged trade secrets with particularity, consistent with precedent in this Circuit. Specifically, the Employee Defendants seek an order, for the 364 documents they have already produced, that requires "[f]or each document, Plaintiff shall identify the specific information comprising each trade secret contained in such document and the specific location in the document where each trade secret can be found." *See Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, 764 F. Supp. 3d 115, 119 (S.D.N.Y. 2025). Further, "to the extent that Plaintiff knows how a document was disclosed to or acquired by [the Employee Defendants] and/or the manner in which the documents was used [], Plaintiff shall disclose such information." *Id.*

It is well-settled that in trade secret cases, the plaintiff shall "clarify with particularity the specific trade secrets" allegedly misappropriated, and its identification must contain "more than a mere naked assertion that such secrets are used." *Ferguson v. Ferrante*, 2014 WL 1327968, at *2 (S.D.N.Y. Apr. 3, 2014) (Caproni, J.). A trade secret plaintiff is required to identify its trade secrets with reasonable particularity "before the plaintiff gets the benefit of defendant's discovery." *Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC,* 2025 WL 219063, at *2 (S.D.N.Y. Jan. 16, 2025). In addition, a mere "list of documents containing or referring to items of trade secrets and confidential data" is insufficient. *Lonza Greenwood LLC v. Natals, Inc.*, 2026 WL 396079, at *2 (S.D.N.Y. Feb. 12, 2026).

"The requirement of alleging a trade secret with particularity exists for the simple reason that a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself." *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014), aff'd, 610 F. App'x 69 (2d Cir. 2015). The burden is Apex's—not the Employee Defendants'—to identify the alleged trade secrets with particularity. *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974).

Here, Apex's purported identification of trade secrets is merely a generic list of 10 alleged trade secrets spanning less than one page, five of which do not even identify any documents allegedly containing any trade secret. For example, Apex asserts, without citing any document,

1

"all processes and formulas" in unspecified "proprietary workbooks." (Ex. 1 pp 3, 7; 10; 13).[1] Apex also claims that unspecified "Profit and Loss analysis for acquiring companies" is a trade secret, without any explanation or identification of any document. (*Id.* pp. 5, 7, 10, 13). Next in Apex's list is unspecified "information contained in the Investran database," (a database it concedes the Employee Defendants did not take), including "all of the information that Plaintiff inputs into the database." (*Id.*). Apex also states that unspecified "revenue projections" and "prospective client list" are trade secrets, without any explanation of what these are, why they are valuable, or in which document this unspecified information is contained.

*First*, Apex's response is deficient on its face. It identifies categories, not specific information that it claims is a trade secret. Apex does not explain what processes or formulas are trade secrets or what those processes or formulas do. Instead, it merely references processes or formulas without specification, which allows the Employee Defendants to identify and nail down what the processes or formulas are or what competitive advantage it gave the Employee Defendants. Similarly, Apex does not explain what "information contained in the Investran database" is at issue here; what is the nature of the information; what information is the trade secret; or what about the information makes it a trade secret. Apex provides no guidance or explanation of what "projection" are trade secret – revenue projections for what entity, for what period, or for what purpose. In addition, Apex's reference to a "prospective client list" is vague and meaningless. By definition, this "prospective" means these are not clients, and there is no indication of what information this would involve, nor what this document would look like or where it would be located. In short, entire categories of information, including "all information" in proprietary workbooks and reports, "all processes and formulas" used to create those workbooks, and "all training material," are not an identification of a trade secret. Instead, it is a vague list of potential issues that Apex might raise after engaging in a fishing expedition in discovery.

*Second*, for the five other categories of documents, Apex does not identify anything close to the full set of documents containing the alleged trade secret. Instead, Apex cites a couple of examples of documents as a non-exhaustive list. The problem with this is that *in July 2025*, the Employee Defendants have already produced 364 documents that they contend are the only documents in their possession that were Apex documents. Apex has refused to review those documents and identify (i) what trade secret information is contained in those documents, (ii) where the trade secret information is located in the documents, or (iii) how that trade secret information has been used or disclosed.

Apex's failure to address the 364 documents that have already been produced is a critical deficiency. *Notably*, Apex has not identified any of the documents produced by Employee Defendants Belinkie or Hope in its interrogatory response. This gives them no notice of what the trade secret allegations are against them. Moreover, it is undisputed that Apex has had in its possession since January 2025 a set of logs of 41,000 documents that it alleges the Employee Defendants improperly downloaded from Apex's systems. (Ex. 2  Excerpts from Apex's Jan. 31, 2025 Complaint; Ex. 3 Declaration of Maria Von Horvath.) Apex alleged these downloads in a

---

[1] Exhibit 1 contain Apex's response to each Employee Defendants' Interrgoatory requesting identification of the alleged trade secrets.

January 2025 complaint, and then again cited these logs in motions for a temporary restraining order in June and July 2025. Thus, Apex has had a year to identify these documents and to identify the alleged trade secrets that it claims this case is about. Yet, amazingly, Apex refuses to specify its trade secrets by reference to specific information, in specific documents that it has had in its possession for over six months.

*Rocket* is directly on point and should govern. In *Rocket*, in the early stages of discovery, the defendant produced what it "contends are the 631 unique *Rocket* documents found on [its] devices and systems." *Rocket Pharms., Inc.,* 764 F. Supp. 3d at 117. But instead of addressing those documents, the plaintiff "provided a list of misappropriated documents purportedly containing its trade secrets" under the heading for "each category" of generic purported trade secrets. *Id.* at 118. The Court rejected the plaintiffs' disclosure as insufficient to identify trade secrets with reasonable particularity.

Instead, *Rocket* ordered the plaintiff to "provide a supplemental response regarding the trade secrets, if any, Plaintiff are contained in each of the 631 documents" as follows:

> "For each document, Plaintiff shall identify the specific information comprising each trade secret contained in such document and the specific location in the document where each trade secret can be found. In addition, to the extent that Plaintiff knows how a document was disclosed to or acquired by Lexeo and/or the manner in which the documents was used by Lexeo, Plaintiff shall disclose such information." *Id.* at 119.

Here, just like in *Rocket*, the Employee Defendants have produced a discrete set of 364 documents months ago, which Apex has had ample opportunity to review and analyze for potential trade secrets. And just like *Rocket*, the Employee Defendants have produced this set of documents as the Apex documents that were in their possession, custody and control. So, Apex should be required to identify with particularity what information it claims is a trade secret in each document, which documents contain an alleged trade secret, and specifically where in the document the trade secret is located. Further, to the extent Apex has knowledge, it should identify how the alleged trade secret has been used or disclosed by a Defendant.

Until Apex provides that disclosure, the Employee Defendants cannot know what they are accused of misappropriating, cannot assess the relevance of discovery requests directed to Apex's trade-secret claims, and cannot meaningfully prepare their defenses. The Court should not require the Employee Defendants to conduct discovery based on Apex's moving target. The Employee Defendants met and conferred in an attempt to resolve this dispute. But Apex has refused to clarify whether it would provide anything more than a list of documents that it alleges contain the trade secrets. This is plainly insufficient.

*Rocket* also held that for documents beyond the 631 identified by the defendants, that "[a]fter further discovery is taken," the "Plaintiff shall be compelled before discovery concludes to provide the supplemental response" for "each such document" in the entire document production. *Id.* at 119-20. In addition to the disclosure above, the Court should order Apex to make this further supplemental disclosure before discovery concludes.

Respectfully Submitted,

/s/ *Scott Ferrier*
Scott C. Ferrier
Sadis & Goldberg LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-6675