

Pillsbury Winthrop Shaw Pittman LLP

31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Brian L. Beckerman
Tel: +1.212.858.1228
brian.beckerman@pillsburylaw.com

May 8, 2026

**VIA ECF**
Hon. Valerie E. Caproni
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Court Room 20C
New York, New York 10007

> Re:    **Apex Group Capital Advisors LLC v. Related Fund Management, LLC, 1:25-cv-08892-VEC**

Dear Judge Caproni,

We write on behalf of Plaintiff Apex Group Capital Advisors LLC *f/k/a* SandsPoint Capital Advisors LLC ("Apex"), pursuant to the Court's April 27, 2026 Order (Dkt. 141), in response to the May 1, 2026 letter motion to compel interrogatory responses (Dkt. 142, the "5/1/26 Letter") filed by Defendants Lucas Belinkie, Preston Callen, William Chaney, and Ryan Hope (collectively, the "Employee Defendants").

As discussed during the April 27 hearing, this case involves the potential misappropriation of *thousands* of Apex trade secrets. Immediately preceding their departure from Apex, the Employee Defendants collectively downloaded over 41,000 documents from Apex's proprietary database containing Apex trade secret and confidential information. These were not ordinary course downloads; the download volume was not consistent with their historical download volume. Indeed, certain of the Employee Defendants downloaded thousands of documents on the very eve of their planned departure date.

While Apex knows the potential universe of trade secrets which may have been misappropriated, Apex does not yet know specifically which of those 41,000 documents were misappropriated by Employee Defendants, *i.e.*, via personal email accounts, external hard drives, cloud-based storage accounts such as Google Drive, or

May 8, 2026
Page 2

through other means—other than 364 documents which have been produced by the Employee Defendants to date.[1]

At the beginning of discovery—and predicated on their stated purpose of facilitating discovery—the Employee Defendants served interrogatories demanding, among other things, that Apex specifically identify every trade secret alleged to have been misappropriated, explain precisely how each was used or disclosed, and justify in detail why each qualifies as a trade secret. These requests are not legitimate discovery requests at this stage. Rather, they are improper contention interrogatories that squarely violate SDNY Local Rule 33.3 and are designed to force Apex to prematurely litigate the merits of its claims without the benefit of discovery.

It is well-established that, at this stage of discovery, Apex need only provide enough information to put the Employee Defendants on notice of the nature of Apex's claims and to allow the Employee Defendants to determine the relevancy of discovery requests. *See, e.g.*, *Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, No. 22 Civ. 5138 (ER), 2025 WL 219063 (S.D.N.Y. Jan. 16, 2025). Apex satisfied this burden by identifying ten categories of trade secrets—covering the scope of the over 41,000 documents downloaded by the Employee Defendants—with document citations where helpful. *See* 5/1/26 Letter, Ex. 1 at 5-6. **The Employee Defendants claimed that was insufficient**.

In a good faith effort to resolve this dispute, Apex then produced detailed download reports identifying the universe of the over 41,000 documents at issue, along with the file names, individual downloader, download device, and download date for all 41,000 documents. All trade secrets at issue in this case—other than, of course, any misappropriated trade secrets Apex is currently unaware of—are in those reports. Accordingly, those reports provided the Employee Defendants with exactly what they requested—guardrails for discovery; the Employee Defendants can review those reports and determine what documents in their possession must be produced. **But the Employee Defendants claimed that was insufficient**.

Following the April 27 hearing before Your Honor, and again in a good faith effort to resolve this dispute, Apex went further still—agreeing to identify the trade secrets within the 364 documents produced by the Employee Defendants to date, including pinpointing portions of documents where necessary, and to supplement those identifications on a rolling basis. *See* Ex. B. That concession gave the Employee Defendants *exactly what they represented to the Court they wanted* at the April 27 hearing. *See* Ex. A at 8:13-9:9, 11:11-18. The Employee Defendants initially agreed.

---

[1] During the April 27 hearing, counsel for the Employee Defendants contended that those 364 documents were the only documents misappropriated. *See* Ex. A at 10:9-13. It defies common sense that the Employee Defendants would download tens of thousands of proprietary documents in rapid succession on the eve of a coordinated departure, only to retain or use a tiny fraction of them. The far more reasonable inference—which Apex believes will ultimately come to light during discovery—is that responsive documents remain in their possession, custody, or control and have not been produced.

May 8, 2026
Page 3

Ex. B at 7-8. However, on May 1, 2026—the evening their letter was due—**the Employee Defendants reversed course and claimed that was insufficient**. *See id.* at 1-3.[2]

Instead, the Employee Defendants insisted that Apex adhere to the heightened disclosure ordered in their most-cited case, *Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, 764 F. Supp. 3d 115, 119 (S.D.N.Y. 2025). *See* Ex. B at 1-3; *accord* 5/1/26 Letter at 3 ("Apex should be required to identify with particularity what information it claims is a trade secret in each document, which documents contain an alleged trade secret, and specifically where in the document the trade secret is located. Further, to the extent Apex has knowledge, it should identify how the alleged trade secret has been used or disclosed by a Defendant.").

The Employee Defendants' demand that Apex identify with granular specificity every trade secret in every document, explain precisely where it appears, and detail how it was used or disclosed goes far beyond what the law requires at this stage. It would effectively force Apex to prove its entire case, including the mechanics of the Employee Defendants' misconduct, before Apex has had access to the very discovery necessary to uncover those facts.

The Employee Defendants' contention that such disclosures are necessary to put guardrails on discovery is not only legally unsupported, it is fundamentally unreasonable. As Your Honor correctly observed at the April 27 hearing, the Employee Defendants already know what they took, how they used it, and where it resides. *See* Ex. A at 11:19-12:4. Apex, in contrast, is at a serious information deficit in this regard. The Employee Defendants' proposal would exploit that asymmetry by requiring Apex to speculate about facts uniquely within Defendants' knowledge.

\* \* \*

Accordingly, Apex respectfully requests that the Court order that Apex's obligation at this stage has been satisfied, or that Apex's obligation is limited to identifying which of the Employee Defendants' 364 documents constitute trade secrets, and to the extent only a portion of a document contains trade secrets, identifying which portion.

Respectfully submitted,

*/s/ Brian L. Beckerman*
Brian L. Beckerman

---

[2] *Compare* 5/1/26 Letter at 3 ("Apex has refused to clarify whether it would provide anything more than a list of documents that it alleges contain the trade secrets. This is plainly insufficient."), with Ex. B at 9 ("[W]e understand that Apex will identify the documents within the Employee Defendants' productions that it contends contain Apex trade secrets [and] where Apex does not contend that an entire document is a trade secret, Apex will identify the specific location in the document where the alleged trade secret is located. Based on that agreement, the Employee Defendants do not believe letter briefing to the Court is necessary at this time.").