

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Brian L. Beckerman
Tel: +1.212.858.1228
brian.beckerman@pillsburylaw.com

July 22, 2026

**VIA ECF**
Hon. Gary Stein
United States Magistrate Judge
500 Pearl Street, Room 702
United States Courthouse
New York, NY 10007

> **Re:** ***Apex Group Capital Advisors LLC v. Related Fund Management,***
> ***LLC et al.*****, 1:25-cv-08892-VEC**

Dear Judge Stein:

We write on behalf of Plaintiff Apex Group Capital Advisors LLC *f/k/a* SandsPoint Capital Advisors LLC ("Apex"), pursuant to Rule I(A) of Your Honor's Individual Practices in Civil Cases, to respectfully notify the Court of a significant development bearing directly on the discovery dispute currently before the Court concerning forensic imaging of the computers, mobile devices, external hard drives, email accounts, and cloud storage platforms belonging to Defendants Lucas Belinkie, Preston Callen, William C. Chaney, and Ryan Hope (collectively, the "Employee Defendants").

As the Court is aware, the Honorable Valerie E. Caproni referred the parties' discovery dispute regarding forensic imaging to Your Honor following submission of the parties' July 15, 2026 Joint Status Report (Dkt. 153). Specifically, in that Joint Status Report, Apex demonstrated that forensic imaging was warranted based on, among other things: (1) the Employee Defendants' extensive download activity to their Apex-issued devices and use of personal email accounts, external storage devices, and cloud storage platforms immediately preceding their departures from Apex, compared with the Employee Defendants' production of only a small fraction of those downloaded materials in discovery, raising substantial concerns regarding the completeness of their document retentions and collections; and (2) Messrs. Belinkie's, Hope's, and Callen's admitted failure to preserve responsive text messages during the critical time period in this case, which raises serious spoliation concerns. *See* Dkt. 153 at 2.[1]

---

[1] Specifically, as set forth in that Joint Status Report, counsel for Mr. Belinkie advised that Mr. Belinkie did not, as a matter of practice, retain all text messages on his mobile device predating January 17, 2025.

July 22, 2026
Page 2

Less than forty-eight hours after submission of that Joint Status Report, on July 17, 2026, counsel for Mr. Chaney advised that they had discovered, on Mr. Chaney's personal laptop, **an entire archived Microsoft Outlook (.pst) file[2] containing over seven years of Apex-related emails, calendar invites, attachments, and other documents** that had never previously been identified or produced. *See* Exhibit A. Contemporaneously with that email, Mr. Chaney produced approximately 8,000 documents (22,700 additional pages) Bates-stamped CHANEY00004817-CHANEY00027585. *See id.* Apex is still reviewing that production but has already identified substantial amounts of Apex confidential information therein.

Mr. Chaney's counsel's July 17, 2026 email was in response to an email chain between counsel for Apex and counsel for the Employee Defendants dated June 17 - July 10, 2026 (*see* Exhibit B) regarding the Employee Defendants' purported compliance with the July 7, 2025 Temporary Restraining Order (Dkt. 16, "TRO") and August 4, 2025 Preliminary Injunction Order (Dkt. 43, "PI Order") issued in this lawsuit. Pursuant to those Orders, the Employee Defendants, including Mr. Chaney, were ordered to "return . . . to Apex and refrain from using or disseminating" "any of Apex's confidential and trade secret information in their custody." *See* Dkt. 16 at 11; Dkt. 43 at 11. The Employee Defendants' production of hundreds of documents containing Apex confidential and trade secret information nearly a year after the TRO and PI Order were entered necessitated Apex counsel's inquiry. *See* Exhibit B.

The new development that Mr. Chaney has had an entire Outlook archive containing thousands of Apex emails and documents, including confidential information and potentially trade secrets, for more than a year after the TRO and PI Order, substantially reinforces Apex's request for forensic imaging. Whether this archive escaped detection because of deficiencies in the original collection, shortcomings in the Employee Defendants' search methodology, or some other reason, the result is the same: Mr. Chaney's discovery process failed to identify a substantial repository of Apex information residing on a personal device.

---

*See* Dkt. 153 at 1-2. Mr. Callen's counsel advised that potentially responsive text messages "may have been auto-deleted by a function on Mr. Callen's phone and/or deleted by Mr. Callen as part of his purging of data on his phone to avoid increased iCloud storage charges prior to receipt of Apex's cease and desist letter in January 2025, though Mr. Callen does not have a specific memory of doing so." *See id.* at 1-2. Mr. Hope's counsel advised that Mr. Hope did not disable an autodeleting setting on his phone that has affected his ability to retrieve text messages predating mid-February 2025. *See id.* at 2. The absence of those text messages from three of the four Employee Defendants is significant because the production of text messages by Mr. Chaney—apparently the only Employee Defendant who preserved his text messages during the critical period at issue in this case—uncovered communications among and between the Employee Defendants directly supporting Apex's claims.

[2] An Outlook Personal Storage Table, or ".pst," file is a Microsoft Outlook archive file that stores a user's email mailbox locally on a computer. Unlike individual email files, a .pst file functions as a complete archive and searchable repository of a user's Outlook account, typically capturing all incoming and outgoing emails, calendar invites, etc.

July 22, 2026
Page 3

This development confirms Apex's concern that the Employee Defendants conducted a self-directed collection in response to the TRO and PI Order and in connection with discovery in this case generally, and underscores the necessity of an independent forensic examination to determine the full extent of Apex confidential information and trade secrets that remain on the Employee Defendants' personal devices and accounts (or that may have been deleted from those personal devices and accounts at a time when the information should have been preserved). Apex also submits that forensic imaging of Mr. Chaney's personal laptop is now independently warranted to enable Apex to investigate when this archived Outlook file was discovered and if any of the emails and documents contained therein—namely, Apex's confidential information and trade secrets—were accessed, used, or disclosed, and when.

Finally, the timing of Mr. Chaney's disclosure is notable. Mr. Chaney waited to disclose the existence of this Outlook archive until after the parties met and conferred regarding Apex's forensic imaging requests and only after the parties had submitted their Joint Status Report raising this issue for the Court to decide, although the metadata of Mr. Chaney's document production appears to indicate that this Outlook archive was discovered and collected in **April 2026**. We fail to understand why counsel for Mr. Chaney did not notify us about this archived Outlook file immediately upon its discovery, particularly in light of upcoming depositions. That Mr. Chaney's counsel produced 8,000 Bates-stamped documents on July 17th indicates that Mr. Chaney's counsel was aware of this archived Outlook file earlier in discovery, and certainly before the parties' submission of the Joint Status Report on July 15th.

Apex respectfully submits this letter so that the Court may consider this newly discovered evidence when resolving the pending discovery dispute. This development was unknown to Apex when the parties submitted their Joint Status Letter, yet it directly bears on whether forensic imaging is necessary and proportional under the circumstances.

Respectfully submitted,

/s/ Brian L. Beckerman
Brian L. Beckerman