# EXHIBIT A

 **SADIS**

Scott Ferrier, Esq.
Sadis & Goldberg LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
Phone: 212.573.8021
sferrier@sadis.com

July 6, 2026

**VIA EMAIL**

Brian Beckerman
Pillsbury Winthrop Shaw Pittman LLP
31 W. 52nd Street
New York, New York 10019
(212) 858-1228
brian.beckerman@pillsburylaw.com

Re:    *Apex Group Capital Advisors LLC v. Related Fund Management et. al.*, 25-cv-08892

Dear Mr. Beckerman:

On behalf of Defendants Lucas Belinkie, Preston Callen, William C. Chaney, and Ryan Hope (collectively, "Employee Defendants"), I write in response to Apex Group Capital Advisors LLC's ("Apex" or "Plaintiff") letter dated June 26, 2026. In addition, the Employee Defendants are available to meet and confer with Apex on the issues below on July 9 or 10 to discuss further.

**A.     Apex Has Not Met the Heavy Burden to Justify the Extreme Measure of a Direct Forensic Examination of the Employee Defendants' Devices**

The Employee Defendants assert that Apex has not met the heavy burden to justify the extraordinary remedy of invading their privacy and privilege interests through a direct forensic examination. The Employee Defendants have made significant and numerous productions of documents, and have diligently followed-up on Plaintiffs' multiple inquires about their productions – including several supplemental productions. Accordingly, Apex has not met its burden of showing "reason to believe that a litigant has tampered with [a device ] or hidden relevant materials," as necessary to justify a direct forensic examination. *Lifeng Chen v. New Trend Apparel, Inc.*, 2012 WL 4784855, at *1 (S.D.N.Y. Oct. 2, 2012).

Specifically, Apex has not shown that any Employee Defendant intentionally tampered with, destroyed, concealed, or withheld relevant evidence or engaged in any widespread destruction or withholding of relevant evidence. Further, Apex has not even shown that a forensic examination would uncover relevant information that is not duplicative of materials already produced in this action. Indeed, Apex still has not identified with particularity the trade secrets that it claims it wants to search for in any forensic review, which raises serious concerns that this is a fishing expedition for Apex to invade the Employee Defendants' personal devices for harassment or to see if Apex can fish for other claims. Vague and unsubstantiated allegations do not justify a highly intrusive fishing expedition.

*First*, as stated in the Employee Defendants' responses and objections to Apex's inspection demand, the heavy "burden and expense" of a forensic review of personal devices is not justified

unless there is evidence of "widespread destruction or withholding of relevant information." *Freeman v. Deebs-Elkenaney*, 2023 WL 2535195, at \*2 (S.D.N.Y. Mar. 16, 2023) (quoting *Uddin v. O'Brien Rest. Holding Co., LLC*, 2017 WL 11674895, at \*2 (S.D.N.Y. Aug. 23, 2017). It is well-settled that "forensic examinations of computers and cell phones are generally considered a drastic discovery measure because of their intrusive nature." *Aminov v. Berkshire Hathaway Guard Ins. Companie*s, 2022 WL 818944, at \*1 (E.D.N.Y. Mar. 3, 2022) (denying a forensic investigation). The Advisory Committee Notes to the 2006 amendment to Rule 34 specifically state that "Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." Here, Apex has not identified any evidence of deliberate widespread destruction, deletion, concealment, or withholding of documents. Thus, Apex's arguments lack merit.

In contrast, Apex is misguided in relying on *Schreiber v. Friedman* and *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, to incorrectly claim that it does not have a heavy burden of proof. 2017 WL 11508067, at \*2 (E.D.N.Y. Aug. 15, 2017). In *Schreiber*, the "concealed, altered, and tampered with the computers that the Court ordered to be disclosed, imaged, and preserved" and "conceal[ed] thousands of non-privileged documents ordered to be provided to [the Plaintiff]." 2017 WL 11508067, at \*2. Likewise, Apex's case *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, involved a defendant who testified that "he discarded the personal computer onto which he downloaded [at-issue] client information" after receiving a document preservation letter, and that he used that information to solicit Plaintiff's clients. 267 F.R.D. 443, 446 (D. Conn. 2010). Apex identifies no comparable evidence of intentional wrongdoing here.[1]

Indeed, the most Apex can point to is the fact that two of the four Employee Defendants inadvertently failed to disable an auto-delete feature for their text messages (nothing else) that has caused a gap in their document collection. But "that blunder alone cannot bear the weight of" Apex's "otherwise unsupported suspicion" that the Employee Defendants have deliberately "withheld more" information or intentionally destroyed information as required for a direct forensic exam. *Uddin v. O'Brien Rest. Holding Co., LLC*, 2017 WL 11674895, at \*2–3 (S.D.N.Y. Aug. 23, 2017) (denying forensic exam where Defendants "inadvertently misrepresented … that they did possess employee email addresses" and one Defendant "modif[ied]" a document "before sending it" to plaintiff); *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 169–70 (S.D.N.Y. 2004), *order clarified*, 2005 WL 1514284 (S.D.N.Y. June 24, 2005) (denying "request for direct access to hard drives, servers, and databases" despite defendant's "failure to produce" two categories of documents "and its erroneous representation that such documents do not exist").

*Second*, unable to satisfy its heavy burden to prove intentional destruction of widespread withholding of documents, Apex suggests it is sufficient that this "case centers on allegations that the Employee Defendants intentionally downloaded Apex confidential information [and] transferred that information to personal email accounts, cloud storage platforms, external devices, and non-Apex computers." (Apex Letter at 2). But there is no legal authority for Apex's position, which is both incorrect and circular: Apex wants a forensic examination because it has alleged

---

[1] Apex's reliance on *Calyon v. Mizuho Sec. USA Inc.*, 2007 WL 1468889, at \*4 (S.D.N.Y. May 18, 2007) is similarly misplaced. There, the Court did not grant the requesting party direct access to the opposing party's forensic images. Instead, the Court directed the defendants' own experts to run searches against the imaged hard drives and denied the plaintiff's request for "direct access" to the images. *Id*. at \*6. Calyon therefore undermines, rather than supports, Apex's demand for direct forensic access to the Employee Defendants' personal devices and accounts.

misconduct, yet admits it needs the forensic examination to determine if that misconduct actually occurred. Notably, Apex has admitted to the Court that it has no evidence of downloading to a personal device; it merely has evidence of downloads to its work laptop. Dkt. No. 144-1, Tr. at 3:16-19.

Notably, Apex refuses to abide by its own circular standard. Specifically, Apex has refused to: (1) make available for inspection the Apex-issued work devices from which the Employee Defendants allegedly "downloaded" the documents; (Apex's Responses & Objections to Belinkie's Second Set of RFP's Request No. 8); or (2) make available for deposition John R. Clingerman, who gave sworn testimony about "analyz[ing] the computers used by [the Employee Defendants] to determ[ine] if data exfiltration occurred of Apex proprietary information." (Clingerman Aff. ¶6), and Bruce Moats, who was retained to "forensically preserve and analyze certain electronic data" from the Employee Defendants Apex computers. (Moats Aff. ¶5; *see also* Apex's May 29th and June 19, 2026 Emails).

*Third*, Apex has failed to show that its requested forensic review is anything more than an unduly burdensome fishing expedition for duplicative information. Rule 26(b)(2)(C) requires the Court to limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," or when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Under Rule 34(b)(E)(iii), "[a] party need not produce the same electronically stored information in more than one form." Here, the parties negotiated custodians and search terms, and the Employee Defendants have produced more than 45,000 pages of documents. There has been no showing that a forensic review would lead to a materially larger production of documents.

### B. Apex's Reliance on Mischaracterizations of the Employee Defendants' Statements and Productions Confirms that Apex's Position Lacks Merit

Unable to meet the heavy burden of widespread destruction or withholding of documents, Apex resorts to falsely claiming that there are "material discrepancies" in the Employee Defendants' productions and to misquoting statements from counsel. But Apex has not identified any false discovery response, or any other evidence of intentional misconduct by the Employee Defendants or their counsel.

*First*, Apex assumes the truth of its own deficient allegations when it argues that Apex's allegations that the Employee Defendants "collectively downloaded tens of thousands of documents," means that there must be documents missing from the Employee Defendants' production of only 795 documents that Apex purports to characterize as containing its "confidential and proprietary information and/or trade secrets." (Apex Letter p. 4). But Apex has already admitted that the alleged "tens of thousands" of downloads were to Apex-issued work computers—not transfers to personal devices or accounts. As Apex's counsel acknowledged to the Court, "plaintiff doesn't yet know which of the 41,000 documents were further misappropriated by the employee defendants **beyond just being downloaded on their work laptops.**" Dkt. No. 144-1, Tr. at 3:16. So Apex's argument misses the point entirely.

3

In fact, Apex has possessed the returned work computers and has retained two experts, John Clingerman and Bruce Moats, to examine electronic evidence concerning the Employee Defendants and determine whether any data exfiltration occurred. Yet Apex has been unable to produce evidence from those reviews of any actual removal of data to personal devices – and now Apex seeks to block Messrs. Clingerman and Moats's depositions. After more than a year of litigation, Apex still has not identified a single document among the supposed "41,000" that was transferred from an Apex-issued computer to an Employee Defendant's personal device. Apex admits that it still "doesn't yet know" which documents, if any, were transferred beyond the work laptops. Apex's lack of evidence does not create a discrepancy that justifies an invasive examination of the Employee Defendants' personal devices. *See* Dkt. No. 144-1 at 3:16.

*Second*, Apex's claim that it has discovered "584 additional Apex documents" from the Employee Defendants' production does not help Apex's case, because (1) this shows that the Employee Defendants are producing – not withholding – a broad set of documents, and (2) virtually all of these additional documents are in fact documents exclusively created and owned by Defendant Related Fund Management ("RFM") (Apex Letter p. 4). Apex did not acquire ownership in RFM's own documents (including agreements with third parties, public filings, and deal closing sets) created by RFM. At the time of the TRO in July 2025, RFM had terminated Apex as a service provider three months earlier and had sued Apex for its documents. Accordingly, Apex did not own RFM's documents, and the TRO did not order the Employee Defendants to turn over RFM's property to Apex, RFM's litigation adversary. Moreover, the Employee Defendants' production of these 584 additional documents in discovery proves that a forensic examination is not necessary – because the Employee Defendants have produced the very documents of which Apex now complains.

*Third*, Apex has also resorted to misquoting the undersigned counsel out-of-context, to misleadingly suggest that counsel claimed that the 364 documents produced in July 2025 are the only documents in the Employee Defendants' possession, including documents owned by Related. (Apex Letter p. 4). That is not what counsel said. In fact, the colloquy with the Court makes plain that counsel was referring to documents that originated "from Apex." Dkt. 144-1 at 12:5-6. The discussion was focused on documents Apex owned, i.e, "their documents." *Id.* at 11:19-20. More importantly, Apex ignores that counsel specifically conditioned his statement on the difficulty of identifying all documents given Apex's refusal to identify its trade secrets. Counsel argued that Apex should identify its trade secrets more clearly, so the Employee Defendants could more accurately "look and see if we have them or not." *Id.* at 9:24-25. Counsel argued that Apex should provide more information "so we can – even if it is so we can do an additional search" for more documents. *Id.* at 11:12-18. Apex's attempt to mischaracterize counsel's good-faith statement without this relevant context is itself misleading. *See Gassab v. R.T.R.L.L.C.*, 881 N.Y.S.2d 363 (Sup. Ct. 2009), order aff'd, appeal dismissed, 69 A.D.3d 511 (2010) (finding that counsel engaged in "frivolous conduct" when they "took defense counsel's statements completely out of context" and "quoted selectively in a manner that was misleading and inaccurate")

*Fourth*, Apex next resorts to mischaracterizing the Employee Defendants' counsel's statements about their collection of documents from the Employee Defendants' personal devices. Contrary to Apex's suggestion, the Employee Defendants' counsel directed the collection and search for documents. As I previously stated in May: "*counsel* worked with the Employee

4

Defendants to manually identify and review all personal devices, emails, text messages, laptops, thumb drives, and hard-copy documents, for any Apex proprietary or confidential information, which in some instances included a review of metadata for confirmation." (*See* Ex. A - Ferrier May 21, and May 26, 2026 emails re: meet and confer (emphasis added)) That describes a counsel-directed review and collection. It does not state that forensic images were created. Further, Employee Defendants' counsel expressly confirmed this on May 1, 2026, when counsel informed Apex that, for purposes of responding to its RFPs:

> "[W]e collected from the Employee Defendants' personal devices (including laptops, desktops and phones) and their personal email addresses. To the extent there is a specific device that Apex wants us to confirm that we collected from, we asked you to identify any such specific device. *We confirmed that the Employee Defendants did not conduct the collections themselves*." (Ex. B - Rossan May 1, 2026 Email)

Further, the Employee Defendants agreed to run Apex's search terms over that collection and have produced additional documents. Apex cannot now claim that there was some defect in the process because it received exactly what it agreed to after negotiations. The Employee Defendants used Apex's search terms and produced responsive documents. As Apex's own letter conceded, the Employee Defendants' subsequent productions have addressed the alleged deficiencies in the July 2025 production. Apex does not identify any specific device that was omitted from that process, any search term that was not applied, or any known document that should have been—but was not—produced.

*Fifth*, although Apex claims that it is not seeking duplicative production (Apex Letter p. 6), Apex has failed to explain what additional information it would actually obtain through reviewing forensic images of personal cell phones. Again, Apex has not identified systematic errors; it merely complains that it received certain documents from one Defendant but not another. That is insufficient to establish a production deficiency, much less the widespread withholding, concealment, or destruction necessary to justify forensic access to personal devices.

## C.  **The Employee Defendants Are Willing to Meet and Confer Regarding a Potential Forensic-Review Protocol**

Without waiving any of the objections and arguments stated above, the Employee Defendants are willing to meet and confer with Apex regarding the terms of a potential protocol governing any forensic imaging or review. Apex's deficiency letter does not identify any proposed forensic examiner, and otherwise lacks specifics about any proposed process, and how concerns over privacy and privilege would be adequately addressed. The Employee Defendants cannot meaningfully consider Apex's request without a specific, detailed proposal. Any such protocol would need to address, among other things, the devices and data sources subject to review, the relevant date ranges, search methodology, the protection of privileged and personal information, the role of any neutral forensic examiner, the handling of nonresponsive material, and the allocation of costs. The Employee Defendants reserve all rights, and no device will be imaged absent either a written agreement expressly identifying the scope and conditions of the examination or an order of the Court.

5

*Finally*, please confirm if Apex is willing to agree to a reciprocal protocol governing the examination of the Apex-issued work devices used by the Employee Defendants and subsequently returned to Apex.

As stated above, the Employee Defendants can be available on July 9 or 10 to meet and confer regarding these issues.

Very truly yours,

/s/ Scott Ferrier
Scott Ferrier

cc: All counsel of Record (via email)

6