2018 WL 11260464
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, Spring Valley Branch, Julio Clerveaux; Chevon Dos Reis; Eric Goodwin; Jose Vitelio Gregorio; Dorothy Miller; Hillary Moreau; and Washington Sanchez, Plaintiffs,

v.

EAST RAMAPO CENTRAL SCHOOL DISTRICT and Maryellen Elia, in Her Capacity as the Commissioner of Education of the State of New York, Defendants.

17 Civ. 8943 (CS)(JCM)
|
Signed 07/02/2018

**Attorneys and Law Firms**

Marc Nathan Zubick, Michael Faris, Kathleen Elsner, Russell Drach Mangas, Latham & Watkins LLP, Chicago, IL, Perry Grossman, Stefanie Denene Coyle, New York Civil Liberties Union, Serrin Andrew Turner, Corey Anne Calabrese, Elizabeth Anna Parvis, Thomas Cooper Pearce, Claudia Theda Salomon, Abhinaya Swaminathan, Andrej Novakovski, Elizabeth Casey Sahner, Meredith A. Cusick, Nicole C. Scully, Rakim Johnson, Latham & Watkins LLP, New York, NY, Andrew Brian Clubok, Latham & Watkins LLP, Washington, DC, for Plaintiffs.

David J. Butler, Randall Mark Levine, Adam Adler, Clara Kollm, William S. D. Cravens, Stephanie Schuster, Morgan, Lewis & Bockius LLP, Washington, DC, for Defendants.

## ORDER

JUDITH C. McCARTHY, United States Magistrate Judge

***1** Plaintiffs commenced this action against Defendant East Ramapo Central School District (the “District”), alleging that the District's at-large election system impermissibly denies minority citizens an equal opportunity to elect candidates of their choice to the District's Board of Education (the “Board”) in violation of Section 2 of the Voting Rights Act of 1965. (Docket No. 1). Presently before the Court are the parties' letters setting forth a dispute regarding how discovery should proceed in this case in light of Plaintiffs' withdrawal of their motion for preliminary injunction and the unavailability of one of Plaintiffs' expert witnesses. (Docket Nos. 128, 129). For the reasons that follow, the Court holds that Plaintiffs may replace Dr. Stephen Cole with a new expert of their choosing, without limiting the new expert to the methodology and conclusions of Dr. Cole, but Plaintiffs must disclose to the District the identity of their replacement expert and his or her initial written report no later than July 29, 2018.

## I. BACKGROUND

Plaintiffs filed their complaint on November 16, 2017 and a motion for a preliminary injunction on December 8, 2017, seeking to halt the May 15, 2018 Board elections. The Honorable Cathy Seibel, United States District Judge, scheduled a preliminary injunction hearing to begin on April 12, 2018.

In advance of the evidentiary hearing, the parties exchanged expert witness reports, produced numerous documents, and deposed several witnesses, including Plaintiffs' expert on racially polarized voting, Dr. Stephen Cole. On January 25, 2018, Judge Seibel referred this case to the undersigned for the purpose of supervising discovery. (Docket No. 61). On February 19, 2018, the District filed a motion to dismiss for failure to state a claim. In its Combined Opposition to Plaintiffs' Motion for Preliminary Injunction and Brief in Support of Motion to Dismiss, the District argued that Plaintiffs' entire case should be dismissed because Dr. Cole's opinion was based on a faulty statistical methodology and therefore was fatally flawed and unreliable. (Docket No. 76 at 17–34).[1]

1 All page numbers refer to the page numbers assigned upon filing on ECF.

On March 29, 2018, about a week prior to commencement of the preliminary injunction hearing, Plaintiffs withdrew their motion for a preliminary injunction, thereby canceling the evidentiary hearing. (Docket No. 119). In a separate letter to the Court, Plaintiffs explained that their expert, Dr. Cole, suddenly became unavailable to testify for medical reasons.

At a conference held on April 13, 2018, Judge Seibel denied the District's motion to dismiss. During the conference, Judge

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Seibel indicated that she expected the parties to proceed with discovery under the undersigned's supervision. (*See* Docket No. 128-2 at 25:2–3). She further indicated her expectation that, if the parties could not agree on a schedule, the undersigned would impose one. (*See id*. at 26:23–25).

On April 27, 2018, Plaintiffs' counsel submitted a letter to the undersigned requesting a status conference because the parties had met and conferred and were unable to agree as to appropriate next steps. (Docket No. 123). Plaintiffs assert that the appropriate next step in this action is to adopt a discovery schedule. (Docket No. 128 at 2). They therefore submitted a proposed schedule with their letter. (Docket No. 128-1). The District contends that, before a discovery schedule is set, Plaintiffs should first be required to move to substitute a new expert to replace Dr. Cole and adopt his methodology and opinions. (Docket No. 129 at 4). On May 16, 2018, the undersigned held a status conference and heard oral argument.

## II. DISCUSSION

***2** Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. Under Rule 26(a)(2)(D), a party must make these disclosures at the times and in the sequence that the court orders or—absent a stipulation or a court order—generally at least ninety days before the date set for trial or for the case to be ready for trial. If the party learns that in some material respect the disclosure or response is incomplete or incorrect, the party must generally supplement or correct the disclosure "in a timely manner" or "as ordered by the court." Fed. R. Civ. Proc. 26(a)(2)(E) and 26(e).

The parties dispute whether Plaintiffs require the Court's leave in order to replace their expert, Dr. Cole. The District asserts that Plaintiffs should be required to "make the necessary showings to be permitted to substitute a new expert," whereas Plaintiffs argue that they are not required to move to substitute their expert "because of the early stage of the case and Plaintiffs' withdrawal of their preliminary injunction motion." (Docket No. 129 at 3; Docket No. 128 at 3).

The parties have not cited, and the Court has not located, any decisions that directly address this issue. There are many decisions, some cited by the District, in which federal courts have granted or denied motions for leave to substitute an expert. Typically, however, those decisions involve situations in which a party seeks to substitute a new expert *after* the deadline for Rule 26 expert disclosures. *See, e.g.*, *Pope v. County of Albany*, 1:11-cv-0736 LEK/CFH, 2014 WL 12526270, at *1 (N.D.N.Y. 2014) ("A party moving to substitute an expert witness *following the close of discovery* must show good cause." (emphasis added)). Here, Plaintiffs submitted Dr. Cole's reports in connection with their preliminary injunction motion—before the District answered Plaintiffs' complaint and before the Court set any deadlines for Rule 26(a)(2) disclosures.

Plaintiffs contend that they never designated Dr. Cole as a testifying expert for purposes of trial pursuant to Rule 26(a)(2). The District labels this contention "specious" because (i) Plaintiffs disclosed full signed expert reports consistent with all requirements of Rule 26, (ii) Plaintiffs' experts have already been subject to discovery as testifying experts, and (iii) Plaintiffs requested that the Court consolidate the hearing on motion for preliminary injunction with a final trial on the merits. (Docket No. 129 at 2 n.1). The District may have *assumed* that Plaintiffs designated Dr. Cole as a testifying expert for purposes of trial pursuant to Rule 26(a)(2); however, the District has identified no representation by Plaintiffs or Plaintiffs' counsel to that effect.[2]

2 Notably, in a letter to Judge Seibel dated January 11, 2018, counsel for the District stated that "[t]he District understands that this expedited discovery period is intended solely for the purpose of preparing a preliminary, non-final evidentiary record upon which the Court may resolve Plaintiffs' motion for preliminary injunction." (Docket No. 56 at 3). Similarly, in a separate letter, counsel for Plaintiffs stated: "If the Court chooses not to consolidate the hearing, Plaintiffs and the Commissioner agree that the discovery limitations and the parties' stated positions set forth herein will not foreclose further discovery under the Federal Rules with respect to all matters in the litigation that remain in contention following the Court's resolution of Plaintiffs' motion for a preliminary injunction." (Docket No. 55 at 1 n.1).

***3** It is unclear whether a party must obtain leave of court for an expert substitution where the party disclosed the original expert in connection with a withdrawn motion for preliminary injunction and now seeks to designate a new expert for purposes of testifying at trial. On the one hand, "[t]here is authority to support the proposition that an expert's participation in preliminary injunction proceedings is separate and apart from whether that expert is a testifying expert for purposes of trial, as contemplated by Rule 26." *Wreal LLC v. Amazon.Com, Inc.*, No. 14–21385–CIV., 2015 WL 1281042, at *2 (S.D. Fla. 2015) (citing *Hansen Beverage*

*Co. v. Innovation Ventures, LLC*, No. 08–CV–1166–IEG, 2010 WL 1608880 (S.D. Cal. April 20, 2010)). In *Wreal*, the court held that the plaintiff's use of an expert during the preliminary injunction phase of the case did not waive the plaintiff's right to designate that expert as a non-testifying consultant for trial purposes, whose work product was protected from discovery.[3] The court reasoned that "[p]reliminary injunction matters are not necessarily related to 'trial'—at least not for expert witness purposes" and that, prior to the deadline for Rule 26 expert disclosures, a plaintiff "is the master of its own case and can designate or de-designate experts for trial." 2015 WL 1281042, at *3–4.

3 Attempting to distinguish *Wreal*, the District asserts that *Wreal* involved "an expert who had submitted an *affidavit* in *opposition* to a motion for preliminary injunction." (Docket No. 129 at 3 n.1 (emphasis in original)). The District's description of *Wreal* is inaccurate. *See* 2015 WL 1281042, at *1 ("Wreal used Dr. Maronick's expert opinion twice in connection with its motion for a preliminary injunction. First, it submitted his declaration in support of the motion. Second, it called him as an expert witness at the evidentiary hearing on the preliminary injunction motion.").

On the other hand, the Court is sensitive to some of the concerns identified by the District, including that an unfettered right to designate and de-designate expert witnesses after significant discovery in connection with a motion for a preliminary injunction could invite inefficiency, unfair prejudice to other parties, strategic withdrawals of compromised expert witnesses and other gamesmanship.

Ultimately, the Court need not—and does not—decide at this time whether a party must obtain leave of court for an expert substitution under such circumstances because, regardless, the Court finds it appropriate to grant Plaintiffs leave to replace Dr. Cole with a new expert of Plaintiffs' choosing. Dr. Cole is unavailable to testify due to medical reasons, which provides good cause for permitting Plaintiffs to designate a new expert, especially at this relatively early stage in the litigation. *Cf. Palatkevich v. Choupak*, 2014 WL 5463371, at *1 (S.D.N.Y. 2014) ("The illness and sudden unavailability of a designated expert is certainly good cause to modify a Rule 16 scheduling order, particularly where the plaintiffs have been diligent in dealing with the problem, as was the case here."). The decisions denying leave cited by the District involve motions submitted at later litigation stages. *See, e.g.*, *Pope*, 2014 WL 12526270, at *1.

The District argues that, in order to limit the "serious prejudice to the District that inevitably results from such a substitution," the Court "should require Plaintiffs' new expert (if any) to adopt Dr. Cole's analysis, methodology, and conclusions as his or her own opinion, and the new expert should not be permitted to introduce new methodologies, data, or conclusions in his or her report." (Docket No. 129 at 3–4). Plaintiffs argue that there is no requirement that Plaintiffs' new expert adopt the opinions or methodology of the prior expert.

Some courts have limited substitute experts to the methodology and conclusions of the original expert. *See, e.g.*, *U.S. ex rel. Agate Steel, Inc. v. Jaynes Corp.*, No. 2:13–cv–01907–APG–NJK, 2015 WL 1546717, at *2 (D. Nev. 2015) ("While the opinions need not be identical, it is reasonable to limit the new expert to findings that are substantially similar to those presented by [the original expert]."); *Anderson Group, LLC v. City of Saratoga Springs*, No. 1:05–CV–1369 (GLS/DRH), 2010 WL 8357263, at *1 n.3 (N.D.N.Y. 2010) (holding that the new expert "remained free to reject to any findings, methodology, and conclusions in the original report but could not add new ones that were reasonably available at the time of the original report"). Other courts have imposed no such requirement. *See, e.g.*, *Palatkevich*, 2014 WL 5463371, at *1 ("[D]efendants offer no compelling justification for, in effect, directing that the new expert simply parrot the analysis of [the original expert]. Indeed, such an approach would be inconsistent with the requirement that an appointed expert is to be independent and offer his own opinions based on his experience and expertise in the subject matter.").

***4** Here, in light of the early stage of this litigation, the Court finds that such a restriction on Plaintiffs' new expert is not appropriate. It is unclear exactly what "prejudice" the District fears. To the extent that the District suggests that it is unfair for Plaintiffs to submit a new report that corrects some of the alleged flaws previously identified by the District, the Court finds this argument unpersuasive. *See Palatkevich*, 2014 WL 5463371, at *2 ("There is no prohibition in the Federal Rules on the submission of replies correcting errors in the expert's original report or responding to a critique of that report. Indeed, Rule 26(a)(2)(D) refers to disclosures being made 'in the sequence that the court orders', plainly vesting discretion in the court to determine how many rounds of disclosures are appropriate."); *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 309 (S.D.N.Y. 2003) (permitting withdrawal and replacement of racial bloc voting expert where first expert report contained statistical errors). To the extent that

the District refers to the expense of additional discovery regarding Plaintiff's new expert, the Court does not find such expense unduly prejudicial under the circumstances. The discovery process is aimed toward uncovering the truth and is therefore not always linear. *Cf. In re Six Grand Jury Witnesses*, 979 F.2d 939, 941 (2d Cir. 1992) (observing that discovery is "designed to advance the pursuit of truth").

It would, however, be unfair to the District to give Plaintiffs a complete "reset" of the case as though nothing had occurred during the past seven months of litigation activity by both sides. Courts recognize that "late substitution of an expert witness is especially impactful on VRA litigation," because the "analytical framework for VRA claims brings rigorous statistical analysis to the forefront of a trial." *Pope*, 2014 WL 12526270, at *1 (citing *Thornburg v. Gingles*, 478 U.S. 30 (1986)). Having already exchanged expert reports with Plaintiffs in connection with the preliminary injunction motion, the District is entitled to learn the identity of Plaintiffs' substitute expert and the substance of his or her opinion before responding to any new discovery requests from Plaintiffs.[4]

4 Although Plaintiffs' substitute expert may need to supplement or revise his or her opinion in light of information obtained as a result of further discovery, Plaintiffs should produce to the District at least an initial written report, so that the District can understand how the substitute expert's methodology and conclusions differ, if at all, from those of Dr. Cole.

## III. CONCLUSION

For the foregoing reasons, the Court holds that Plaintiffs may replace Dr. Cole with a new expert of their choosing, without limiting the new expert to the methodology and conclusions of Dr. Cole, but Plaintiffs must disclose to the District the identity of their replacement expert and his or her initial written report no later than July 29, 2018.

The parties are directed to meet and confer on or before July 10, 2018, to develop a proposed discovery plan in light of the rulings contained herein. The parties must submit by July 11, 2018 a joint letter to the Court attaching a proposed case management plan and scheduling order. A status conference is scheduled for July 12, 2018 at 11:30 a.m. in Courtroom 421, 300 Quarropas Street, White Plains, NY 10601 before Magistrate Judge Judith C. McCarthy.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 11260464

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.