**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| APEX GROUP CAPITAL ADVISORS LLC F/K/A SANDSPOINT CAPITAL ADVISORS LLC,<br><br>Plaintiff,<br><br>v.<br><br>RELATED FUND MANAGEMENT, LLC; JAMES KRAUS; LUCAS BELINKIE; PRESTON CALLEN; WILLIAM C. CHANEY; and RYAN HOPE,<br><br>Defendants. | Case No. 1:25-cv-08892-VEC-GS |

# DEFENDANTS RELATED FUND MANAGEMENT, LLC AND JAMES KRAUS'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

CLARICK GUERON REISBAUM LLP

Nicole Gueron
David Kimball-Stanley
Erin Woodruff

41 Madison Avenue, 23rd Floor
New York, New York 10010
(212) 633-4310
ngueron@cgr-law.com
dkimballstanley@cgr-law.com
ewoodruff@cgr-law.com

*Attorneys for Defendants Related Fund Management LLC and James Kraus*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
PRELIMINARY STATEMENT ..... 1
BACKGROUND ..... 4
I. Procedural History ..... 4
II. Apex's Late Amendment and the Proposed SAC's "New" Allegations ..... 5
ARGUMENT ..... 7
I. APEX CANNOT DEMONSTRATE GOOD CAUSE UNDER RULE 16(b)(4) ..... 7
II. APEX CANNOT SATISFY RULE 15'S MORE LENIENT STANDARD ..... 10
  A. The Amendment is Made in Bad Faith ..... 10
  B. The Amendment Will Unduly Prejudice the Related Defendants ..... 12
  C. The Amendment is Made with Undue Delay ..... 14
III. THE PROPOSED AMENDMENT IS FUTILE ..... 14
  A. Apex Still Fails to Allege Tortious Interference ..... 17
  B. Apex Still Fails to Allege Breach of Contract ..... 18
  C. Apex Still Fails to Allege Breach of Good Faith and Fair Dealing ..... 20
  D. Apex Still Fails to Allege Unjust Enrichment ..... 22
  E. Apex Still Fails to Allege Civil Conspiracy ..... 23
IV. APEX'S MOTION IS PROCEDURALLY IMPROPER ..... 24
CONCLUSION ..... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABH Nature's Prods., Inc. v. Supplement Mfg. Partner, Inc.*,
No. 19Civ. 5637, 2024 WL 1345228 (E.D.N.Y. Mar. 29, 2024) ....17

*Abrams v. HBM Prenscia Inc.*,
No. 19 Civ. 10357, 2020 WL 6482881 (S.D.N.Y. Nov. 4, 2020) (Caproni, J.) ....7, 9

*Aetna Casualty and Surety Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....12

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019)....23

*Anhui Konka Green Lighting Co., LTD. v. Green Logic LED Elec. Supply, Inc.*,
No. 18 Civ. 12255, 2021 WL 621205 (S.D.N.Y. Feb. 17, 2021) ....6

*ARI & Co. v. Regent Int'l Corp.*,
273 F. Supp. 2d 518 (S.D.N.Y. 2003)....21, 22

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
714 F. Supp. 3d 310 (S.D.N.Y. 2024)....14

*Blake Marine Grp., LLC v. Frenkel & Co.*,
425 F. Supp. 3d 330 (S.D.N.Y. 2019)....11

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993)....2, 12

*Boustead Sec., LLC v. Leaping Grp. Co.*,
No. 20 Civ. 3749, 2021 WL 3774116 (S.D.N.Y. Aug. 25, 2021) ....20

*Caron v. TD Ameritrade*,
No. 19 Civ. 9015, 2020 WL 7027593 (S.D.N.Y. Nov. 30, 2020) ....25

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
56 F.3d 343 (2d Cir. 1995)....24

*Chinese Am. Citizens All. Greater N.Y. v. N.Y.C. Dep't of Educ.*,
No. 20 Civ. 8964, 2024 WL 1795390 (S.D.N.Y. Apr. 25, 2024)....6

*Coghlan v. Wellcraft Marine Corp.*,
240 F.3d 449 (5th Cir. 2001) ....22

*Commercial Realty Servs. of Long Island, Inc. v. Mehran Enters., Ltd.*,
194 A.D.3d 1008 (2d Dep't 2021) ..........23

*Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*,
544 F. Supp. 2d 178 (S.D.N.Y. 2008) ..........25

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ..........22

*DDR Construction Servs., Inc. v. Siemens Indus., Inc.*,
770 F. Supp. 2d 627 (S.D.N.Y. 2011) ..........24

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*
309 F. Supp. 3d 89 (S.D.N.Y. 2018) ..........20, 21

*Exxon Mobil Corp. v. Schneiderman*,
316 F. Supp. 3d 679 (S.D.N.Y. 2018) (Caproni, J.) ..........3, 15

*Gullo v. City of New York*,
540 F. App'x 45 (2d Cir. 2013) ..........11

*Henderson v. Golden Corral Franchising Sys., Inc.*,
663 F. Supp. 3d 313 (S.D.N.Y. 2023) ..........21

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009) ..........7

*Hudson Neurosurgery, PLLC v. UMR, Inc.*,
No. 20 Civ. 9642, 2023 WL 6311218 (S.D.N.Y. Sep. 28, 2023) ..........23

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
12 N.Y.3d 132 (2009) ..........22

*Kant v. Columbia Univ.*,
No. 08 Civ. 7476, 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010) ..........11

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007) ..........8

*Lucente v. Int'l Bus. Machines Corp.*,
310 F.3d 243 (2d Cir. 2002) ..........15

*Maltbie's Garage Co. v. Gen. Motors LLC*,
No. 21 Civ. 581, 2021 WL 4972738 (N.D.N.Y. Oct. 26, 2021) ..........19

*Massey v. Armco Steel Co.*,
652 S.W.2d 932 (Tex. 1983) ..........23

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)....................10, 14

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
898 F.3d 243 (2d Cir. 2018)....................16

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*,
No. 23 Civ. 10753, 2025 WL 1826583 (S.D.N.Y. July 2, 2025) ....................11

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012)....................15

*Pare v. Aalbue*,
222 A.D.3d 769 (2d Dep't 2023)....................17

*Parker v. Columbia Pictures Ind.*,
204 F.3d 326 (2d Cir. 2000)....................10, 14

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
889 F. Supp. 2d 453 (S.D.N.Y. 2012)....................8, 9

*Perks v. TD Bank, N.A.*,
444 F. Supp. 3d 635 (S.D.N.Y. 2020)....................21

*Primedia Enthusiast Publication Inc. v. Ashton International Media, Inc.*,
No. 02 Civ. 9997, 2003 WL 22220375 (S.D.N.Y. Sep. 25, 2003) ....................26

*Rivero v. INTL FCStone Inc.*,
No. 14 Civ. 3879, 2015 WL 6128707 (S.D.N.Y. Oct. 19, 2015) ....................13

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir. 1993)....................15

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008)....................25

*Schoolcraft v. City of N.Y.*,
81 F. Supp. 3d 295 (S.D.N.Y. 2015)....................12

*Sec. & Exch. Comm'n v. Rio Tinto PLC*,
No. 17 Civ. 7994, 2020 WL 2504008 (S.D.N.Y. Mar. 9, 2020) ....................13, 15

*Sokol Holdings, Inc. v. BMD Munai, Inc.*,
No. 05 Civ. 3749, 2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) ....................8

*Superb Motors Inc. v. Deo*,
776 F. Supp. 3d 21 (E.D.N.Y. 2025) ....................23

*Swartz v. Swartz*,
145 A.D.3d 818 (2d Dep't 2016) .......... 24

*Taco, Inc. v. Am. Home Assurance Co.*,
No. 24 Civ. 7041, 2025 WL 2419707 (S.D.N.Y. Aug. 21, 2025) .......... 22

*Tang v. Grossman*,
No. 19 Civ. 6099, 2022 WL 307158 (E.D.N.Y. Feb. 2, 2022), *aff'd*, No. 22-464, 2023 WL 2229366 (2d Cir. Feb. 27, 2023) .......... 25

*TileBar v. Glazzio Tiles*,
723 F. Supp. 3d 164 (E.D.N.Y. 2024) .......... 18

*Transcience Corp. v. Big Time Toys, LLC*,
50 F. Supp. 3d 441 (S.D.N.Y. 2014) .......... 19

*Yousefzadeh v. Johnson & Johnson Consumer Inc.*,
No. 24-3296, 2026 WL 2192415 (2d Cir. July 30, 2026) .......... 26

*Zicherman v. State Farm Fire & Cas. Co.*,
698 F. Supp. 3d 564 (E.D.N.Y. 2023) .......... 21

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......... 15

Fed. R. Civ. P. 15 .......... *passim*

Fed. R. Civ. P. 16 .......... *passim*

Fed. R. Civ. P. 21 .......... 6

Fed. R. Civ. P. 30(b)(6) .......... 5, 13

Fed. R. Civ. P. 59(e) .......... 25

Defendants Related Fund Management, LLC ("RFM") and James Kraus ("Kraus") (together, the "Related Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff Apex Group Capital Advisors LLC's ("Apex") motion for leave to file a Second Amended Complaint ("SAC"). *See* Mot. to Amend, ECF Nos. 161–163.

## PRELIMINARY STATEMENT

In January 2025, Apex sued its competitor IQ-EQ for engineering a purported scheme to steal RFM as a client. Three weeks later, Apex settled with IQ-EQ and dismissed its claims against it *with prejudice*. A few months later, Apex filed this lawsuit, blaming RFM and Kraus for engineering the same purported scheme. Now, 14 months later—and nearly six months after this Court's deadline to amend—Apex asks for leave to sue IQ-EQ all over again, two weeks before the first scheduled deposition was to occur and while the Related Defendants' fully briefed motion to dismiss awaits decision.

Across four pleadings in two lawsuits, Apex has now told at least three different versions of the same story: first it pled that IQ-EQ orchestrated a conspiracy; then, after releasing IQ-EQ in exchange for settlement consideration, the Related Defendants were deemed the villains for terminating RFM's contract with Apex; and now IQ-EQ is again the mastermind. Apex cannot settle on the conspirators because there is no conspiracy to find, at least as far as the Related Defendants are concerned. Apex said so itself in its first complaint, describing RFM solely as a client "at risk, if not already doomed" that had put Apex "on notice" of "substantial concerns about Apex's ability" to perform. *See* Decl. of N. Gueron, Ex. A (January Action Compl.) ¶¶ 76–79, ECF No. 99-1. That concession is the truth of this case, as borne out by substantial document discovery: RFM was a genuinely dissatisfied client that exercised its contractual right to terminate a fund administrator that had failed at its job.

Whatever Apex's grievance with IQ-EQ, RFM and Kraus should not bear the cost. The proposed SAC adds nothing of consequence against them. The same five claims—tortious interference, breach of contract, breach of the implied covenant, unjust enrichment, and civil conspiracy—are re-alleged, lengthier but substantively unchanged, with every deficiency (previously identified in two rounds of dismissal briefing) left uncured. Apex does not contend otherwise; its motion and its "new" evidence are directed at IQ-EQ. Yet the Related Defendants absorb the cost of Apex's change of heart: their fully briefed motion to dismiss now sits in abeyance; the 13-witness deposition schedule the parties spent months constructing was dismantled two weeks before those depositions were to begin, to avoid the inevitable burden of duplicative depositions if IQ-EQ is joined in the case (with attendant discovery delays); and Kraus, an individual, remains a personally named defendant—with all the burdens and disclosure obligations that carries—in a case that is ripe for dismissal as to him.

Apex's motion fails on three independent grounds.

*First*, Apex cannot establish good cause under Rule 16(b)(4). It moved nearly six months after the Court's February 8, 2026, deadline, largely on facts it has known since it sued IQ-EQ in January 2025. The materials Apex labels "newly discovered" are nothing more than additional illustrations of a theory Apex has pled from the outset. And, Apex sat on the April and May 2026 document productions for months before moving. Diligence is the touchstone of Rule 16, and Apex has shown none.

*Second*, the motion fails even under Rule 15(a)(2)'s more forgiving standard. Apex moved in bad faith to avoid imminent depositions and reshape this lawsuit ahead of a motion to dismiss ruling it has reason to expect to lose; it delayed unduly on legal theories it has long held

and abandoned; and the prejudice to the Related Defendants—the factor the Second Circuit considers the most important—is concrete and already being felt.

*Third*, the proposed amendment is futile and procedurally improper. As to RFM and Kraus, the proposed SAC could not survive the motion to dismiss already before the Court, which is reason enough to deny leave. As to IQ-EQ, Apex's voluntary dismissal with prejudice was a final adjudication on the merits of claims arising from the same events, and Apex cannot use Rule 15 to escape the consequences of a bargain it struck and apparently now regrets.

The motion should be denied. Should the Court nonetheless be inclined to let Apex pursue IQ-EQ, the Related Defendants respectfully request that it do so on terms that do not visit the resulting delay on parties who gain nothing from the amendment: specifically, that the Court resolve the pending motion to dismiss as to RFM and Kraus on the existing briefing, evaluating the operative and proposed pleadings together rather than requiring a third round of briefing on claims that have not changed. *See Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 705 (S.D.N.Y. 2018) (Caproni, J.). Apex has had three tries to state a claim against the Related Defendants. It should not get a fourth, certainly not at their expense.

## Background

### I. PROCEDURAL HISTORY

On January 31, 2025, Apex filed its first complaint in the Northern District of Texas (the "January Action"), naming the Former Employees and IQ-EQ as defendants. *See generally* January Action Compl. In that action, Apex cast IQ-EQ as the architect of an alleged scheme to poach Apex's employees and RFM as a client. *Id.* ¶ 103. The January Action contained no allegation of any conspiratorial role by RFM or Kraus; rather, Apex described RFM as a dissatisfied client "at risk, if not already doomed," and admitted that RFM had "put Apex on notice" about "substantial concerns about Apex's ability" to provide services. *Id.* ¶¶ 76–79.

Just three weeks later, on February 19, 2025, Apex voluntarily dismissed IQ-EQ *with prejudice* pursuant to a Settlement Agreement in which IQ-EQ represented, *inter alia*, that it had not used proprietary Apex data and would launch a forensic investigation. *See* Decl. of N. Gueron, Ex. D (IQ-EQ Notice of Dismissal), ECF No. 99-4; Beckerman Decl. Ex. J (Settlement Agreement), ECF No. 163-10. Apex simultaneously dismissed the Former Employees without prejudice. *See* Decl. of N. Gueron, Ex. C (Former Employees' Notice of Dismissal), ECF No. 99-3.

RFM terminated its contract with Apex on April 4, 2025, after almost a year of repeatedly expressed dissatisfaction with Apex's services. *See* Proposed SAC ¶ 148, ECF No. 163-1. In response, Apex filed the current action in Texas state court on May 27, 2025, this time naming the Related Defendants as the alleged masterminds of the conspiracy it previously attributed to IQ-EQ. *See* Pl.'s Original Pet., ECF No. 1-3 (also available at ECF No. 48-2). Defendants removed the case to federal court and transferred it to this District pursuant to the mandatory forum-selection clause in the Master Services Agreement between Apex and RFM

that Apex had ignored and then unsuccessfully fought to avoid. *See* Notice of Removal, ECF No. 1; Agreement dated January 29, 2024 (the "MSA"), ECF No. 48-3.

On November 5, 2025, Apex filed its First Amended Complaint ("FAC"), the current operative pleading. *See* FAC, ECF No. 80. The claims against the Related Defendants now include: (1) tortious interference with the Former Employees' employment agreements; (2) breach of the MSA (against RFM); (3) breach of the implied covenant of good faith and fair dealing (against RFM); (4) unjust enrichment; and (5) civil conspiracy. *Id.*

On January 7, 2026, the Related Defendants moved to dismiss the FAC. *See* Mot. to Dismiss, ECF Nos. 97–99. The motion was fully briefed as of February 26, 2026. *See* Mot. to Dismiss Reply, ECF No. 130. It is now being held in abeyance pending resolution of Apex's motion to amend. *See* Order dated July 29, 2026, ECF No. 160.

## II. APEX'S LATE AMENDMENT AND THE PROPOSED SAC'S "NEW" ALLEGATIONS

On January 9, 2026, the Court entered its Civil Case Management Plan and Scheduling Order, which set a 30-day deadline for motions to amend and a September 30, 2026, deadline for the close of fact discovery. *See* Scheduling Order, ECF No. 112. From January to July 2026, the parties conducted extensive document discovery: the Related Defendants' document production was substantially complete as of April 24, 2026, and to date, the Related Defendants have produced 1,851 documents across 20,661 pages from multiple custodians.

Counsel also spent months negotiating a complex deposition schedule of some thirteen witnesses, finalizing it on July 21, 2026, with the first depositions—of Georges Archibald, Apex's Chief Commercial Officer and Rule 30(b)(6) designee—set for August 12 and 13, 2026.

On the eve of those depositions, in late July 2026, Apex moved to amend the FAC with the proposed SAC. This was nearly six months after the Case Management Plan and Scheduling

Order deadline. Apex initially filed its motion on July 27, 2026, invoking only Rules 15(a)(2) and 21, without any mention of Rule 16(b)(4).[1] *See* Mot. to Amend, ECF No. 157. After Defendants pointed out that Apex's motion was untimely under the Court's Scheduling Order, Apex hurriedly filed amended papers, tacking on a Rule 16(b)(4) argument. *See* Apex Ltr. dated July 29, 2026, ECF No. 164; *see also* ECF Nos. 161–63. Defendants respond here to both standards, and the motion fails under each.

The consequences of Apex's multiple late amendment motions were immediate. On July 31, 2026, the Related Defendants were effectively forced to join a request to stay depositions pending resolution of the amendment motion because, as a practical matter, otherwise depositions would have to be retaken if a new defendant and new claims were added—even though the Related Defendants were (and are) extremely eager to start depositions to prove the emptiness of Apex's conspiracy theories. *See* Joint Ltr. Req. for Stay of Deps., ECF No. 166. The Court granted the deposition stay on August 3, 2026. *See* Order dated Aug. 3, 2026, ECF No. 167. The fully negotiated deposition schedule, built over months of effort to accommodate the schedules of 13 confirmed witnesses and approximately 10 litigators, was dismantled overnight.

Apex seeks to add IQ-EQ as a defendant and assert seven claims against IQ-EQ. *See* Proposed SAC. Critically, however, the proposed SAC does not remedy the deficiencies in the claims asserted against RFM and Kraus. The same five claims, with all their pre-existing

---

[1] Rule 21 governs joinder of parties, and the showing required under Rule 21 is normally the same as that required under Rule 15(a). *See Chinese Am. Citizens All. Greater N.Y. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 8964, 2024 WL 1795390, at *3 (S.D.N.Y. Apr. 25, 2024) (Stein, MJ). "However, a motion to join additional parties is subject to the 'good cause' requirement of Rule 16(b) if the time to join additional parties has expired." *Anhui Konka Green Lighting Co., LTD. v. Green Logic LED Elec. Supply, Inc.*, No. 18 Civ. 12255, 2021 WL 621205, at *2 (S.D.N.Y. Feb. 17, 2021) (quoting *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, No. 07 Civ. 1178, 2008 WL 781823, at *3 (S.D.N.Y. Mar. 20, 2008)).

deficiencies, remain: tortious interference, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and civil conspiracy. *Id.* ¶¶ 200–19, 225–39.

Apex claims that "newly discovered evidence" from fact discovery justifies its motion to amend, namely: (i) communications produced on April 24, 2026, regarding a purportedly improper "lift and shift" of the Former Employees; (ii) text messages produced on May 29, 2026, from Former Employee Chaney; and (iii) Chaney's archived Outlook .pst file, discovered on July 17, 2026, on his personal laptop. *See* Am. Mot. to Amend at 23–24, ECF No. 162; Beckerman Decl. ¶¶ 5–22, 14–16, ECF No. 163. But even assuming arguendo that this so-called "new" evidence proves what Apex claims it does, it tells the same story Apex has told since the inception of this dispute in January 2025: that IQ-EQ induced the Former Employees to leave Apex for IQ-EQ, partly in the hopes of winning RFM as a client. Indeed, that was the *entire premise* of Apex's January Action more than a year and a half ago. None of this is new. The motion to amend should be denied.

## ARGUMENT

## I. APEX CANNOT DEMONSTRATE GOOD CAUSE UNDER RULE 16(B)(4)

"Despite the lenient standard set out in Rule 15, when a scheduling order governs amendments to a complaint, and 'a plaintiff wishes to amend after the deadline to do so has passed, the plaintiff must first show good cause to modify the deadline under Rule 16 of the Federal Rules of Civil Procedure." *Abrams v. HBM Prenscia Inc.*, No. 19 Civ. 10357, 2020 WL 6482881, at *2 (S.D.N.Y. Nov. 4, 2020) (Caproni, J.) (alterations adopted) (quoting *BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017). "Whether good cause exists turns on the 'diligence of the moving party.'" *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). Critically, "[a] party fails to show good cause when the proposed amendment rests on information 'that the

party knew, or should have known, in advance of the deadline.'" *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 Civ. 3749, 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009)). Likewise, a party's failure to "articulate viable legal theories based on facts that were known to them before th[e] action was ever commenced" before the scheduling order deadline cannot demonstrate the diligence Rule 16 requires. *Sokol Holdings*, 2009 WL 2524611, at *9–11.

Although diligence is the primary consideration, the Court may also consider prejudice to the opposing party. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

The Court's Case Management Plan and Scheduling Order set a deadline of February 8, 2026, for motions to amend. *See* Scheduling Order. Apex did not amend timely; it filed its motion nearly six months later, on July 29, 2026. Yet, Apex has known the core "theories" and "facts" underlying its proposed amendment since January 2025, when it first sued IQ-EQ. *Sokol Holdings*, 2009 WL 2524611, at *9.

As to RFM and Kraus, the proposed SAC adds no new, non-conclusory factual allegations. Instead, the IQ-EQ/Kraus communications (Beckerman Decl. Exs. F–I, M–N, ECF Nos. 163-6 to 9; 163-13 to 14), the Chaney text messages (Beckerman Decl. Exs. C–E, ECF Nos. 163-3 to 5), and the archived Outlook .pst file (Beckerman Decl. Ex. L, ECF No. 163-12) are offered solely in support of adding IQ-EQ as a defendant and asserting new claims against IQ-EQ. For example, Apex's brief presents the IQ-EQ/Kraus texts under the heading "IQEQ Facilitated the Misappropriation of Apex Capital's Confidential and Trade Secret Information," effectively conceding that the evidence concerns conduct by IQ-EQ, not the Related Defendants. *See* Am. Mot. to Amend at 6–8. Because the proposed amendment adds no new factual matter

bearing on the claims against the Related Defendants, Apex cannot demonstrate that the "new" information provides good cause for a post-deadline amendment as to those claims.

Nor does Apex's effort to add IQ-EQ rest on newly discovered facts or theories. Apex sued IQ-EQ in January 2025 on the very same theory—that IQ-EQ orchestrated the Former Employees' departures and the transition of RFM's business. *See* January Action Compl. Apex's 18-month delay in seeking to reassert its theory against IQ-EQ is inconsistent with the diligence required under Rule 16. Having voluntarily dismissed IQ-EQ with prejudice in exchange for settlement consideration, including IQ-EQ's representations regarding a forensic investigation and its commitment not to use Apex's proprietary data, Apex cannot viably claim surprise at learning what it first alleged 18 months ago. *See Abrams*, 2020 WL 6482881, at *2 (Caproni, J.) (denying leave because "[d]espite having sufficient information" before the deadline for motions to amend the complaint the "[p]laintiff did not move . . . until . . . more than six months later," which "is inconsistent with the 'diligence' required to demonstrate 'good cause' under Rule 16").

Apex's purported "new evidence" does not establish diligence. The communications produced on April 24, 2026, concerning a purported "lift and shift," and Chaney's text messages produced on May 29, 2026, may bear on the parties' conduct, but they at most repeat what Apex alleged long ago: that IQ-EQ was involved in the Former Employees' departures and the transition of RFM's business. *See* Beckerman Decl. Exs. C–I, M–N, ECF Nos. 163-3 to 9; 163-13 to 14. Different examples of a prior allegation are not "new facts" warranting amendment six months after the deadline. *Perfect Pearl Co.*, 889 F. Supp. 2d at 458–59 (denying leaving because the plaintiff sought to move based on information "in its possession some 10 months earlier"). The archived Outlook .pst file, disclosed on July 17, 2026, is categorically different—

it primarily contains SandsPoint emails from 2016 to 2023. *See* Beckerman Decl. Ex. L, ECF No. 163-12. Thus, it is not evidence going to the merits of the claims against the Related Defendants; it is, at most, evidence of a deficiency in IQ-EQ's prior forensic investigation or in Chaney's prior document production—neither of which bears on the conduct of RFM or Kraus or cures any deficiency in Apex's claims against them. Moreover, Apex's own timeline belies any claim of diligence: Apex received the bulk of the evidence it relies on in April and May 2026, but did not file its motion until July 2026.

In sum, Apex's claims against IQ-EQ are based on facts that were available at the outset of this dispute, including in its prior iterations. Apex sued IQ-EQ in January 2025 and chose to dismiss its claims with prejudice. Now, faced with the Related Defendants' fully briefed motion to dismiss and looming depositions, Apex seeks to bring IQ-EQ back into the mix to shore up a crumbling case. This is not diligence. At best, it is tactical maneuvering, and Rule 16 exists to prevent precisely this sort of gamesmanship. *See Parker v. Columbia Pictures Ind.*, 204 F.3d 326, 340 (2d Cir. 2000). The motion should be denied under Rule 16(b)(4).

## II. APEX CANNOT SATISFY RULE 15'S MORE LENIENT STANDARD

Rule 16(b)(4)'s "good cause" standard governs here because Apex's motion was filed nearly six months after the Court's deadline. Nonetheless, the motion should be denied even under Rule 15(a)(2)'s more lenient standard. Courts retain discretion to deny leave to amend under Rule 15 for good reason, including futility, bad faith, undue delay, or undue prejudice. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Each factor warrants denial here.

### *A. The Amendment is Made in Bad Faith*

Apex's bad faith is readily apparent in its proposed amendment, which is nothing more than an attempt to correct its prior errors and its series of imprecise and deficient pleadings.

Across four iterations of its pleadings in two lawsuits, Apex's civil conspiracy theory has repeatedly shifted targets: first, Apex accused IQ-EQ in the January Action, then it pivoted to the Related Defendants in this action, and now—faced with a fully-briefed motion to dismiss pending before the Court and a genuine prospect that its claims will be dismissed on the merits—Apex has circled back to blame IQ-EQ for a second time. Courts routinely deny leave to amend where, as here, the movant seeks to forestall or circumvent an adverse outcome. *See Kant v. Columbia Univ.*, No. 08 Civ. 7476, 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010) ("[W]here it appears that a plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims, the court will deny leave to amend").

Apex's argument that the proposed amendment is based on newly obtained evidence about IQ-EQ's alleged involvement in the conspiracy is meritless. *See* Am. Mot. to Amend at 12. As discussed *supra*, the alleged "new evidence" is not genuinely new evidence. *See e.g.*, *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (affirming denial because the proposed amendment was not based on new evidence that was previously unavailable, for example, due to delayed discovery and settlement negotiations, or counsel's inability to contact the client); *cf. Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 335 (S.D.N.Y. 2019) (finding good cause despite previous availability of the information because it "was contained on a single page among thousands that was simply missed.") Even granting Apex's interpretation of this evidence (for the purposes of this motion only), it merely reiterates a theory that Apex has held since January 2025—rendering this motion an opportunistic, tactical maneuver consistent with a finding of bad faith. *See Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, No. 23 Civ. 10753, 2025 WL 1826583, at *2, 5 (S.D.N.Y. July 2, 2025) (denying leave to amend on basis of bad faith when plaintiff made "tactical decision to wait to

substantially alter her legal theory" based on facts "she was already aware [of] when the [c]omplaint was filed").

Because bad faith underlies this motion to amend, the Court should deny the motion.

*B. The Amendment Will Unduly Prejudice the Related Defendants*

Apex's proposed amendment would unduly prejudice the Related Defendants; this is the "most important" reason why the Court should deny Apex's motion. *Aetna Casualty and Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603–04 (2d Cir. 2005) (quoting *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987)).

In evaluating prejudice, courts consider, *inter alia*, whether amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial," or "significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also Schoolcraft v. City of N.Y.*, 81 F. Supp. 3d 295, 316 (S.D.N.Y. 2015). These considerations weigh heavily against amendment here.

*First*, the Related Defendants have already spent significant resources litigating this case, including by moving to dismiss in the Northern District of Texas and again, after transfer, moving to dismiss before this Court—the latter motion having been fully briefed since February 2026. Apex's proposed amendment could require a third round of dispositive briefing, despite Apex's continued failure to remedy the deficiencies the Related Defendants identified in their prior motions. Apex's eleventh-hour amendment has already stalled the Court's decision-making on the pending dismissal motions (which, for the reasons articulated herein, remain entirely valid). *See* Order dated July 29, 2026, ECF No. 160. It would be unfair and inefficient to require the Related Defendants to submit yet another round of briefing on the same legally infirm claims.

*Second*, the motion disrupted discovery at a critical juncture. Apex moved to amend on the eve of depositions, after months of scheduling negotiations among the parties for nearly all noticed witnesses. Defendants were days away from deposing Apex's Chief Commercial Officer and Rule 30(b)(6) designee, Georges Archibald, whose testimony would surely have exposed the deficiencies in Apex's claims, including that Apex was failing to perform its work for RFM for nearly a year before RFM fired Apex. Moreover, Apex moved approximately two months before the scheduled end of fact discovery. *See* Scheduling Order (setting September 30, 2026, as the close of all fact discovery). If amendment is permitted, the addition of IQ-EQ as a party will necessitate extensive additional discovery, a new deposition schedule, and a lengthy extension of the discovery deadline. In other words, the case as it stands will grind to a halt. *See Rivero v. INTL FCStone Inc.*, No. 14 Civ. 3879, 2015 WL 6128707, at *3 (S.D.N.Y. Oct. 19, 2015) (finding prejudice where amendment would be "a colossal waste of judicial resources"); *Sec. & Exch. Comm'n v. Rio Tinto PLC*, No. 17 Civ. 7994, 2020 WL 2504008, at *7 (S.D.N.Y. Mar. 9, 2020) ("[T]he likelihood of undue prejudice increases when discovery is nearly or already complete and/or the cost of additional discovery would be significant.").

The prejudice to the Related Defendants is acute: Apex's proposed amendment unfairly burdens the Related Defendants, notwithstanding the absence of new, non-conclusory factual allegations or claims against them. It unduly delays the resolution of the merits of this case, prolonging the Related Defendants' status as defendants in a meritless case—a particular burden for James Kraus, an individual who must continue to bear the burden and disclosure obligations of being a personally named defendant even though the claims against him are patently unfounded.

RFM is simply a former client that exercised its contractual termination right after suffering months of inadequate service, and Kraus is the CFO who oversaw that sensible business decision. Neither RFM nor Kraus has any stake in the dispute between Apex and IQ-EQ and should not be forced to wait for that dispute to play out before being heard on the merits of the claims asserted against them. This proposed amendment is unequivocally unduly prejudicial.

*Third*, Apex argues that denying leave would "require [it] to commence a separate action against IQ[-]EQ, resulting in duplicative discovery, overlapping motion practice, and the possibility of inconsistent rulings concerning the same underlying conduct." *See* Am. Mot. to Amend at 15–16. This proposition is absurd. Apex *already* filed and dismissed with prejudice a lawsuit against IQ-EQ. To the extent any claims Apex now seeks to assert against IQ-EQ are foreclosed, that is the result of Apex's own lack of diligence. *See supra* Section I.

*C. The Amendment is Made with Undue Delay*

As set out above, Apex has known the core facts underlying its proposed amendment since January 2025. The Second Circuit routinely affirms denial of leave based on shorter delays. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201 (2d Cir. 2007) (affirming denial where plaintiffs knew the underlying facts more than seven months before moving); *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 325–26 (S.D.N.Y. 2024) ("courts regularly deny leave for far shorter delays" than 14 months, including for four- or five-month delays) (alterations adopted) (citations omitted). Apex's delay here—more than 18 months since its first suit against IQ-EQ, and months after receiving the purported "new" evidence—is fatal under Rule 15. *See Parker*, 204 F.3d at 341.

## III. <u>THE PROPOSED AMENDMENT IS FUTILE</u>

Courts regularly deny leave when amendment would be futile—meaning it would not

withstand a motion to dismiss under FRCP 12(b)(6). *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *Exxon Mobil*, 316 F. Supp. 3d at 687, 705 (granting motion to dismiss and denying motion to amend when "[i]n the interest of efficiency and judicial economy, the Court . . . evaluated the allegations in the [c]omplaint together with the allegations in the proposed [second amended complaint]" and found plaintiff failed to state a claim and "[f]or the same reason, amendment . . . would be futile"). Courts retain discretion to deny a motion to amend on futility grounds regardless of whether the movant has otherwise satisfied the Rule 16 "good cause" standard. *See Rio Tinto PLC*, 2020 WL 2504008, at *7. When a plaintiff has had "ample access to discovery . . . with respect to the claims [it] s[eeks] to assert" yet fails to plead facts to state a claim, leave to amend should be denied as futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131–32 (2d Cir. 1993).

Here, the proposed SAC is futile as to the Related Defendants because it fails to cure any of the deficiencies identified in their fully briefed motion to dismiss. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258-60 (2d Cir. 2002) (plaintiff's "eleventh-hour attempt to change his theory of recovery … is barred by substantive contract law; thus, his attempt to amend his complaint was futile"). That motion demonstrates in detail that every claim against RFM and Kraus fails as a matter of law; the proposed SAC does nothing to remedy those failures. The proposed SAC may add more allegations, but the additional words do not bolster the failed claims against the Related Defendants; they merely increase the quantity of legally insufficient allegations.

For example, the proposed SAC adds allegations about communications between Kraus and IQ-EQ's Ben Jamron concerning the anticipated hiring of the Former Employees, the timing of their departures, and the logistics of transferring RFM's data to an IQ-EQ platform. *See*

Proposed SAC ¶¶ 79, 93, 122–25. At most, these allegations show that Kraus was aware of the transition; they do not show that Kraus induced a breach of contract, orchestrated a conspiracy, or personally benefited in any way from that transition. Further, the allegations do nothing to cure the FAC's deficiencies as to Apex's unjust enrichment claim against RFM—they make no plausible allegation that RFM got IQ-EQ's services for free, *see* Proposed SAC ¶ 230, or used Apex's trade secrets. Even accepting the additional allegations as true, they cannot establish any legal basis to impose liability on the Related Defendants for proactively managing Apex's subpar performance. By Apex's own account, RFM was looking to "smoothly continue operations with its new servicer," Proposed SAC ¶ 146, which demonstrates a prudent and justified business decision, not a conspiracy. And as Apex well knows, RFM already had an established business relationship with IQ-EQ. *See, e.g.*, Ex. I at 11, ECF No. 163-9 (email from Jamron to Kraus stating that "[w]e have been working together for too long to worry about" the sequencing of a final agreement).

Further, the proposed SAC adds conclusory words—"orchestrated" and "conspired"—without new underlying facts identifying what RFM or Kraus actually did, when they did it, or how their conduct satisfies any element of the asserted claims. *See id.* ¶¶ 2, 276. And the allegations directed at IQ-EQ merely reference RFM or Kraus in passing and do not identify any specific tortious act by either one. *See id.* ¶¶ 161, 171, 244. None of these additions cures the fundamental deficiencies of the First Amended Complaint.

Apex's motion focuses entirely on adding IQ-EQ, a party Apex dismissed with prejudice 18 months ago. This alone is sufficient grounds to deny Apex's motion. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a

second amendment even if the proposed second complaint in fact cures the defects of the first." (citation omitted)). The Court should not hold this meritless case in limbo while Apex pursues an adversary it already sued and voluntarily dismissed with prejudice.

Each claim against the Related Defendants was, is, and remains, fatally deficient.

*A. Apex Still Fails to Allege Tortious Interference*

A tortious interference claim requires (i) the existence of a valid contract, (ii) defendant's knowledge of that contract, (iii) intentional and improper procurement of a breach, and (iv) damages. *See Pare v. Aalbue*, 222 A.D.3d 769, 774 (2d Dep't 2023). Apex cannot satisfy any of these elements.

As set forth in the Related Defendants' motion to dismiss, Apex cannot identify an enforceable contract that was breached. *See* Mot. to Dismiss at 11–13, ECF No. 98. The noncompete provisions of the Former Employees' employment agreements are overbroad and unenforceable under governing New York law, as they impose unreasonable temporal and geographic restrictions and are not narrowly tailored to protect a legitimate business interest. *Id.*; *see ABH Nature's Prods., Inc. v. Supplement Mfg. Partner, Inc.*, No. 19Civ. 5637, 2024 WL 1345228, at *7 (E.D.N.Y. Mar. 29, 2024) (collecting cases).

Nor can contract reformation save the claim. As the Related Defendants demonstrated in their Reply, even under Texas law, which permits reformation of unenforceable noncompete clauses, damages cannot be recovered for actions that occurred before reformation. *See* Mot. to Dismiss Reply at 5–7 (citing *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 10 Civ. 2618-D, 2012 WL 2864510, at *6 (N.D. Tex. July 12, 2012); Tex. Bus. & Com. Code § 15.51(c)). Because Apex no longer seeks injunctive relief, this deficiency is fatal to its tortious interference claim.

Moreover, even after months of document discovery and the Related Defendants' production of 1,851 documents—including 420 emails *with* the Former Employees—Apex still

does not (and cannot) plead that the Related Defendants had any *knowledge* of the restrictive covenants in the Former Employees' employment agreements. *See* Mot. to Dismiss at 13–14. On this critical point, the proposed SAC is unchanged: there is still not a shred of factual support for Apex's allegations of the Related Defendants' knowledge; rather, Apex continues to rely on the same bare, conclusory allegations that "the Former Employees would have discussed the existence of these restrictive covenants with Kraus in connection with their plans to leave Apex" and "[s]uch provisions are standard in the financial industry." *See* Proposed SAC ¶ 202. This is not good enough—"merely alleging that a confidentiality agreement is industry practice or commonplace is insufficient to satisfy this element." *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 202 (E.D.N.Y. 2024) (citation omitted) (collecting cases). That pleading was insufficient before discovery began; it fails even more thoroughly now that document discovery is largely complete.

Further, Apex continues to offer nothing more than conclusory recitals that RFM "orchestrated" or "conspired" to induce the departures, without identifying a single specific act of inducement or motive to induce. *See* Mot. to Dismiss at 14–16.

The proposed SAC does not remedy the fatal deficiencies in Apex's tortious interference claims against RFM and Kraus.

*B. Apex Still Fails to Allege Breach of Contract*

Under New York law, which governs the MSA, a claimant's failure to plead the performance of its own contractual obligations is fatal to a breach of contract claim, even if the other requisite elements are properly pleaded. *See Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451 (S.D.N.Y. 2014). As the Related Defendants demonstrated in their motion to dismiss, Apex fails to plead that it performed. *See* Mot. to Dismiss at 16–18; *see also* Mot. to Dismiss Reply at 7–9.

Apex's own allegations are dispositive. By its own admission, Apex refused to provide RFM with its fund data as requested, despite RFM's repeated requests beginning as early as late 2024. *See* Proposed SAC ¶¶ 110, 114. Months later, Apex still had not delivered the data. *See id.* ¶¶ 121, 123, 124. And on April 4, 2025, when RFM sent Apex notice of termination, Apex still refused to make the transfer. *See id.* That refusal breached the MSA, which required Apex to "deliver or cause to be delivered to [RFM] all accounts, records, registers, correspondence and documents relating to the affairs or belonging to [RFM] in its possession or control," MSA § 12.1(c), and to "use reasonable endeavours to assist in transferring the Services without undue disruption to any replacement service provider," MSA § 12.1(b). Apex's months-long failure to deliver RFM's data did not constitute "reasonable endeavours." To the contrary, and according to its own allegations, Apex simply refused. *See* Mot. to Dismiss at 17; *see Maltbie's Garage Co. v. Gen. Motors LLC*, No. 21 Civ. 581, 2021 WL 4972738, at *7 (N.D.N.Y. Oct. 26, 2021) ("Plaintiff has therefore failed to plead a plausible breach of contract claim because the Complaint makes clear that Plaintiff did not perform on the contract.")

Apex's conclusory assertion that it "performed its obligations under the MSA by providing the contracted services to Related," *see* Proposed SAC ¶ 210, cannot overcome its specific admissions of non-performance, especially after document discovery offered Apex ample opportunity to plead its performance had it been able to locate anything to buttress its factual allegations. This Court has rejected even more detailed allegations as "conclusory and insufficient to plead performance." *Boustead Sec., LLC v. Leaping Grp. Co.*, No. 20 Civ. 3749, 2021 WL 3774116, at *3 (S.D.N.Y. Aug. 25, 2021) (Caproni, J.). Nor can Apex rescue its claim by arguing that no return obligation arose while the MSA was in effect. *See* Mot. to Dismiss Reply at 8. The MSA's transition obligations exist precisely so that a handoff can occur while

the contract is in place; a return obligation triggered only after termination would render meaningless the "without undue disruption" requirement. *See id*. And the proposed SAC's continued attempt to recharacterize RFM's data request as a demand for "Apex Group's proprietary database" is a red herring: Apex's own allegations make clear that RFM sought "Related's accounting records," Proposed SAC ¶ 122, which indisputably "belong to" or "relate to the affairs" of RFM under MSA Section 12.1(c). *See* Mot. to Dismiss Reply at 8–9.

The proposed SAC does nothing to cure these deficiencies. Apex's own allegations establish its nonperformance under the MSA, and no proposed amendment can transform Apex's admitted refusal to return RFM's data into contractual compliance.

*C. Apex Still Fails to Allege Breach of Good Faith and Fair Dealing*

Under New York law, a claim for breach of the implied covenant "can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." *See EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.* 309 F. Supp. 3d 89, 93 (S.D.N.Y. 2018). Where "the conduct allegedly violating the implied covenant is *also* the predicate for breach of covenant of an express provision of the underlying contract," the claim must be dismissed. *Henderson v. Golden Corral Franchising Sys., Inc.*, 663 F. Supp. 3d 313, 331-32 (S.D.N.Y. 2023). This Court has "consistently dismissed claims for breach of the implied covenant of good faith as redundant" in such circumstances. *See ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522-23 (S.D.N.Y. 2003); *see* Mot. to Dismiss at 18–20.

Here, Apex's proposed implied covenant claim is nothing more than a repackaging of its breach of contract claim. Apex continues to base the claim on RFM's alleged decision to terminate its business relationship with Apex—a relationship wholly governed by the MSA. But

the same factual predicate for the contract claim cannot simultaneously support an independent implied-covenant claim. *See Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020).

The damages remain duplicative as well. For breach of contract, Apex continues to seek "unpaid invoices" and damages for hiring, reallocating employees, and performing uncompensated work. Proposed SAC ¶¶ 213–14. And for breach of the implied covenant, Apex continues to seek "loss of revenue associated with the MSA" and damages for its "investment in servicing [RFM's] account." *Id.* ¶ 218. These are interchangeable, "intrinsically tied" requests. *See EFG Bank*, 309 F. Supp. 3d at 93.

Finally, Apex's proposed amended request for punitive damages does not save the claim. Courts apply a four-factor test to determine whether allegations give rise to morally culpable conduct warranting punitive damages. Apex fails to allege plausibly any of these factors; picking just one, the fourth, there is no allegation that RFM's conduct was "part of a pattern directed at the public generally." *See Zicherman v. State Farm Fire & Cas. Co.*, 698 F. Supp. 3d 564, 571 (E.D.N.Y. 2023). This is a private dispute over a services agreement, not a pattern of conduct directed at the public. *See Taco, Inc. v. Am. Home Assurance Co.*, No. 24 Civ. 7041, 2025 WL 2419707, at *7 (S.D.N.Y. Aug. 21, 2025) ("[F]undamentally, a claim for punitive damages cannot merely consist of a private breach of contract dispute . . . with no greater implications." (citation omitted))

Termination of the MSA "runs as a common thread through the core facts that give rise" to Apex's implied covenant claim, *see ARI & Co.*, 273 F. Supp. 2d at 523, and the proposed SAC adds nothing to distinguish the claim from the breach of contract claim.

*D. Apex Still Fails to Allege Unjust Enrichment*

Apex's proposed unjust enrichment claim fails as to both RFM and Kraus. As to RFM, the claim is duplicative of the breach of contract claim, and Apex does not allege that RFM has been enriched. And as to Kraus, the claim contains no allegations that he benefited personally in any way. *See* Mot. to Dismiss at 20–24; Mot. to Dismiss Reply at 10–11.

Under both New York and Texas law, unjust enrichment claims are generally unavailable when a valid contract governs the dispute. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009); *see also Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001). The MSA governs the services Apex provided to RFM and the fees RFM paid to Apex, and Apex does not dispute the MSA's validity or enforceability. Apex's alternative-pleading label does not change the result: unjust enrichment cannot serve as "a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

Nor does Apex allege that RFM was actually enriched. Apex alleges no use by RFM of its trade secrets, and Apex's theory that RFM was enriched by the Former Employees' services is too attenuated because the Former Employees work for IQ-EQ, not RFM, and Apex does not allege (nor could it) that RFM receives their services for free.

As to Kraus, Apex's contention that he was "enriched" by continuing to work with his "longtime friend" Belinkie borders on absurd. Friendship is not a type of specific, direct financial benefit that can support an unjust enrichment claim. *See Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20 Civ. 9642, 2023 WL 6311218, at *6–7 (S.D.N.Y. Sep. 28, 2023) (dismissing unjust enrichment claim where plaintiff failed to demonstrate "specific and direct" benefit to defendant, holding that a pass-through or attenuated theory of enrichment is insufficient). The Reply addressed this point squarely, characterizing Apex's gesture toward friendship as a cognizable enrichment as "risible." *See* Mot. to Dismiss Reply at 11. Yet the

proposed SAC is silent as to each of these deficiencies—again, if they cannot be cured after the near-completion of document discovery, they cannot be cured at all.

*E. Apex Still Fails to Allege Civil Conspiracy*

Apex's proposed civil conspiracy claim fails at the threshold because civil conspiracy is not an independent cause of action under either New York or Texas law; it "stands or falls with the underlying tort." *See Commercial Realty Servs. of Long Island, Inc. v. Mehran Enters., Ltd.*, 194 A.D.3d 1008, 1011 (2d Dep't 2021); *see also Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Because the proposed SAC still fails to plead any underlying tort against RFM or Kraus, the conspiracy claim necessarily fails as well. *See supra; see* Mot. to Dismiss at 24–26.

Moreover, even if Apex did state a claim for an underlying tort, its conspiracy claim would still fail as a matter of both New York and Texas law. Under New York law, the elements of a conspiracy are a corrupt agreement between two or more persons, an overt act, intentional participation in furtherance of the plan, and resulting damage. *See Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 89 (E.D.N.Y. 2025). And under Texas law, the elements include two or more persons, an object, a meeting of the minds, one or more overt unlawful acts, and damages as the proximate result. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The proposed SAC offers only conclusory assertions that the Related Defendants "conspired," "encouraged," "induced," or "orchestrated" the Former Employees' departures, without identifying any specific facts establishing an agreement or meeting of the minds. Such allegations are insufficient. *See DDR Construction Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 659 (S.D.N.Y. 2011); *see also Swartz v. Swartz*, 145 A.D.3d 818, 826 (2d Dep't 2016).

Apex's conspiracy theory is also implausible on its face. RFM had no need to "conspire" with anyone; to stop working with Apex, it could simply exercise its contractual termination right, which is precisely what it did. It defies logic and common sense to allege that RFM would invest time, money, and legal risk into signing a new MSA with Apex in January 2024, only to conspire months later to undermine that very agreement. The proposed SAC does not add a single fact to bolster this implausible conspiracy theory. Indeed, Apex's own motion arguably undermines Apex's conspiracy theory against the Related Defendants: by describing IQ-EQ as the "principal architect" of the purported scheme, the motion is in tension with the theory that RFM orchestrated the same conduct. *See* Am. Mot. to Amend at 1. Apex cannot have it both ways.

Finally, the proposed SAC is incoherent because it fails to plead Civil Conspiracy against IQ-EQ (*see* Count Eleven); it is entirely implausible to claim IQ-EQ was an "active participant" in a scheme (Proposed SAC ¶ 122) and then not sue it for conspiracy.

## IV. APEX'S MOTION IS PROCEDURALLY IMPROPER

Apex's motion is procedurally improper because it effectively seeks to relitigate a final judgment on the merits—the dismissal of its claims against IQ-EQ *with prejudice*—arising out of the same transaction and occurrence, via a pleading amendment. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*.") (citation omitted).

Apex cannot package what is effectively a request to undo the Texas judgment as a motion to amend the FAC in this action. Before granting leave to amend, a party must first have the judgment vacated or set aside pursuant to Federal Rule of Civil Procedure 59(e) or 60(b). *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Although *Ruotolo* addressed

a judgment entered in the same action, the principle applies with even greater force here: Apex cannot use Rule 15 in this action to circumvent the finality of a stipulated dismissal with prejudice in a different court. If Apex believes the Settlement Agreement was procured by fraud, its remedy lies in a motion to vacate the Texas dismissal in the Northern District of Texas—not in an amendment to this action that effectively relitigates claims it already released. *See, e.g.*, *Caron v. TD Ameritrade*, No. 19 Civ. 9015, 2020 WL 7027593, at *3 (S.D.N.Y. Nov. 30, 2020) ("The motion for relief from final judgment must be filed in the district court and in the action in which the original judgment was entered." (quoting *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 78 (5th Cir. 1970)). Courts in this Circuit have rejected attempts to use Rule 15(a) amendments to evade finality of a judgment and the "expeditious termination of litigation." *See Tang v. Grossman*, No. 19 Civ. 6099, 2022 WL 307158, at *4 (E.D.N.Y. Feb. 2, 2022), *aff'd*, No. 22-464, 2023 WL 2229366 (2d Cir. Feb. 27, 2023); *see also Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 191 (S.D.N.Y. 2008) ("The purpose of a settlement is to end litigation, not to provide a breather before the next round.") (citation omitted).

Apex chose to dismiss its claims against IQ-EQ with prejudice based on its Settlement Agreement with IQ-EQ, including IQ-EQ's representations regarding its forensic investigation into any alleged possession or use of Apex's proprietary data. It cannot now undo the legal consequences of that choice. *See Yousefzadeh v. Johnson & Johnson Consumer Inc.*, No. 24-3296, 2026 WL 2192415, at *21 (2d Cir. July 30, 2026) (affirming denial of Rule 60(b) motion because a party cannot "undo the legal consequences of its stipulation that was incorporated into a court order simply because, with the benefit of hindsight, stipulating turns out to have been an unfortunate tactic." (alterations adopted) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) ("[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of

action provides no basis for relief from a judgment”))).

Nor can Apex obtain a do-over by alleging fraudulent inducement in this action. *See Primedia Enthusiast Publication Inc. v. Ashton International Media, Inc.*, No. 02 Civ. 9997, 2003 WL 22220375, at *6 (S.D.N.Y. Sep. 25, 2003) (rejecting fraudulent inducement claim where sophisticated party had the means to negotiate for specific contractual protections but failed to do so).

Apex made a strategic choice as it relates to its claims against IQ-EQ, and that choice is binding. If Apex is unhappy with the results of that choice, its recourse lies elsewhere, not in the present motion to amend.

## CONCLUSION

For the foregoing reasons, Apex’s motion for leave to file a Second Amended Complaint should be denied in its entirety.

Dated: August 28, 2026
New York, New York

_/s/ Nicole Gueron_________
CLARICK GUERON REISBAUM LLP
Nicole Gueron
David Kimball-Stanley
Erin Woodruff

41 Madison Avenue, 23rd Floor
New York, New York 10010
(212) 633-4310
ngueron@cgr-law.com
dkimballstanley@cgr-law.com
ewoodruff@cgr-law.com

*Attorneys for Defendants Related Fund Management LLC and James Kraus*

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

Nicole Gueron, undersigned counsel for Defendants Related Fund Management, LLC and James Kraus, hereby certifies that the number of words within the attached memorandum of law, excluding the caption, table of contents, table of authorities, and signature block, is 8,153 according to the word-processing system used to prepare the aforesaid document.

_*/s/ Nicole Gueron*__________

Nicole Gueron