SADIS

Scott C. Ferrier, Esq.
Sadis & Goldberg LLP
551 Fifth Avenue, 7th Floor
New York, NY 10176
Phone: 212. 573.8021
sferrier@sadis.com

October 9, 2026

**VIA ECF**
The Honorable Gary Stein
United States Magistrate Judge
500 Pearl Street, Room 702
United States Courthouse
New York, NY 10007

Re: *Apex Group Capital Advisors LLC v. Related Fund Mgmt. et al.*, 25-cv-08892: Dispute Regarding Apex's Deficient Privilege Log and Refusal to Share Costs of Forensic Exam

Dear Judge Stein:

I write on behalf of Defendants Lucas Belinkie, Preston Callen, William Chaney, and Ryan Hope (the "Employee Defendants") regarding Plaintiff Apex Group Capital Advisors LLC's ("Apex") blatantly deficient privilege log and refusal to bear any cost of a voluntary forensic imaging of Messrs. Belinkie, Callen, and Hope's phones. *First*, Apex's 866-entry privilege log is deficient because it is merely a metadata log that provides no descriptions whatsoever of the basis for asserting privilege. This cannot be addressed by sampling, because it is a global problem throughout the log, and the basis for the privilege cannot be inferred from other columns. Similarly, Apex's log fails to establish the basis for privilege for (i) 97 entries where no lawyer sent or received the document, and (ii) 209 entries that are primarily business communications where only an in-house lawyer receives or is copied. Apex should also be required to identify the document type, authors, recipients and reasons for asserting privilege for 139 attachments.

*Second*, where, as here, a plaintiff seeks "an independent forensic examination of" a "personal cell phone" because certain "text messages from the relevant period were automatically deleted," the "forensic examination shall be conducted at Plaintiff's expense." *Poolos v. Paramount Global*, 2025 WL 1069200, at *2 (S.D.N.Y. Apr. 8, 2025). Apex seeks a forensic examination to re-run the same search terms that the Employee Defendants have already run, based on the Employee Defendants' inadvertent failure to disable auto-deletion of text messages. Further, it is plain that Apex is seeking to foist costs on the Employee Defendants, because Apex has refused the Court's (and our) suggestion to split the costs of the examination. Apex should bear the burden of the extra costs it seeks to impose, which will primarily duplicate prior efforts.

## I. APEX'S PRIVILEGE LOG IS DEFICIENT BECAUSE IT PROVIDES NO EXPLANATIONS OF THE REASONS FOR ASSERTING PRIVILEGE

*First*, Apex's privilege log is deficient because it is merely a metadata log that provides no descriptions whatsoever of the basis for asserting privilege. This violates Apex's fundamental obligation to "describe the nature of the … communications … not produced or disclosed—and do so in a manner that … will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The Second Circuit has long held that a "privilege log should provide 'a specific explanation of why the document is privileged.'" *U.S. v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473–74 (2d Cir. 1996) (quoting *Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill.

1992)). Apex's metadata log provides no explanations whatsoever of why the documents it has withheld are privileged – the log has no description field at all. (Ex. A.)[1] Apex has failed to establish its claims of privilege, and the Court should either order Apex to supplement its privilege log, or hold that Apex has waived any privilege.

The ruling in *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, is directly on point. 2018 WL 10038859, at *1 (S.D.N.Y. Sept. 28, 2018). In *Royal Park*, the defendant – just like Apex here – "exported" various metadata fields into the log, including the subject line of emails and the file name of other documents, rather than draft a description for each entry." *Id.* But in many instances, the subject line "descriptions [we]re insufficient to permit even a factual evaluation as to what the document is about" or other information necessary to determine[] whether it was properly withheld from disclosure." *Id.* (citing subject descriptions "Privileged Confidential Items," "Per your request" and "Global Policies"). Accordingly, the Court ordered the defendant to "revise its metadata log to include a meaningful subject matter description, for each document, so as to permit plaintiff (and the Court) to determine 'whether the document is at least potentially protected from disclosure.'" *Id.* (citing *Constr. Prods. Rsch.*, 73 F.3d at 473); *accord BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 3584020, at *1 (S.D.N.Y. July 23, 2018) (ordering defendant to "supplement and correct a metadata privilege log" to "make sure that the information provided is sufficient to allow" plaintiff "to understand the privilege assertions and make informed challenge decisions"); *McNamee v. Clemens,* 2013 WL 6572899, at *3 (E.D.N.Y. Sept. 18, 2013) (rejecting privilege log where the subject descriptions contained, "in many instances, exceedingly unhelpful descriptions" including "'Media,' 'My info,' 'statement,' 'Costs,' 'Letter,' 'notes,' 'Inquiry,' and 'Discussion'").

*Royal Park* and *BlackRock* should govern here, because Apex's metadata log has over five hundred entries with vague and inscrutable subject line information that makes it impossible for the Employee Defendants (and the Court) to evaluate the basis for the privilege – and another 139 entries with no information in the Subject field. For example, Apex's metadata log has 90 entries where the subject line merely reads "SandsPoint," which conveys no information about the privilege claim whatsoever.[2] Another 31 entries have the subject "Unpaid Commissions."[3] Twenty-one other entries have the subject "Form request."[4] Another 18 entries simply state "Egnyte contact."[5] Other inscrutable subject field information includes "FMC / 35 HY Projected CF's – 4Q24"; "ME Template Request," "Introduction – Kevin Landers"; "Resignation – Marco Padilla"; "Discuss Investran Data"; "Role Relo File to be Finalized – Charlotte & Texas." This global defect shows that sampling is insufficient to address the issue. Apex should be ordered to revise its entire log to provide a narrative for each entry that is sufficient for the Employee Defendants (and the Court) to evaluate Apex's assertion of privilege.

In contrast, Apex is badly misguided in arguing that the ESI Protocol (Dkt. 138) excuses it

---

[1] The Employee Defendants will also email chambers an excel version of the log.

[2] See Ex. A Nos. 274, 276, 283, 286, 287, 288, 289, 290, 291, 296, 301, 313, 317, 320, 324, 326, 329, 367, 368, 371, 372, 373, 374, 375, 376, 392, 393, 394, 395, 405, 406, 407, 408, 409, 410, 411, 428, 429, 442, 443, 450, 451, 456, 458, 499, 504, 516, 517, 521, 522, 523, 524, 525, 526, 527, 528, 581, 582, 675, 676, 678, 679, 688, 689, 692, 693, 694, 695, 723, 724, 725, 726, 733, 734, 736, 737, 749, 750, 880, 881, 882, 883, 887, 888, 890, 891, 892, 893, 947, and 948.

[3] *Id.* Nos. 151-81.

[4] *Id.* Nos. 186-205, 212.

[5] *Id.* Nos. 292-95, 297-300, 302-03, 318-19, 327-38, 359-60, 369-70, 721.

from describing the basis for its privilege assertions. The ESI Protocol contains the parties' agreement to provide a minimum amount of "Metadata fields" to help determine the "basis of privilege[]." *Id.* at 18 § VII.B. But the ESI Protocol does not purport to limit Apex's obligation to provide a privilege log that provides sufficient information to evaluate the privilege. Indeed, the ESI Protocol states the exact opposite of Apex's position:

> "Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party. To the extent additional obligations or rights not addressed in this ESI Protocol arise under the governing case law, the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Southern District of New York . . . those obligations or rights remain." *Id.* at 3 § I(D).

Moreover, even if the ESI Protocol could be read to authorize a metadata log only (it cannot), both *Royal Park* and *BlackRock* hold that a metadata log must be revised where, as here, the "descriptions are insufficient to permit even a factual evaluation as to what the document is about" or other information necessary to determine[] whether it was properly withheld from disclosure." *Royal Park,* 2018 WL 10038859, at *1; *accord BlackRock,* 2018 WL 3584020, at *1 (same); Local R. Civ. 26.2(c)(4) (where a metadata log is used a party "may object if the substantive information required by this rule has not been provided"); *see also U.S. Bank N.A. v. Triaxx Asset Mgmt. LLC*, 2021 WL 1968325, at *4 (S.D.N.Y. Mar. 31, 2021) (ordering "a traditional, document-by-document privilege log" for "1,359 withheld documents" where categorical log failed "to provide 'sufficient detail to permit a judgment as to whether the document is" privileged).

*Second*, the deficiencies in Apex's privilege log are particularly significant for attachments. For 139 attachments, Apex has not provided any information for the "Subject" metadata field. Nor has it provided author or recipient information for any attachment. Apex should be required to "add the author and document descriptions of the withheld attachments to its log." *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 2025 WL 1434375, at *11 (S.D.N.Y. May 17, 2025).

## II. <u>APEX'S PRIVILEGE LOG CONTAINS NUMEROUS ENTRIES THAT ARE NOT PRIVILEGED OR WHERE THE PRIVILEGE HAS BEEN WAIVED</u>

Apex's privilege log is also deficient because (1) Apex has failed to demonstrate a basis for privilege where no attorney is listed on the document or a third party is involved; (2) Apex has not shown that a document primarily seeks legal advice where it involves employees and only in-house counsel; and (3) Apex has waived privilege for some entries by putting the subject at issue.

*First*, Apex has failed to demonstrate that any privilege applies to 97 entries for which no attorney appears on the communication, yet the documents have been redacted or withheld.[6] This fails Apex's burden of proving that the privilege applies, particularly when coupled with the failure to provide descriptions of the basis for asserting privilege. *Constr. Prods. Rsch., Inc.*, 73 F.3d at

[6] Ex. A, Sort Numbers 5, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 33, 40, 41, 44, 45, 46, 47, 52, 113, 114, 115, 117, 118, 119, 121, 123, 124, 135, 148, 150, 186, 249, 262, 263, 266, 422, 423, 599, 601, 602, 697, 698, 699, 701, 702, 706, 707, 708, 709, 710, 711, 713, 714, 715, 716, 717, 718, 719, 720, 722, 727, 728, 729, 730, 731, 732, 741, 742, 743, 751, 827, 984, 985, 986, 1019, 1032, 1033, 1034, 1035, 1036, 1038, 1039, 1040, 1041, 1042, 1043, 1044, 1045, 1050, 1051, 1052, 1053, 1054, 1055, 1056, and 1057. Sort numbers go beyond the total number of entries because Apex previously withdrew 200 entries from its log.

473 ("party asserting the privilege must establish the essential elements of the privilege"). Further, entries numbered 1019-20 include a third party, aman.bahel@gmail.com, who is not an Apex employee, which destroys the privilege. Likewise, entry 721 has an employee from third-party vendor Egnyte. Further, entry numbers 38, 759, and 1022 only list lawyers (McGuireWoods, Paul Hastings, and Simmons & Simmons) that Apex has not identified as its lawyers.

*Second*, Apex has failed to demonstrate a predominant purpose for rendering legal advice for (i) 110 entries where the only attorney is in-house counsel as a copyee,[7] and (ii) 98 entries where the only attorney is in-house counsel as just one of the people who have received the email.[8] "[I]n light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel … must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." *In re Aenergy, S.A.,* 451 F. Supp. 3d 319, 323 (S.D.N.Y. 2020) (ordering production of documents). Apex has not proven that the predominant purpose of these documents was to provide legal advice.

*Third*, Apex should be required to produce at least 88 documents that appear to relate to its forensic investigation, including three documents authored by Mihailo Djordjevic (497, 510, & 512), the Apex internal Security Analyst who investigated whether data was in fact exfiltrated from Apex's systems.[9] Apex has put its own investigation into whether the Employee Defendants took documents that were allegedly downloaded to their Apex-issued devices squarely at issue, in its pleadings and Ms. Van Horvath's affidavit in support of its motions for TRO and Preliminary Injunction. Dkt. No. 37 ¶19 at 10. "The attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). "[A] waiver may be implied in circumstances where it is called for in the interests of fairness." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008). A party cannot "affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *Chevron Corp. v. Donziger*, 2013 WL 6182744, at *2 (S.D.N.Y. Nov. 21, 2013).

## III. <u>APEX SHOULD BEAR THE EXPENSE OF THE FORENSIC EXAMINATION</u>

Apex should bear the estimated $42,000 - $63,000 cost of the forensic examination of the Employee Defendants' personal cellphones that is being made at Apex's request. This Court has already held that "Plaintiff's request to be allowed to forensically examine the Employee

[7] Ex. A, Sort Numbers: 1, 2, 3, 4, 55, 56, 75, 76, 79, 80, 149, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 237, 238, 239, 240, 241, 242, 243, 284, 532, 533, 534, 535, 553, 556, 557, 558, 559, 560, 561, 563, 564, 565, 566, 567, 568, 570, 571, 572, 573, 574, 575, 576, 593, 595, 597, 605, 606, 607, 608, 609, 610, 613, 614, 615, 616, 618, 620, 941, 1022 and 1023.

[8] Ex. A, Sort Numbers: 6, 7, 22, 59, 60, 61, 66, 67, 68, 69, 70, 71, 72, 73, 74, 84, 85, 86, 101, 105, 108, 109, 110, 136, 144, 145, 146, 147, 148, 182, 183, 184, 185, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 218, 219, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 257, 258, 259, 260, 261, 264, 269, 270, 271, 343, 425, 509, 510, 511, 512, 626, 627, 628, 860, 967, 968, 972, 973, 1012, 1015, 1016, 1021, 1024, 1025, 1026, 1027, 1028, 1029, 1030, 1031, 1058, 1059, 1060, and 1061.

[9] Ex. A, Sort Numbers: 305, 306, 308, 309, 311, 312, 339, 340, 316, 385, 401, 478, 457, 459, 479, 511, 510, 512, 338, 343, 366, 412, 413, 414, 426, 315, 322, 331, 333, 335, 342, 344, 362, 378, 381, 384, 387, 397, 400, 307, 509, 290, 291, 294, 295, 296, 314, 319, 321, 330, 332, 334, 337, 341, 361, 364, 377, 380, 383, 386, 389, 390, 396, 399, 424, 425, 750, 943, 947, 948, 304, 325, 944, 310, 323, 336, 363, 365, 379, 382, 388, 391, 398, 427, 475, 476, and 477.

Defendants' personal computers, mobile phones, and personal email accounts, cloud storage sites, and external hard drives is denied." Dkt. No. 174 ¶ 1. Apex has not met the high burden of proving that the drastic remedy of a direct forensic examination is necessary. So Apex should bear the costs of the limited forensic examination to which the Employee Defendants agreed. Apex has refused the Employee Defendants' (and the Court's) suggestion that the parties split the costs of the forensic examination.

Further, the Employee Defendants should not be required to bear the full costs of Apex's fishing expedition, considering that Apex will be running the same search terms that Employee Defendants' counsel previously ran on these phones and used to make productions in this case. The costs of Apex's decision to re-do those same search terms using an independent forensic examiner should not be borne exclusively by Employee Defendants, particularly given the incentive it would provide for Apex to drive up the cost of such examination. Apex admits that it received text messages from Defendant Chaney involving the Employee Defendants for the period in which messages were autodeleted on Callen, Hope, and Belinkie's phones. So the forensic examination is not likely to provide a significant additional benefit. *See Rowe Ent., Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 430 (S.D.N.Y. 2002) (shifting costs to requesting party because "marginal value of searching the e-mails is modest at best").

Notably, courts in this District (and elsewhere) have required the requesting party to pay for additional forensic discovery – particularly absent evidence of intentional spoliation. *See Poolos*, 2025 WL 1069200, at *2 (ordering plaintiff to pay for "an independent forensic examination of" a "personal cell phone" where defendant's employee "text messages from the relevant period were automatically deleted"); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) ("plaintiff is entitled to attempt (at its own expense) the task of recovering deleted computer files from [Defendants'] computers."); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 573–77 (N.D. Ill. 2004) (allocating 75% of the costs of restoring and searching backup data to requesting party); *Balboa Threadworks, Inc. v. Stucky*, 2006 WL 763668, at *5 (D. Kan. Mar. 24, 2006) (ordering forensic imaging "at Plaintiffs' cost and expense.").

In contrast, Apex is misguided in relying on *Quinby v. WestLB AG*, 245 F.R.D. 94, 96 (S.D.N.Y. 2006), which did not involve a request to forensically examine an employee defendant's personal phone. Instead, *Quinby* addressed a Defendants' request to shift "the cost of restoring" from backup tapes "and searching" emails that had not been previously produced. *Id.* at 111. Accordingly, *Quinby* is inapplicable to this case. In any event, *Quinby* shifted 30% of costs to the Plaintiff, including because of the "marginal-utility" of the requested effort. *Id.* Further, Apex's reliance on *Oakley v. MSG Networks, Inc.*, is misguided, because that case involved a motion for sanctions (not for costs of a forensic exam), and findings that "Oakley acted with the intent to deprive MSG of his text messages" and that his conduct "prejudiced" the defendant. 792 F. Supp. 3d 377, 390 (S.D.N.Y. 2025). But there has been no finding here that the Employee Defendants acted with intent to deprive Apex of text messages – or any showing of prejudice, particularly given the availability of Chaney's text messages.

Accordingly, the Court should order Apex to bear the costs of the largely duplicative forensic examination that it has requested. Apex's refusal to accept the Employee Defendants' (and the Court's) suggestion that the parties split costs shows that Apex seeks to impose costs on the Employee Defendants. Apex should pay for the extra forensic examination it has requested.

Respectfully submitted,

/s/ Scott C. Ferrier
Scott C. Ferrier

cc: All counsel of record