**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X

APEX GROUP CAPITAL ADVISORS LLC,

Plaintiff,

-against-

RELATED FUND MANAGEMENT LLC, *et al.*,

Defendants.

----------------------------------------------------------------------X

**25 Civ. 8892 (VEC) (GS)**

**ORDER**

**GARY STEIN, United States Magistrate Judge:**

On August 18, 2026, this Court held a discovery conference with respect to the discovery issues raised in the parties' July 15, 2026 status letter. (*See* Dkt. No. 153).[1] During that conference, the Court issued rulings resolving all the disputes save one: whether Defendants Lucas Belinkie, Preston Callen, William C. Chaney, and Ryan Hope (the "Employee Defendants") should be permitted to depose John Clingerman and Bruce Moats, forensic computer examiners who submitted declarations in support of Plaintiff Apex Group Capital Advisors LLC's ("Apex") motion for a preliminary injunction. (Dkt. No. 174; *see also* Dkt. No. 153 at 2–3). At the Court's direction, the parties thereafter submitted supplemental briefing on this issue. (Dkt. Nos. 175 ("Def. Ltr.") & 176 ("Pl. Ltr.")). Having considered the parties' submissions, the Court denies the Employee Defendants' request.

Apex contends that Clingerman and Moats are shielded from deposition by Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure because they are non-

[1] A transcript of this conference is found at Docket Number 178. ("Tr.").

testifying consulting experts. *See Chiquita Int'l Ltd. v. M/V Bolero Reefer*, No. 93 Civ. 167 (LAP) (JCF), 1994 WL 177785, at *1 (S.D.N.Y. May 6, 1994) ("[A] non-testifying expert is generally immune from discovery."). Rule 26(b)(4)(D) provides: "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." This prohibition does not apply, however, where such discovery is permitted under Fed. R. Civ. P. 35(b) or upon a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(i), (ii).

As an initial matter, the Employee Defendants dispute that Clingerman and Moats are, in fact, consulting experts within the meaning of Rule 26(b)(4)(D). According to the Employee Defendants, Clingerman and Moats are simply "fact witnesses" who submitted "fact declarations" in support of Plaintiff's positions in this case. (Def. Ltr. at 1). The Court disagrees. Clingerman and Moats are both certified forensic computer examiners employed by Consilio, LLC ("Consilio"), which, *inter alia*, provides expert consulting services in the area of computer forensics. (Dkt. No. 37 Ex. 4, Declaration of John R. Clingerman ("Clingerman Decl."), ¶ 2; Dkt. No. 37 Ex. 5, Declaration of Bruce Moats ("Moats Decl."), ¶¶ 2–3). Consilio was retained by a law firm representing Apex in March 2025, after this action was first filed, to forensically preserve and analyze computers used by former

Apex employees to determine if confidential information was compromised. (Clingerman Decl. ¶ 6; Moats Decl. ¶ 5; Pl. Ltr. at 1). According to their *curricula vitae*, both have testified as expert witnesses on numerous occasions. (Clingerman Decl. Ex. A; Moats Decl. Ex. A). The Court thus has little difficulty in concluding that Clingerman and Moats were retained as experts for purposes of this litigation.

Based on the chronology—Clingerman and Moats were hired in March 2025 and submitted their declarations in support of Apex's motion for a preliminary injunction in July 2025—it seems likely that they were initially retained to provide these sworn declarations to the Court and, if necessary, testimony at any preliminary injunction hearing. In other words, they have not acted as classic non-testifying experts, providing behind-the-scenes advice to Apex's counsel. But that does not mean they are not properly viewed as non-testifying consulting experts for discovery purposes. Rule 26(b)(4)(D) protections may apply even where a party has explicitly designated an individual as its testifying expert and subsequently de-designated the person as its testifying expert. *See Netjumper Software, L.L.C. v. Google, Inc.*, No. M19-138, No. 04 Civ. 70366 (JFK), 2005 WL 3046271, at *3 (S.D.N.Y. Nov. 10, 2005); *Hansen Bev. Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG, 2010 WL 1608880 (S.D. Cal. Apr. 20, 2010) (barring deposition of de-designated expert even though expert had submitted a declaration in connection with a preliminary injunction motion). Here, Clingerman and Moats were never designated as trial experts, and Apex represents that it does not intend to call

either one as a witness at trial, or rely at trial on anything set forth in their declarations. (Pl. Ltr. at 3; Tr. at 45:5–10).[2]

It is true, as the Employee Defendants emphasize, that the declarations from Clingerman and Moats consist largely of their "factual observations" of the Employee Defendants' Apex-issued computers. (Def. Ltr. at 2; *see* Clingerman Decl. ¶¶ 10–15; Moats Decl. ¶¶ 7–9). It is difficult to see anything resembling expert "opinion" in the declarations, and indeed Apex does not contend that the declarations contain expert opinion. (Tr. at 42:24-43:2). But that does not take this case outside the ambit of Rule 26(b)(4)(D). Under the Rule, a party ordinarily cannot discover "*facts known or* opinions held" by a non-testifying consulting expert. Fed. R. Civ. P. 26(b)(4)(D) (emphasis added); *see In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 33 (D. Mass. 2006) (rejecting discovery proponent's argument that non-testifying expert was in essence "a fact witness" because "Rule 26(b)(4)(B) protects both facts known and opinions held by a non-testifying expert").

The Employee Defendants rely on the proposition that where experts "were actors or viewers of the occurrences that gave rise to suit," they are subject to discovery like any other fact witness. 8A Wright & Miller, *Federal Practice & Procedure* § 2029 (3d ed. Apr. 2026 update). (*See* Def. Ltr. at 2 (citing *Dayton-Phoenix Grp., Inc. v. Gen. Motors Corp.*, No. C–3–95–480, 1997 WL 1764760, at *2

[2] Courts have compelled discovery from a de-designated expert under circumstances suggesting "unfair gamesmanship," as where a party de-designated the expert as a way to avoid producing potentially damaging documents. *SEC v. Penn*, No. 14 Civ. 581 (VEC), 2018 WL 11319021, at *1—2 (S.D.N.Y. Apr. 18, 2018). The Court does not find such circumstances to exist here.

(S.D. Ohio Feb. 19, 1997), and *Hayer v. Liverant*, No. 22-cv-05420-VC (LJC), 2023 WL 3794517, at *3 (N.D. Cal. June 2, 2023)). But this principle applies to experts "whose information was not acquired in preparation for trial." Fed. R. Civ. P. 26(b)(4)(A) (Notes of Advisory Committee on Rules, 1970 Amendment). As Apex notes, the experts in both cases cited by the Employee Defendants acquired their knowledge of the facts not in their capacity as experts, but prior to their retention as experts. *See Dayton-Phoenix Grp.*, 1997 WL 2023 1764760, at *2 (agreeing that plaintiff was "entitled to discover facts and opinions held by [non-testifying expert] *before* his involvement in this litigation" (emphasis in original)); *Hayer*, 2023 WL 3794517, at *3 (ordering disclosure of forensic psychologist's pre-suit communications that defendant relied on to deny plaintiff's request for reasonable accommodations). Here, by contrast, Clingerman and Moats made their factual observations after this lawsuit was filed and in their capacity as retained experts.

Nor does the fact that Apex used the information provided by Clingerman and Moats in its First Amended Complaint ("FAC") mean that they are fact witnesses rather than non-testifying experts. *See In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 14 MD 2548 (VEC), 2021 WL 2481835, at *3 (S.D.N.Y. June 17, 2021) (rejecting defendants' argument that experts fell outside the scope of Rule 26(b)(4)(D) because, by "voluntarily injecting their experts' work product into the complaint as factual material, [p]laintiffs made them witnesses instead of consultants" (quotation omitted)). "Relying on analyses produced by consultants in a complaint does not convert those analyses to sworn testimony, and

the complaint is not a substitute for live testimony at trial." *Id.* at *4. Accordingly, Clingerman and Moats "are properly classified as non-testifying consultants protected by Rule 26(b)(4)(D)." *Id.*

As noted above, "exceptional circumstances" can override the ordinary rule. "Courts have recognized two situations in which such exceptional circumstances are presented: (1) where the object or condition observed by the non-testifying expert is no longer observable by the expert of the party seeking discovery, and (2) where it is possible to replicate discovery on a contested issue but the cost would be prohibitive." *In re Zyprexa Prods. Liab. Litig.*, No. 04 MD 1596 (JBW) (RLM), 2008 WL 4850122, at *3 (E.D.N.Y. Nov. 6, 2008) (citation omitted); *see Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 44 (S.D.N.Y. 1997). The Employee Defendants do not argue that either situation exists here, nor is there anything in the record to suggest that the Apex-issued computer devices can no longer be inspected or that it would be prohibitively expensive to replicate Clingerman or Moats' observations.

This brings us finally to the issue of waiver. "Courts are split as to whether Rule 26(b)(4)(D) protections can be waived." *In re Commodity Exch.*, 2021 WL 2481835, at *4. The majority approach "concludes that, like work-product protection generally, parties may waive Rule 26(b)(4)(D) protections." *Id.* The Employee Defendants argue that Apex waived any Rule 26(b)(4)(D) protections by affirmatively relying on the contents of the Clingerman and Moats' declarations in moving for a preliminary injunction, in filing its amended complaint, and in

opposing the Employee Defendants' motions to dismiss Apex's trade secret claims. (Def. Ltr. at 2–3).

The Employee Defendants' waiver argument, to the extent based on Apex's preliminary injunction papers, is unpersuasive. As Apex points out (Pl. Ltr. at 3; Tr. at 43:24–45:19), a similar waiver argument was made and rejected in *Wreal LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2015 WL 1281042 (S.D. Fla. Mar. 20, 2015). There, the plaintiff submitted a declaration from an expert in support of its motion for a preliminary injunction, and also called the expert to testify at the preliminary injunction hearing. The court found no waiver because the expert's declaration and testimony "were used only for the preliminary injunction motion" and the plaintiff "ha[d] not designated [the expert] as an expert for use at trial." *Id.* at *3–4 (emphasis omitted). Other cases finding waiver were distinguishable because in those cases the party had submitted the expert's declaration for trial-related purposes, and "[p]reliminary injunction matters are not necessarily related to 'trial.'" *Id.* at *3 (citing, *e.g.*, *United States v. Hooker Chems. & Plastics Corp.*, 112 F.R.D. 333, 339 (W.D.N.Y. 1986) (finding that "when a party offers an affidavit of an expert witness in opposition to, or in support of a motion for summary judgment, it waives its right not to have the deposition of said expert taken")).

The *Wreal* court noted that the defendant may well have been entitled to seek discovery from the expert during the preliminary injunction proceedings, but it had not done so and "the preliminary injunction phase ha[d] passed." *Id.* Even if discovery could have been taken at that time, the court reasoned, the expert's status

as a non-testifying expert, entitled to the protections of Rule 26(b)(4)(D), had been "restored" and, "[f]or now, [he] is simply a consulting, non-testifying expert, notwithstanding his prior role during the preliminary injunction phase." *Id.* at *3–4. Thus, the defendant's inability to take discovery from the expert "d[id] not prejudice [defendant], as [defendant] d[id] not have to prepare for his cross-examination at trial." *Id.* at *4.

The Employee Defendants attempt to distinguish *Wreal* on the ground that the plaintiff there had not affirmatively disclosed that its expert had conducted a survey (the subject of the requested discovery) and that the survey only came up during cross-examination of the expert at the preliminary injunction hearing. (Def. Ltr. at 2–3). But the *Wreal* court noted that fact only in a footnote while expressing an alternative ruling that, "[e]ven if there was waiver here," the scope of the waiver likely would not extend to the survey. *Wreal*, 2015 WL 1281042 at *3 n.3. The plaintiff's use of the survey during the preliminary injunction proceedings was therefore not integral to the court's main holding—that there had been no waiver—or to the rationale for that holding. Moreover, in explaining this alternative ruling, the court noted that "[t]his is not a case where Wreal voluntarily disclosed that [the expert] conducted a survey and is now attempting to prevent [defendant] from obtaining discovery related to the survey," as the defendant "was able to elicit testimony at the preliminary injunction hearing regarding that survey." *Id.* So too here, the Employee Defendants were able to take discovery from Clingerman and Moats during the preliminary injunction proceedings.

Nor does the Court find that Apex waived Rule 26(b)(4)(D) protections by utilizing information in the declarations in its FAC or opposition to the motions to dismiss. Such reliance does not, in and of itself, establish waiver. Where the plaintiff has "disclaimed future reliance" on an expert's factual analysis incorporated into a complaint, courts have found that fairness principles do not support a finding of waiver, because the analysis is no longer "at issue" and the defendant "will [not] be prejudiced going forward." *Dover v. Brit. Airways, PLC (UK)*, No. 12 Civ. 5567 (RJD), 2014 WL 5090021, at *2 (E.D.N.Y. Oct. 9, 2014);[3] *see also Nw. Biotherapeutics, Inc. v. Cannacord Genuity LLC*, No. 22 Civ. 10185 (GHW) (GS), 2026 WL 1398342, at *2 (S.D.N.Y. May 19, 2026) (finding no waiver where, *inter alia*, plaintiff "is not calling [consulting expert] as an expert witness at trial" and thus "will not be able to rely on his statistical analyses at trial (or on summary judgment) unless it is able to replicate the analyses through a different expert or other means"); *Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2025 WL 3552388, at *5 (N.D. Ill. Dec. 11, 2025) (finding no waiver as plaintiffs "affirmatively stated they will not be relying on any pre-filing analysis conducted by their consulting expert").

[3] The plaintiff's reliance on its expert's analysis in opposing a motion to dismiss did not change the *Dover* court's conclusion. The court reasoned that, on a motion to dismiss, it was required to assume the truth of the complaint's allegations and any attacks by the defendant on the analysis "would not be appropriate in assessing the complaint's plausibility." *Dover*, 2014 WL 5090021, at *2. Hence, the plaintiff's reliance on the analysis "did not cause prejudice" to the defendant. *Id.*

Here, as noted above, Apex has disclaimed future reliance on Clingerman and Moats' analyses. Apex states that, should it decide to present evidence regarding the subject matter of Clingerman and Moats' declarations, it "will designate testifying experts to prepare reports and to sit for depositions regarding those subjects." (Pl. Ltr. at 3). Because Clingerman and Moats will not be testifying at trial, the Employee Defendants will not be prejudiced by being unable to depose them. *See Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 8 (D.D.C. 2013) ("[B]ecause Dr. Rubloff is not testifying at trial, barring his deposition at this time will not prejudice [defendant] as it does not have to prepare for his eventual cross examination.").

Moreover, the Employee Defendants have other means available to them to test the veracity of Apex's allegations in discovery. For example, Apex asserts that "there is a fact witness available for the defendants to depose about these issues," namely, Maria von Horvath (discussed further below), who is knowledgeable about the Employee Defendants' purported downloading activity. (Tr. at 46:10–23). The Employee Defendants also may be able to inspect the computers in question so that their own expert can attempt to replicate Clingerman and Moats' observations. This further obviates any potential unfairness or prejudice.

The Employee Defendants' authorities do not compel a contrary result. (*See* Def. Ltr. at 2). The Employee Defendants rely mainly on *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 14 MD 2548 (VEC), 2019 WL 13046984 (S.D.N.Y. Feb. 25, 2019). In that case, Judge Caproni found that the

plaintiffs in an antitrust and price-manipulation conspiracy action had waived work product protection over materials created or considered by their expert consultants in preparing statistical analyses that were incorporated in plaintiffs' amended complaint. *Id.* at *2–4.[4] But there, the amended complaint specifically and repeatedly referred to plaintiffs' use of "economic consultants" in preparing the statistical analyses and described the consultants' methodologies; plaintiffs "relied primarily on" that statistical evidence to allege a conspiracy; and the court found those allegations "critical to [its] determination that [p]laintiffs plausibly (but barely) stated a claim of price manipulation and antitrust conspiracy." *Id.* at *1; Dkt. No. 266 ¶¶ 124, 175, 257, 336, No. 14 MC 2548.

By contrast, the allegations in Apex's FAC about the Employee Defendants' downloading of confidential information from their Apex-issued computers and use of that information do not mention, let alone highlight, Apex's use of forensic computer examiners. As the Employee Defendants note (Def. Ltr. at 1), three paragraphs in the Amended Complaint, which describe instances when the Employee Defendants used their Apex-issued device to connect to web-based email

---

[4] In this decision, Judge Caproni did not analyze whether there had been a waiver of Rule 26(b)(4)(D) protections, because defendants were seeking only documents and she concluded that Rule 26(b)(4)(D) only precludes discovery of experts "by interrogatories or deposition." *Id.* at *2 n.3 (quoting Fed. R. Civ. P. 26(b)(4)(D)). However, in a subsequent ruling in the same case (albeit one not cited by the Employee Defendants), Judge Caproni applied the reasoning in her 2019 decision to find that plaintiffs had also waived Rule 26(b)(4)(D) protections with respect to defendants' requested depositions of the non-testifying experts. *In re Commodity Exch.*, 2021 WL 2481835, at *6. Ultimately, Judge Caproni denied the requested depositions, finding they were unreasonably cumulative or duplicative of other discovery material provided with respect to the experts' statistical analyses. *Id.* at *6–8.

accounts, external drives, or USB devices, are clearly derived from the information in Clingerman and Moats' declarations. (*See* Dkt. No. 80, FAC ¶¶ 75, 85, 105; *compare* Clingerman Decl. ¶¶ 9–11, 14–15; Moats Decl. ¶¶ 7–8). Considered in the context of the entirety of Apex's allegations about the Employee Defendants' purported misappropriation of its confidential information, however, these allegations are far from the primary or central basis for Apex's claims.

For example, the FAC alleges that, the day before submitting his resignation letter, Chaney downloaded hundreds of files from his Apex work computer to a device not issued by Apex. (FAC ¶ 83). It sets forth numerous examples of downloaded materials that Chaney allegedly was not authorized to share or retain. (*Id.* ¶ 84). It further alleges that Chaney downloaded other material without authorization containing Apex confidential and trade secret information. (*Id.* ¶ 87). None of these allegations are based on the Clingerman or Moats' declarations. Rather, they are derived from a separate declaration submitted in support of Apex's preliminary injunction motion from von Horvath, an Apex employee. (Dkt. No. 37 Ex. 1, Declaration of Maria von Horvath ("von Horvath Declaration"), ¶¶ 26–29). The sole Chaney-related allegation that derives from Apex's forensic examiner consultants asserts that Chaney used his Apex laptop to access at least three web-based email accounts between September and December 2024. (FAC ¶ 85; *see* Moats Decl. ¶¶ 7–8). While Apex relies on this allegation to suggest improper use by Chaney of confidential information, it is not the only such allegation in the FAC. Immediately after it, the FAC alleges, based on an email produced by Chaney in

this case, that Chaney later forwarded one of the documents he allegedly downloaded the day before submitting his resignation from his personal email address to his email address at his new employer. (FAC ¶ 86; *see* Dkt. No. 37 Ex. 3, Declaration of Ryan Sullivan ¶¶ 3–4 & Ex. A; *see also* von Horvath Decl. ¶ 27.a (describing Chaney's downloading of this document)).

In short, unlike the situation in *In re Commodity Exchange*, the information in the Clingerman and Moats declarations does not form the basis of the FAC's allegations concerning the Employee Defendants' misappropriation of Apex's confidential information and trade secrets; it is more like icing on the cake. Not surprisingly, the information does not feature prominently in Apex's opposition to the Employee Defendants' motions to dismiss, which makes only passing reference to it. (Dkt. No. 115 at 8–9). The motions themselves challenge the sufficiency of Apex's trade secret claims on several other grounds apart from the issue of use of the confidential information, and are more focused on the FAC's claims for breach of contract, which allege violations of non-compete and non-solicitation provisions in the Employee Defendants' employment agreements. (*See* Dkt. Nos. 101, 103, 106, 108). The circumstances here do not support a finding of waiver. *See, e.g.*, *Nw. Biotherapeutics*, 2026 WL 1398342, at *2 (finding no waiver where, contrary to defendants' claim, "the SAC did not 'rise or fall' on the basis of th[e] analyses" provided by plaintiff's non-testifying consultant); *United States v. Omnicare, Inc.*, No. 15 Civ. 4179 (CM) (VF), 2023 WL 7297152, at *2 (S.D.N.Y. Nov. 6, 2023) ("Unlike in *In re Commodity Exchange*, the handful of references to witness

interviews are not the difference here between a well-pled complaint and a complaint that would be dismissed for failure to plausibly allege a claim.").[5]

Accordingly, a finding of waiver is not appropriate in this instance.

For the foregoing reasons, the Employee Defendants' motion to compel the depositions of John Clingerman and Bruce Moats is therefore **DENIED**.

**SO ORDERED.**

DATED: New York, New York
October 13, 2026

The Honorable Gary Stein
United States Magistrate Judge

[5] *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85 (S,D.N.Y. 2016), upon which the Employee Defendants also rely, only found a waiver of the attorney-client privilege and work-product protection and did not consider the applicability of Rule 26(b)(4)(D); in any event, the plaintiff there explicitly quoted from its expert's report in its operative pleading and then relied on the report during briefing before the Second Circuit in its successful appeal of the district court's dismissal order. *See id.* at 89–90. Further, that case limited the waiver to the report itself. *Id.* at 90. In other cases cited by the Employee Defendants, the party invoking the privilege did not disclaim future use of the expert's information, unlike Apex here. *See BCBSM, Inc. v. Walgreen Co.*, No. 1:20-CV-01362, 2023 WL 3737724, at *8 (N.D. Ill. May 31, 2023) (noting that the plaintiff elsewhere indicated that the relevant information would "be answered by 'the forthcoming expert report(s),' clearly a reference to a *testifying* expert" (emphasis in original)); *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. CV 18-10513-PSG (KSX), 2020 WL 10052401, at *9–11 (C.D. Cal. June 12, 2020). Finally, the Employee Defendants cite cases such as *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732 (N.D. Cal. Dec. 13, 2013), which have found waiver when a party submitted an affidavit or declaration from its expert at summary judgment. As Judge Caproni noted in *In re Commodity Exchange*, such cases are inapposite because, "when an expert submits sworn testimony in support of or in opposition to summary judgment," such an affidavit is "a substitute for live testimony at trial." 2021 WL 2481835, at *4 (citation omitted).