pillsbury

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Brian L. Beckerman
Tel: +1.212.858.1228
brian.beckerman@pillsburylaw.com

October 14, 2026

**VIA ECF**
Hon. Gary Stein
United States Courthouse
500 Pearl Street, Room 702
New York, New York 10007

**Re:** ***Apex Group Capital Advisors LLC v Related Fund Management, LLC, et al.*****,**
**No. 25-cv-08892 (VEC)**

Dear Judge Stein:

We write on behalf of Plaintiff Apex Group Capital Advisors LLC ("Apex"), in response to the October 9, 2026 letters submitted by Defendants Lucas Belinkie, Preston Callen, William C. Chaney, and Ryan Hope (together, the "Employee Defendants") and Defendants Related Fund Management, LLC and James Kraus (the "Related Defendants") (Dkts. 192 and 193).

## I. Financial Responsibility for the Forensic Examination of Messrs. Belinkie's, Callen's and Hope's Mobile Devices

As an initial matter, the Employee Defendants' repeated assertion in their October 9 letter that Apex "refused the Employee Defendants' (and the Court's) suggestion that the parties split the costs of the forensic examination" (Dkt. 192 at 1, 5) is demonstrably false and an egregious misrepresentation to this Court. To the contrary, *Apex* was the party that first proposed a 50/50 cost-sharing arrangement via email on October 5, 2026, conditioned on obtaining a sufficiently reliable estimate of the examination's cost, which at the time ranged from $20,000 to $67,500. *See* Ex. A. The parties then conferred on October 7, tentatively agreed to a 50/50 allocation and then participated in a joint call with the proposed expert on October 9. *See* Ex. B.

Apex is hopeful this dispute will be resolved by the October 23 status conference.[1] While Apex appreciates that the Employee Defendants had to preserve their arguments in the event the parties' tentative cost-splitting arrangement did not come to fruition, omitting the parties' substantive negotiations on cost-splitting to-date and then representing that Apex outright refused such arrangement is, Apex submits, highly improper. The Employee Defendants' request that the Court order Apex to bear the entire cost of the examination—premised on the demonstrably false

[1] Apex reserves its right to seek the full costs of the inspection and Apex's attorneys' fees in connection therewith, should evidence demonstrate that any of Messrs. Belinkie, Callen or Hope intentionally spoliated evidence. *See, e.g.*, *Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377, 389–90 (S.D.N.Y. 2025).

statement that Apex has refused the Court's suggestion to split costs—should therefore be rejected.

Apex's willingness to share costs—to avoid further litigation on this issue—should not be mistaken for a concession that cost-shifting is warranted here. Apex maintains that the full cost should be borne by the Employee Defendants—whose own failure to preserve highly relevant documents necessitated the forensic inspection—because the Employee Defendants fall far short of their burden to demonstrate that cost-shifting is appropriate here.

Requiring the Employee Defendants to bear the costs associated with their own failure to preserve responsive information is consistent with principles applied in this District. *See, e.g.*, *Quinby v. WestLB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006) (holding that where "a party creates its own burden or expense by converting into an inaccessible format data that it should have reasonably foreseen would be discoverable material at a time when it should have anticipated litigation, then it should not be entitled to shift the costs of restoring and searching the data"). Defendants' cited authorities do not compel a different result.[2]

As shown on Exhibit C, the discrepancies in the Employee Defendants' production of text messages during the critical 2024 timeframe are alarming. *See id.* (yellow highlights indicate text messages involving two or more Employee Defendants that only Mr. Chaney produced). Indeed, only one of the four Employee Defendants (Mr. Chaney) produced relevant text messages during that time, and those text messages directly support Apex's allegations of tortious conduct. *See* Dkts. 159-3, 159-4, 159-5. Mr. Chaney's text messages also show that the Employee Defendants communicated very regularly and openly via text message. And although Apex does not (yet) have direct evidence of spoliation, it strains credulity that three of the four Employee Defendants innocently failed to preserve text messages during the most critical time period, yet somehow all three preserved text messages beginning the very next month (January 2025). *See* Ex. C.

Moreover, the Employee Defendants' contention that those text messages were "autodeleted" is an explanation that has evolved with time. Counsel for Mr. Callen previously stated that his texts "may have been auto-deleted by a function on Mr. Callen's phone and/or deleted by Mr. Callen as part of his purging of data on his phone," whereas counsel for Mr. Belinkie has (until recently) had no explanation whatsoever for his missing text messages. *See* Dkt. 153 at 1-2. Mr. Belinkie's new representation that texts predating January 17, 2025 were autodeleted is belied by his production of *many other (non-responsive) text messages* from that same time. *See* Ex. C at 5.

Lastly, the examination is not duplicative of discovery already conducted. The examination will determine *whether* deleted messages can be recovered (including text message chains in which Mr. Chaney did not participate and thus did not (and could not) produce), *when* relevant messages were deleted, and *whether and when* Messrs. Belinkie's, Callen's and Hope's mobile devices' automatic deletion functions were enabled or changed. The Employee Defendants have identified

---

[2] *Poolos v. Paramount Glob.* did not analyze cost allocation. No. 23-CV-8896 (GHW) (HJR), 2025 WL 1069200 (S.D.N.Y. Apr. 8, 2025). *Rowe Ent., Inc. v. William Morris Agency, Inc*. involved sweeping requests to retrieve historical emails at exorbitant expense. 205 F.R.D. 421 (S.D.N.Y. 2002). *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. 2000), *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568 (N.D. Ill. 2004), and *Balboa Threadworks, Inc. v. Stucky* No. 05–1157–JTM–DWB, 2006 WL 763668 (D. Kan. Mar. 24, 2006), are non-binding decisions from outside the Second Circuit.

no basis for shifting the entire cost of examining their mobile devices to Apex, so they should bear the full costs of the examination in the event the cost-splitting arrangement fails.

## II. Apex's Privilege Log Is Not Deficient

### *A. Apex's Privilege Log Complies with the Parties' ESI Protocol, the Federal Rules of Civil Procedure and the Local Rules*

Pursuant to the Stipulated and Ordered ESI Protocol (Dkt. 138, "ESI Protocol"), the parties agreed to exchange metadata privilege logs containing the following specific Metadata fields: SORT NUMBER; CUSTODIAN(S); BEGBATESNUMBER (redacted docs); EMAIL_DATERCVD; EMAIL_TIMERCVD; EMAIL_DATESENT; EMAIL_TIMESENT; LASTMODDATE; LASTMODTIME; CREATEDDATE; CREATEDTIME; AUTHOR (if applicable); EMAIL_FROM; EMAIL_TO; EMAIL_CC; EMAIL_BCC; EMAIL_SUBJECT. *Id* at 18.

Defendants do not dispute that Apex's privilege log (Dkt. 192-1) adheres to those requirements.[3] Instead, Defendants allege that Apex's privilege log is deficient because it does not contain narrative descriptions or categorical summaries for each of the 866 documents listed. Neither is required by the ESI Protocol.[4] Nor are they required by the Local Rules or Federal Rules when, as here, parties agree to metadata privilege logs with specific metadata field categories. *See* Fed. R. Civ. P. 29 (holding that "parties may stipulate that [] procedures governing or limit[ed] discovery be modified"); L. Civ. R. 26.2(c) (encouraging "[e]fficient means of providing information regarding claims of privilege" and providing that, "parties should consider and discuss the use of a categorical log or a metadata log, instead of a document-by-document log").

Defendants' insistence on narrative descriptions or categorical summaries undermines the point of agreeing to a metadata privilege log in the first instance because a metadata log, by its nature, is "a table of withheld documents that **provides only the metadata fields that can be extracted from the withheld documents, potentially with a designation for privilege bases (ACP, WP, etc.), but without a substantive privilege descriptive narrative**." *See* The Sedona Conference Commentary on Privilege Logs, 25 Sedona Conf. J. 221, 286-87 (2024) (emphasis added). Put simply, by demanding that Apex create narrative descriptions or categorical summaries, Defendants are effectively objecting to Apex's privilege log solely because it is a metadata log– an objection that Local Civil Rule 26.2 prohibits. *See* L. Civ. R. 26.2(c)(4) ("[A] party cannot object to a privilege log solely on the basis that it is . . . a metadata log.").

Defendants could have negotiated for narrative descriptions or categorical summaries when negotiating the ESI Protocol. Their failure to do so then precludes them from demanding such

---

[3] The Related Defendants' and Mr. Belinkie's privilege logs likewise contained these fields, although they added a column titled "Privilege Justification." *See* Ex. D. Mr. Callen's privilege log did not adhere to the ESI Protocol (*see id.*) and Messrs. Chaney and Hope did not produce any privilege logs whatsoever.

[4] Defendants' reliance on Section I(D) of the ESI Protocol is misplaced. That provision preserves obligations "not addressed in this ESI Protocol"—it does not override the parties' specific agreement on privilege logs set forth in Section VIII. Defendants' reading of Section I(D) would effectively allow a catch-all provision to usurp and undo *any* of the ESI Protocol's negotiated terms. Section I(D) can't be interpreted to have such sweeping effect. *See* ESI Protocol at 3.

requirements now, which would require Apex to re-review and draft narratives for each of the 866 entries on its privilege log—imposing a substantial and disproportionate burden on Apex.

Apex has also repeatedly amended its privilege log, most recently by adding a column identifying each document as a parent, attachment, or standalone document and highlighting counsel's names in bold red font. *See* Dkt. 192-1. To ensure consistency, Apex has also recently removed redactions from 55 documents[5] and certain redactions from 79 additional documents[6]. Apex will shortly produce the revised documents together with a third amended privilege log. Taken together, the information Apex has provided "permit[s] a judgment as to whether the document is at least potentially protected from disclosure." *See Vinci Brands LLC v. Coach Servs. Inc.*, No. 23-CV-5138 (LGS) (VF), 2025 WL 2443620, at *5 (S.D.N.Y. Aug. 25, 2025) (citations omitted).

Defendants' cited authorities are inapposite because they involved: traditional or categorical privilege logs;[7] protocols addressing the *production* of available metadata (*not* metadata privilege log fields);[8] disputes regarding additional information about attachments to withheld documents (which Apex has already provided);[9] or disputes involving ESI protocols that contained materially different metadata fields.[10] Notably, all but one of Defendants' cited cases predate the 2024 amendments to Local Civil Rule 26.2. *Vinci Brands LLC*, on the other hand, is on point. There, as here, the parties agreed to exchange metadata privilege logs. The court held that the logs complied with Rule 26 because they identified the communication participants and author, as well as the basis for the privilege claim. 2025 WL 2443620, at *5. It also found the producing party substantially justified in resisting a demand for supplemental narrative descriptions given the parties' agreement to exchange metadata-only logs. *Id.*

The same reasoning applies here: Apex's log identifies the participants and authors through the agreed metadata fields, states the privilege asserted for each entry, and provides the other information required by the ESI Protocol. These fields provide sufficient information for Defendants "to make an intelligent determination about the validity of the assertion of the privilege." *See Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7767 (LJL), 2021 WL 5450366, at *1 (S.D.N.Y. Nov. 22, 2021).

---

[5] Sort Nos. 1, 2, 3, 4, 123, 124, 135, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 212, 235, 236, 237, 238, 239, 240, 241, 430, 638, 639, 640, 860.
[6] Sort Nos. 10, 47, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 249, 250, 251, 252, 431, 434, 439, 444, 446, 448, 452, 469, 470, 479, 482, 487, 498, 513, 514, 515, 518, 520, 567, 568, 697, 698, 699, 701, 702, 706, 707, 708, 710, 711, 713, 714, 715, 716, 717, 718, 719, 720, 722, 727, 728, 730, 732, 741, 742, 743, 751, 962, 1050, 1051, 1052, 1053, 1054, 1055, 1056, 1057.
[7] *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464 (2d Cir. 1996); *McNamee v. Clemens*, No. 09 CV 1647(SJ), 2013 WL 6572899 (E.D.N.Y. Sept. 18, 2013).
[8] *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394 (AJN)(BCM), 2018 WL 10038859 (S.D.N.Y. Sept. 28, 2018); *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-09367 (JMF)(SN), 2018 WL 3584020 (S.D.N.Y. July 23, 2018); *In re Aenergy, S.A.*, 451 F. Supp. 3d 319 (S.D.N.Y. 2020); *U.S. Bank N.A. v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044 (BCM), 2021 WL 1968325 (S.D.N.Y. Mar. 31, 2021).
[9] *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, No. 1:20-cv-7472 (GHW, 2025 WL 1434375 (S.D.N.Y. May 17, 2025).
[10] *Huckabee v. Bloomberg L.P.*, No. 1:23-cv-09152-MMG, 2026 WL 803077, at *11 (S.D.N.Y. Mar. 23, 2026).

*B. Defendants Have Rejected Apex's and the Court's Sampling Proposal*

Even though Apex maintains that its privilege log includes sufficient information for Defendants to make determinations about privilege, at the October 7, 2026 meet and confer Apex offered to explore sampling pursuant to the Court's October 1 Order (Dkt. 190). *See* Ex. B. Defendants rejected that compromise, stating that any sample would need to include substantially all of the 866 documents on Apex's log. *Id.; see also* Dkt. 192 at 2. But that is not sampling; it is a demand for a complete rewrite in a format to which the parties did not agree. Defendants' alternative, a categorical privilege log, is the same demand in a different form. Apex's sampling proposal is consistent with Local Civil Rule 26.2 and the Sedona principles, which suggest sampling "for a **limited number of entries, or over specific categories of entries**." *See* Sedona Conference Commentary on Privilege Logs, *supra*, at 290 (emphasis added).

Defendants' specific challenges to Apex's privilege log entries lack merit. *First*, Defendants identify 97 entries in which no attorney purportedly sent or received the document listed. Many of those 97 entries, however, share a subject line with surrounding entries and appear on their face to convey counsel's advice to Apex personnel. *See, e.g.*, Sort Nos. 249, 338, 577–79.

*Second*, the challenged third-party communications and communications with in-house counsel can similarly be assessed based on the information provided in Apex's log: Sort No. 721 reflects Egnyte's participation, at counsel's direction, in collecting and transferring data for counsel; Sort Nos. 1019–20 are attachments to Sort No. 1017, an email from in-house counsel that identifies in the subject line that the nature of the issue is to provide legal advice.

*Third*, the Employee Defendants' assertion that 139 attachments lack a Subject field also ignores the family information Apex provided: the attachments are linked to their parent emails, which supply the relevant subject and context. An attachment does not have a separate email subject line.

*Fourth*, many of the challenged documents are also only partially redacted, with surrounding context demonstrating the privileged nature of the redacted information.

*Finally*, Defendants' contention that Apex waived privilege over materials prepared by Messrs. Clingerman and Moats is baseless, particularly in light of the Court's October 13, 2026 Order (Dkt. 194). Defendants' separate argument that Apex has somehow waived privilege by complying with the ESI Protocol lacks support of any kind.

* * *

Apex respectfully requests that the Court (1) deny Defendants' demand for narrative descriptions or a wholesale replacement log; (2) deny the Employee Defendants' request for a finding of waiver; and (3) to the extent the Court finds further review of Apex's privilege claims appropriate, direct a targeted sampling process under the Court's October 1 Order (Dkt. 190), limited to a reasonable number of specifically identified entries rather than substantially all of Apex's log.

Respectfully submitted,
*/s/ Brian L. Beckerman*
Brian L. Beckerman