**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

APEX GROUP CAPITAL ADVISORS LLC,

Plaintiff,

-against-

RELATED FUND MANAGEMENT LLC, *et al.,*

Defendants.

---------------------------------------------------------------------X

**25 Civ. 8892 (VEC) (GS)**

**ORDER**

**GARY STEIN, United States Magistrate Judge:**

On October 9, 2026, Defendants Related Fund Management Fund, LLC and James Krauss (the "Related Defendants") and Defendants Lucas Belinkie, Preston Callen, William C. Chaney, and Ryan Hope (the "Employee Defendants") (collectively, "Defendants") filed letter-motions requesting, *inter alia*, that the Court order Plaintiff Apex Group Capital Advisors LLC ("Apex") to supplement its metadata privilege log with descriptive narratives for each entry sufficient to allow Defendants to evaluate Apex's assertions of privilege. (Dkt. Nos. 192 & 193). On October 14, 2026, Apex filed a letter opposing Defendants' motions. (Dkt. No. 195). The Court held a video discovery conference on October 23, 2026, and at the conclusion of the conference, rejected Apex's position that it need not supplement its metadata privilege log. This Order briefly elaborates on the Court's ruling at the conference.

Apex relies upon language in Section VIII.B of the ESI Protocol negotiated and agreed upon by the parties stating that "[f]or any Documents withheld or

redacted based on a claim of privilege, the Parties agree to provide for each such document" an enumerated list of "Metadata fields (if available) to facilitate the determination of the basis of privileged [sic] claimed." (Dkt. No. 138 at 18). Apex takes the position that this language reflects an agreement between the parties that their respective privilege logs will contain *only* the metadata specified in this provision and need not contain descriptive narratives. Apex produced a privilege log consistent with this understanding. (*See* Dkt. No. 195 at 3).

Defendants take the opposite position. Rather than understanding the language in Section VIII.B as identifying all the information required to be set forth in the parties' privilege logs, Defendants interpret it as merely setting forth the minimum information required, which Defendants argue is qualified by language elsewhere in the ESI Protocol stating that "[n]othing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or the rights of a Party . . . [and] additional obligations or rights . . . aris[ing] under the governing case law, the Federal Rules of Civil Procedure, the Local Rules . . . or any other applicable rules or regulations . . . remain." (Dkt No. 138 at 3). Based on that very different understanding, the Employee Defendants' and the Related Defendants' own privilege logs include a column containing a short description of the justification for each assertion of privilege. (*See* Dkt. No. 195-4).

Apex's reading of Section VIII.B does not withstand scrutiny. By its plain terms, Section VIII.B states only that "the Parties agree to provide" the specified metadata for each document on a privilege log. It does not purport to specify all

information to be provided on the log. Indeed, Apex's own privilege log includes a field not specified in Section VIII.B: namely, a designation of the type of privilege asserted (*e.g.*, attorney-client privilege, work product protection). More importantly, Section VIII.B does not say that the parties have agreed that descriptive narratives need not be included in the log, or, for that matter, that they must be included; it does not address the issue of narratives one way or the other. Apex's contention that the parties agreed in the ESI Protocol not to include descriptive narratives is further belied by the fact that Defendants' logs *do* include such information, showing that, at best, the Protocol is ambiguous on the issue.

During the October 23 conference, the Court noted that the parties' dispute here mirrors, in its essential form, a discovery dispute that arose in *We the Protesters, Inc. v. Sinyangwe*, 348 F.R.D. 175 (S.D.N.Y. 2024). In that case, the parties had negotiated an agreement with respect to the production of text messages, but the agreement failed to specify whether the relevant text message chains had to be produced in their entirety or could contain redactions for irrelevant messages. *Id.* at 178–79. The defendants subsequently produced full text message chains without redactions while the plaintiffs produced their text messages with redactions—prompting defendants to move to compel plaintiffs to produce unredacted versions, as defendants had done. *Id.*

In granting defendants' motion to compel, this Court reasoned that because the parties had not reached a mutual agreement on the issue of redactions—as shown by the contrasting approaches taken in their productions— the Court's task

was "akin to filling a gap in the parties' incomplete agreement." *Id.* at 179. To fill that gap, the Court looked to the default rule supplied by the applicable background law governing the issue in the absence of an agreement. *Id.* In that case, the default rule supplied by the relevant case law was that parties generally are not allowed to redact text messages. *Id.* at 179–80. As the parties had not opted out of that rule, the Court held that plaintiffs were required to abide by it, just as defendants had, reasoning that "[i]f plaintiffs wanted to redact their text messages, it was incumbent upon them to negotiate an agreement to that effect" (or obtain court approval in advance). *Id.* at 180–81; *see also In re Actos Antitrust Litig.*, 340 F.R.D. 549, 552 (S.D.N.Y. 2022) (employing same approach in resolving an issue concerning email threading that had not been addressed in the parties' discovery protocol).

The Court finds the same analysis to be applicable here. Although Apex and the Defendants could have come to an agreement that a privilege log containing a set of metadata fields would be sufficient to satisfy their discovery obligation, they did not reach such an agreement. The Court therefore interprets the ESI Protocol against the background of applicable law, which requires a party withholding otherwise discoverable information on the basis of privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473–74 (2d Cir.

1996) (noting that a privilege log "should provide a specific explanation of why the document is privileged" in order to "permit a judgment as to whether the document is at least potentially privileged from disclosure") (citation omitted); The Sedona Conference, *Commentary on Privilege Logs*, 25 Sedona Conf. J. 221, 229 (2024) (noting that "[g]enerally speaking, a traditional privilege log" includes, *inter alia*, a "Privilege Narrative/Description"). As a result, Apex must provide descriptive narratives to enable Defendants to assess Apex's privilege claims.

That the ESI Protocol appears to contemplate use of a metadata privilege log does not change this conclusion. There are different types of metadata logs. *See Commentary on Privilege Logs*, 25 Sedona Conf. J. at 286–94 (differentiating between metadata logs that do not contain descriptive narratives and "metadata-plus-topic" logs that do contain such narratives, and "recommend[ing]" that metadata-plus-topic logs "be considered the preferred format over a traditional log for most cases"). As in *We the Protesters* and *Actos*, if Apex wanted to be able to prepare a metadata log that dispensed with the normal requirement for descriptive narratives, it was incumbent upon Apex to negotiate a specific agreement to that effect. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,* No. 14 Civ. 4394 (AJN) (BCM), 2018 WL 10038859, at *1 (S.D.N.Y. Sept. 28, 2018) (directing the defendant to "revise its metadata log to include a meaningful subject matter description . . . so as to permit plaintiff (and the Court) to determine 'whether the document is at least potentially protected from disclosure.'") (citation omitted); *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ.

9367 (JMF) (SN), 2018 WL 3584020, at *1 (S.D.N.Y. July 23, 2018) (describing similar order requiring party to revise its metadata log "to make sure that the information provided is sufficient to allow [its adversary] to understand the privilege assertions and make informed challenge decisions").[1]

As also discussed during the October 23 conference, Defendants acknowledge that descriptive narratives are not necessary for *all* of the more than 800 entries on Apex's privilege log. For some number of entries, the information already provided in the log is sufficient for Defendants to assess the privilege claims. As for the rest, Apex proposes that the parties use a sampling process whereby it would provide narratives for a relatively small set of entries on the log. (Dkt. No. 195 at 5). As explained at the conference, the Court does not believe that Apex's sampling proposal is appropriate, given the absence of an agreement to provide metadata logs without a narrative field and the large number of entries where some descriptive narrative appears clearly to be needed for Defendants to make an informed privilege assessment. The Court therefore directed the parties to meet and confer to identify both the specific entries needing elaboration, and the manner in which the

[1] Even where the parties have agreed, in the first instance, to dispense with descriptive narratives, supplementation may be necessary to enable the recipient to adequately assess the privilege assertions and the court to rule on any challenges. *See Commentary on Privilege Logs*, 25 Sedona Conf. J. at 288–90 (explaining that in many instances, the metadata alone "will provide information synonymous with much of what is contained in a descriptive narrative," but that "[m]etadata will not be perfect for every document," and that where such deficiencies "prevent a reasonable assessment of the claim, the parties can confer on those entries for which the receiving party believes it needs additional information to assess the claim of privilege").

privilege log should be supplemented, and to file a joint status report by no later than November 6, 2026.

Finally, Apex argued at the October 23 conference that it is seeking to redact from the publicly filed version of its privilege log[2] certain information such as the identities of unrelated non-parties such as former employees or client representatives and references to sensitive issues involving employee disputes and commercial matters. The Court directed Apex to submit a letter-motion in support of its sealing request, explaining what material Apex seeks to redact and why such redactions are warranted under the standard set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), by no later than Friday, October 30, 2026. Defendants shall file their response(s), if any, by no later than Friday, November 6, 2026.

**SO ORDERED.**

DATED: New York, New York
October 29, 2026

The Honorable Gary Stein
United States Magistrate Judge

[2] To date, Apex has not filed its privilege log on the docket (even under seal); it has only emailed the log to my Chambers email address. Apex will need to file a redacted version of the log on the docket in connection with its sealing motion.